Case No. 23-30340

---

IN THE UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT

---

KRISTEN MORALES,

Plaintiff – Appellant

v.

NEW ORLEANS CITY; ED MICHEL, INTERIM INSPECTOR OF THE OFFICE OF INSPECTOR GENERAL, IN OFFICIAL AND INDIVIDUAL CAPACITIES; BOBBIE JONES; OFFICE OF THE INSPECTOR GENERAL;

Defendants – Appellees

---

On Appeal from the United States District Court
for the Eastern District of Louisiana
Honorable Eldon E. Fallon, District Judge

_____

APPELLANT'S OPENING BRIEF

_____

Stephanie Dovalina,
LSBA #31137
700 Camp Street, Ste. 105
New Orleans, LA 70130
Phone No.: (504)528-9500
Mobile: (504) 442-4959
Fax: (504) 353-9516
stephanie@dovalinalawgroup.com
Attorney for Kristen Morales

## **CERTIFICATE OF INTERESTED PERSONS**

Appellant certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal:

1) Plaintiff-Appellant: Kristen Morales

2) Defendants-Appellees: Ed Michel and Bobbie Jones, Office of Inspector General

3) Defendants- Appellees: City of New Orleans

4) Counsel for Plaintiff-Appellant: Stephanie Dovalina/ Stephanie Dovalina LLC

5) Counsel for Defendants Ed Michel and Bobbie Jones: Walter Francis Becker Jr; H. Michael Bush; Amy Lee McIntyre; Peter Joseph Rotolo III of Chaffee McCall

6) Counsel for Defendants City of New Orleans: Elizabeth Silvis Robins Deputy City Attorney, Corwin St. Raymond, Chief Deputy City Attorney and Donesia D. Turner City Attorney City of New Orleans

*s*/Stephanie Dovalina
STEPHANIE DOVALINA
Attorney for Kristen Morales

## STATEMENT REGARDING ORAL ARGUMENT

Plaintiff-Appellant Kristen Morales ("Morales") requests oral argument as she believes it could significantly aid the decisional process in this case.

## TABLE OF CONTENTS

Certificate of Interested Persons……………………………………....………….2

Statement Regarding Oral Argument……………………………………....…….3

Table of Contents……………………………………………………..……3

Table of Authorities………………………………………………………....……5

Jurisdictional Statement…………………………………………..……….9

Issues Presented…………………………………………………………..10

Statement of the Case……………………………………………….………11

Summary of the Argument……………………………………….…………23

I.    Standard of Review………………………………………….…………..24

II.   Motion for Summary Judgment Standard…………………….…………24

III.  The District Court Erred In Abrogating Morales's Constitutional Right To A Federal Jury Trial For Her Title VII Claims Because Her Civil Service Appeal To Her Suspension And Termination Were Denied……....…….………...26

IV.   The District Court Erred In Finding That All Of Morales's Claims Were Barred By Collateral Estoppel And Res Judicata Because Her Civil Service Appeal To Her Suspension And Termination Was Denied …………………………………………………..…………..…..28

     a.  The United States Supreme Court effectively overruled *Winn v. City of New Orleans*, as applied to this case in the Judgment, in its 2020 decision of *Bostock v. Clayton County*……………………………*28*

b. Civil service jurisdiction is limited to the event of termination, excluding the employer's pre-termination violations of law from consideration…………………………………………..………………35

c. Res judicata and collateral estoppel do not bar Morales's federal or state employment claims……………………………………………..……..42

Conclusion……………………………………………………………………..46

Certificate of Service……………………………………………………………..46

Certificate of Compliance……………………………………………………...47

# TABLE OF AUTHORITIES

## Cases

*Abbott v. New Orleans Police Dep't*,
   2014-0993 (La. App. 4 Cir. 2/11/15); 165 So.3d 191............................38, 39, 40

*Anderson v. Liberty Lobby , Inc.*,
   477 U.S. 242 (1986) ……………………………………………….……25, 26

*B & B Hardware, Inc. v. Hargis Indus., Inc.*
   135 S.Ct. 1293 1306, 191 L.Ed.2d 222 (2015)…………………………..……44

*Bostock v. Clayton County*,
   140 S. Ct. 1731 (2020)…………………………………………..28, 29, 30, 31, 32, 39

*Bradberry v. Jefferson Cnty., Tex.,*
   732 F.3d 540, 549 (5th Cir. 2013)………………………………………………..44

*Branighan v. Dep't of Police*,
   362 So.2d 1221 (La. App. 4th Cir. 1978) ................................................... 20, 36

*Browning v. Navarro*,
   887 F.2d 553, 558 (5th Cir. 1989)……………………………………………..43

*Burst v. Shell Oil Co.*,
   550 Fed. Appx. 170 (5th Cir. 2016) ................................................................. 24

*Carlisle v. Phenix City Bd. of Educ.*,
   849 F.2d 1376 (11th Cir. 1988) .......................................................... 32

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986) ....................................................................... 25

*Curtis v. Loether*
415 U.S. 189 (1974) ............................................................. 27

*Cutrer v. Mid-Continent Group*
   (La. 7/2/99); 747 So. 2d 23 (mem.) .................................................. 37

*Eberhardt v. Levasseur*,
   630 So. 2d 844 (La. App. 4th Cir. 1993) .............................................. 38, 41, 43

*Floyd v. Amite Cty. Sch. Dist.*,
495 F. Supp.2d 619 (S.D. Miss. 2007) .............................................................. 32

*Frazier v. King*,
873 F.2d 820 (5th Cir. 1989) ........................................................... 32, 33, 34, 35

*Garner v. Giarrusso*,
571 F.2d 1330 (5th Cir. 1978).................................. 32, 33, 34, 35, 38, 41, 42, 43

*Gast v. Dep't of Police*,
2013-0781 (La. App. 4 Cir. 03/13/14); 137 So. 3d 731, 733.............................39

*Gillis v. Louisiana*
294 F.3d 755, 758 (5th Cir. 2002)……………………………………………..39

*Greenleaf v. DHH, Metropolitan Developmental Center*,
594 So.2d 418 (La.App. 1 Cir.1991) ........................................................... 38, 42

*Harville v. City of Houston*,
945 F.3d 870 (5th Cir. 2019) ............................................................................ 25

*Hernandez v. City of Lafayette*,
699 F.2d 734 (5th Cir.1983) ....................................................................... 33, 34

*Jackson v. Frisco Indep. Sch. Dist.*,
789 F.3d 589 (5th Cir. 2015) ............................................................................ 44

*Kelty v. Brumfield*,
633 So.2d 1210 (La. 1994) ......................................................................... 43, 44

*Kremer v. Chemical Constr. Corp*,
456 U.S. 461 (1982) ......................................................................................... 40

*Lee v. Offshore Logistical & Transp., L.L.C.*,
859 F.3d 353 (5th Cir. 2017) ............................................................................ 26

*Lewis v. East Feliciana Parish School Board*,
820 F.2d 143 (5th Cir.1987)……………………………………………………...34

*Little v. Liquid Air Corp.*,
37 F.3d 1069, 1075 (5th Cir. 1994)……………………………………………….25

*Lytle v. Houshold Mfg., Inc*
    110 S.Ct. 1331, 108 L.Ed. 2d 504(1990)............................................................27

*Marsh Eng'g, Inc. v. Parker*
    (La. 9/27/96); 680 So.2d 637 (mem.) ................................................. 37

*Mathieu v. New Orleans Pub. Library*
    (La. 10/19/10), 50 So.3d 1259 .......................................................... 36

*Matsushita Elec. Indus. v. Zenith Radio Corp.*,
    475 U.S. 574 (1986) ........................................................................ 25

*Pace v. Bogalusa City Sch. Bd.,*
    403 F.3d 272, 290 (5th Cir. 2005)……………………………………………...44

*Perez v. Region 20 Educ. Serv. Ctr.*,
    307 F.3d 318 (5th Cir. 2002) ............................................................ 24

*Pitre v. Louisiana Tech Univ.,*
    95-1466, p.8 (LA. 5/10/96), 673 So.2d 585, 589...............................37

*Russell v. Mosquito Control Bd.*
    (La. App. 4 Cir. 9/27/06), 941 So.2d 634 .......................................... 37

*Simon v. Board of Commissioners of Port of New Orleans*,
    875 So.2d 102 (La.App. 4 Cir.2004) ........................................... 38, 41

*St. Tammany Manor, Inc. v. Spartan Building Corp.*,
    509 So. 2d 424 (La. 1987) ................................................................ 37

*Stevenson v. Williamson*,
    547 F. Supp. 2d 544 (M.D. La. 2008) ......................................... 38, 41

*Tolefree v. Kansas City, Missouri*,
    980 F.2d 1171 (8th Cir. 1992) .......................................................... 32

*United States v. Tull*,
    481 U.S. 412, 107 S.Ct. 1831 (1097) ............................................... 27

*Univ. of Tenn. v. Elliott*,
    478 U.S. 788, 106 S.Ct. 3220, 92 L.Ed.2d 635 (1986) .................... 27

*Voltolina v. City of Kenner*,
    pp. 4-5 (La. App. 5 Cir. 12/2/20), 306 So.3d 640 ............................ 37

*Walters v. Dept, of Police of the City of New Orleans*,
454 So. 2d 106 (La. 1984)………………………………..………………38, 39, 40

*Wauhop v. Allied Humble Bank, N.A.*,
926 F.2d 454 (5th Cir. 1991) ............................................................................ 27

*Welsh v. Fort Bend Indep. Sch. Dist.*,
860 F.3d 762 (5th Cir. 2017) ............................................................................ 43

*Whitaker v. New Orleans Police Dep't.*
(La. App 4 Cir. 9/17/03), 863 So.2d 572 ................................................... 19, 36

*Winn v. City of New Orleans*,
620 Fed. Appx. 270 (5th Cir. 2015) ................................. 28, 29, 30, 32, 38, 41

*Winn v. New Orleans City, CV 12-1307*,
2015 WL 10713690 (E.D. La. Jan. 14, 2015) ........................... 30, 33, 38, 39, 41

## Statutes

28 U.S.C. § 1291…………………………………………………………….. 9

42 U.S.C. 1981a…………………………………………………………..26

42 U.S.C. §1981………………………………..……………………22, 26, 33, 37, 43

42 U.S.C. §1983 ........................................................................ 22, 29, 33, 37, 45

42 U.S.C. §1985…………………………………………………………..23

42 U.S.C. §2000e-3…………………………………………………………22

42 U.S.C. § 2000e-2……………..…………………………………22, 23, 30, 31

La. Code Civ. Proc. art. 1421, et seq. .................................................... 42

La. R.S. 13:4231 ..................................................................................... 42

La. R.S. 23:967 ...................................................................................... 22

La. R.S. 23:3301 et seq .......................................................................... 23

La. R.S. 33:2400 ................................................. 41

La. R.S. 51:1405 ................................................. 23

La. R.S. 51:2256 ................................................. 22

**Rules**

FED. R. APP. P. 25 ............................................... 46

FED. R. APP. P. 28.2.1 ........................................... 2

FED. R. APP. P. 32 ............................................... 47

FED. R. CIV. P. 56 .............................................. 24

NOCSC Rule II, Sec. 4.5 ........................................ 41

NOCSC Rule II, Sec. 4.11(b) .................................... 41

NOCSC Rule II, Sec. 4.12 ....................................... 42

## JURISDICTIONAL STATEMENT

Jurisdiction is conferred upon this Honorable Court pursuant to 28 U.S.C. § 1291. This is an appeal from a final judgment of the United States District Court for the Eastern District of Louisiana in a civil case.

The District Court entered an order on March 29, 2023, granting Defendants New Orleans Office of the Inspector General's, Ed Michel's, and Bobbie Jones' Motion for Summary Judgment. [1] On April 19, 2023, the court issued another order

---

[1] ROA.1427-1434.

granting Defendant City of New Orleans' Motion for Summary.[2] On May 18, 2023, the District Court denied Plaintiff's Motion to Amend the Judgment issued on March 29, 2023[3]

The district court issued a final judgment disposing of all claims on April 20, 2023.[4] An Appeal was filed in this case on May 19, 2023.[5] Defendants Ed Michel and Bobbie Jones filed a Motion for Attorney fees on May 30, 2023.[6] Morales filed an opposition on June 13, 2023. The Court denied the Motion for Attorney fees on June 15, 2023.[7]

## STATEMENT OF ISSUES

1. Whether the district court erred in finding that Morales does not have a constitutional right to a federal jury trial for her Title VII claims because her civil service appeal to her suspension and termination were denied?

2. Whether the district court erred in finding that all of Morales's allegations were barred by collateral estoppel and res judicata?

---

[2] ROA.2150.
[3] ROA.2318.
[4] ROA.2151.
[5] ROA.2321
[6] ROA.2335-2374.
[7] The order was not included in the record from the lower court.

## STATEMENT OF THE CASE

Plaintiff, Kristen Morales ("Morales") began her employment with the Office of Inspector General ("OIG") on April 18, 2011.[8] She rose through the ranks to achieve the level of Criminal Investigator IV before her termination effective January 7, 2021.[9] Morales appealed her termination (and emergency suspension prior to termination) through the New Orleans Civil Service Commission.[10]

During Morales's first nine years of her employment, she received outstanding performance evaluations and her only prior discipline was a verbal warning in August of 2019 in response to a grievance filed by a co-worker claiming that Morales stood too close to her.[11]

In or around late 2018, Morales made an in-house complaint to then Inspector General, Derry Harper, that she was treated differently than her male colleagues, after which progressive retaliation followed.[12] Morales reported a hostile work environment and the belief that she was being discriminated against to her immediate supervisors.[13] Morales lodged internal complaints against her employer for acts of

---

[8] ROA.950
[9] ROA.952.
[10] ROA.1283-1301 and 1302-1317.
[11] ROA.703-704.
[12] ROA1241-1244 and 1245-1247.
[13] ROA1241-1244 and 1245-1247

retaliation through a series of attempts to discredit her, harm her professional reputation, and force her out of her job.[14]

One internal complaint was filed on January 15, 2019; however, the ensuing investigation never touched on Morales's concerns of unequal pay and disparate treatment of her male criminal investigator colleagues.[15] On January 23, 2020, Morales filed another internal grievance after which she was retaliated against by removing her from a federal case she was assigned.[16] In May 2020, Morales learned that her two male colleagues were approved for incentive pay while she was denied, even though they all had the same certifications.[17]

On September 9, 2020, Inspector General Derry Harper issued a directive that Morales would remain on the case she was removed from without notice; however, this directive was ignored by Interim Inspector General Ed Michel. These acts made it appear that Morales was negligent in her duties.[18] This was related to her prior complaint lodged on January 23, 2020.

On September 11, 2020, Morales received a Letter of Reprimand ("LOR") for failure to timely enter hours into a timekeeping program.[19] She requested copies of

---

[14] ROA.1246

[15] ROA.480 ¶37 and ROA.481 ¶41.

[16] ROA.482 ¶43.

[17] ROA.1245.

[18] ROA.1245-1247.

[19] ROA.1504-1506.

her personnel file but was never provided an answer.[20] She was forced to submit a Public Records Request, which was also ignored, and forms part of the basis of her whistleblower claim.[21] The Inspector General at the time of the issuance of her L.O.R. was Derry Harper, and Ed Michel was the First Assistant Inspector General.[22] Michel urged Harper to terminate Morales for the action that only resulted in an L.O.R. following review by in house counsel, Patrice Sullivan.[23] On October 31, 2020, Harper resigned as I.G. and Patrice Sullivan resigned as counsel and Ed Michel was named Interim Inspector General.[24]

On November 23, 2020, Morales filed a Charge of Discrimination with the EEOC alleging discrimination based on race, sex, and retaliation.[25] Morales's Charge complained of unequal pay, discrimination through disparate treatment and retaliation based on her prior complaints about pay rates with other investigators and certifications maintained.[26] She also complained of retaliation after she reported unethical and illegal conduct of FBI agents she worked with on investigations to her

---

[20] ROA.22.
[21] ROA.35.
[22] ROA.20
[23] ROA.20
[24] ROA.22
[25] ROA.1241-1244.
[26] ROA.1241-1244.

supervisor including her removal from a case without Inspector Harper's approval, and the L.O.R. she received.[27]

On December 1, 2020, Morales was compelled to sit for a surprise interrogation conducted by her supervisor Chief Mike Centola and witnessed by co-workers Larry Douglas and Terrance Barrett.[28] Mike Centola is the OIG Chief of Investigation ("Centola"); Larry Douglas is an Assistant Inspector General and Terrance Barrett is a Criminal Investigator IV.[29] During the interrogation, Morales was questioned about a myriad of topics including whether or not she gave an iPhone, four or five years prior, to Reginald Fournier, a cook who worked in the cafeteria of the building where OIG is located.[30]

On December 14, 2020, Ed Michel called Morales on her cell phone advising that she had to report to the office by 3:00 p.m. and bring all her files and equipment, that she was being suspended.[31] On December 17, 2021, Morales received a letter of emergency suspension dated December 15, 2020.[32]

The letter indicated that she was suspended for: 1) Violation City of New Orleans Policy Memorandum 60(R), 83(R), and Louisiana Law for Giving

---

[27] ROA.1241-1244.
[28] ROA.1221 at p. 43:18-44: 10; see also ROA.1177 Memorandum of Interview for Morales December 1, 2020.
[29] ROA.1230 at p. 294:5; ROA.1225 at p. 270:13; ROA.1224 at p. 140:23.
[30] ROA.1177-1179.
[31] ROA.1231 at lines 1-13; ROA.1231-1232 at lines:21-17.
[32] ROA.1246.

Away an iPhone Owned by the OIG; 2) A Second Violation of Policy Memorandum No. 83(R) for Improperly Invading William A. Bonney's Personal Space; 3) A third violation of Policy Memorandum 83(R) and the Louisiana Code of Government Ethics for Accepting a Valuable Gift for Personal Benefit when she accepted a free plane ride to the 2019 Heisman Trophy Ceremony, and lack of candor for not immediately recalling the personal friends last name during the December 1, 2020, interrogation; 4) Violations of City of New Orleans Policy Memorandum 19(R) and the City Domicile Ordinance; 5) A fourth violation of Policy Memorandum 83(R) for Repeatedly and Consistently Failing to Follow her Supervisor's Directives; and 6) A fifth violation of Policy Memorandum 83(R) for Retaliating and Threatening Retaliation Against Other Employees for Reporting Your Perceived Misconduct and Policy Violations through the City of New Orleans Grievance Procedure and filing a Charge of Discrimination with the EEOC.[33]

On December 17, 2020, Morales filed an appeal with the Civil Service Commission for her suspension.[34] The suspension letter advised Morales that a pre-termination hearing was set for January 7, 2021.[35] The suspension letter did

---

[33] ROA.1248.
[34] ROA.1283-1300.
[35] ROA.1257.

not address issues of discrimination or retaliation and that she could provide copies of any documents for the Department to consider to the pre-termination hearing.[36]

On January 7, 2021, Morales attended an internal pre-termination hearing before Ed Michel, Michael Centola, and William Bonney. The Defendant, City of New Orleans, was not a party to this pre-termination hearing. The OIG admitted that Morales's federal discrimination and retaliation claims were part of Morales's pending EEOC complaint and ***not*** the CS hearing.[37] The OIG terminated Morales on January 7, 2021, immediately following completion of her pre-termination hearing.[38]

On January 14, 2021, Morales appealed all six counts of alleged violations for her termination.[39] The first day of the hearing was on April 9, 2021, with testimony from Bill Bonney only.[40] June 16, 2022, was a recorded conference with the parties to discuss pending subpoenas and witness issues, along with a discussion of the pending second Motion to Quash filed by the OIG relating to former OIG counsel Patrice Sullivan.[41] Finally the hearing was for two days, beginning on June 21, 2022, and continuing through June 22, 2022.[42] It wasn't until June 21, 2022, when Michel

---

[36] ROA.1257.
[37] ROA.1567.
[38] ROA.1519-1529.
[39] ROA.1302-1317.
[40] ROA.1270-1281 and 1847-1850.
[41] ROA.1214-1240 and 1809-1813.
[42] ROA.1859- 1886.

took the stand that the OIG then changed its story and claimed that the decision to terminate Morales was based on giving an OIG iPhone to a private individual without permission and wrongfully claiming she had permission to do so.[43]

The Civil Service hearing was limited to whether the OIG met its burden of proof for Morales's suspension and termination.[44] Morales did not allege, and the referee did not decide, claims of discrimination, retaliation, or whistleblowing in Morales's New Orleans Civil Service Commission (NOCSC) appeal.

On January 14, 2022, Morales received the decision of the City Civil Service Commission denying her appeal based on the iPhone issue alone.[45] The NOCSC found that the suspension and termination were heavy handed regarding the iPhone allegation. The NOCSC noted that the Inspector General's (IG) office went to great lengths to investigate a minor infraction and that it was apparent that the new leadership (Michel) wanted Morales removed because of interpersonal relationships that existed within the office.[46] The Hearing Examiner Report states:

> "[w]hile the termination letter references multiple policy violations, the Appointing Authority candidly admitted that the decision to terminate the appellant was based on the first listed reason found in the termination letter as follows: (I) Giving an iPhone, which was purchased and owned by the Office of Inspector General (OIG), to a private individual who had no official connection to the OIG nor the

---

[43] ROA.1342.
[44] ROA.773.
[45] ROA.772.
[46] ROA.784.

City of New Orleans, which violates Policy Memorandum 60(R) and Louisiana."[47]

The NOCSC found the remaining claims for counts II through IV and VI as follows:[48] **II**. The OIG failed to establish Morales engaged in misconduct or that the incident justified termination for its claim that she violated Covid protocols by invading Bonney's space; and that the OIG "should have counseled both parties and instructed them to work with each other rather than making mounts out of mole hills."[49]

**III**. The OIG failed to establish that Morales accepted a gift for personal benefit in violation policy.[50] The Examiner found that the OIG's analysis of CAO policy 84(R)(q) was overly broad and a superficial analysis of policy and law.[51] It was improper for the Interim Inspector General (Michel) to dredge up a past incident that was previously addressed and disposed of by his predecessor and that there was no lack of candor regarding the circumstances of Morales's ride to the Heisman Trophy ceremony.[52]

**IV**. The OIG acted arbitrarily and abused its discretion by ignoring the fact that Morales was asking for an exemption to live outside the Parish and chose to use

---

[47] ROA.742.
[48] ROA.753-764 and 769-770.
[49] ROA.753-755.
[50] ROA.755-759.
[51] ROA.757.
[52] ROA.759.

it as additional justification for discipline. The decision finds that the submission of a form does not justify disciplinary action without evidence of an intent to circumvent the ordinance and a refusal to comply once placed on notice.[53]

**V**. The OIG letters for suspension and termination allege that Morales violated policy memorandum 83(R) by Retaliating and Threatening Retaliation Against other employees.[54] The Hearing Examiner Report, which was adopted by the Commission found that: Michel testified that Morales filed repetitive unfounded claims, which he considered a pattern and practice calculated to disrupt the office. However, he provided no testimony supporting his conclusion. Therefore, the Appointing Authority has failed to establish that Morales's exercise of her right to utilize the City's internal grievance procedure was an act of misconduct that justified disciplinary action.[55]

A. **THE NEW ORLEANS CIVIL SERVICE COMMISSION HAS LIMITED JURISDICTION**

The Civil Service Commission is required "to decide independently from the facts presented whether the appointing authority has a good or lawful cause for taking disciplinary action and, if so, whether punishment is commensurate with the

---

[53] ROA.764.
[54] ROA.1255-1256 and 1267-1268.
[55] ROA.770.

dereliction."[56] The legal basis for the NOCSC making any change in the appointing authority's disciplinary action is limited to the appointing authority's failure to establish sufficient cause for its disciplinary action.[57] The Civil Service hearing has limited jurisdiction to determine whether the OIG met its burden of proof for Morales's suspension and termination.[58] The burden of proof is on the Appointing Authority to demonstrate that Morales was disciplined for cause.

Morales appealed the denial of her civil service appeal to the 4th Circuit Court of Appeals for Louisiana on February 7, 2022.[59] The appellate court affirmed the Civil Service Commission's ruling on October 5, 2022.[60] On November 23, 2022, Morales filed a writ application with the Supreme Court of Louisiana.[61] The Louisiana Supreme Court declined to hear Morales' appeal from the Louisiana Fourth Circuit and did not consider the merits of her claims when it denied her writ application on January 25, 2023.[62]

## B. THE AMENDED EEOC CHARGE AND FEDERAL LAWSUIT

---

[56] *Whitaker v. New Orleans Police Dep't.*, 03-0512, p. 2 (La. App 4 Cir. 9/17/03), 863 So.2d 572, 574 (citation omitted).
[57] *Branighan v. Dep't of Police*, 362 So.2d 1221, 1222 (La. App. 4th Cir. 1978).
[58] ROA.773.
[59] ROA.1318.
[60] ROA.883.
[61] ROA.1319-1340.
[62] ROA.903.

Morales's Charge and Federal Complaint allege that she reported illegal and unethical behavior by FBI agents to her supervisors that resulted in retaliation from her employer, which was not listed as a reason for her suspension or termination.[63] Morales's charge of discrimination and Federal Complaint also includes allegations related to unequal pay and disparate treatment related to events that took place prior to her suspension and termination. The basis of Morales's Federal Complaint arises from Morales's EEOC charge filed November 23, 2020, almost a month before her initial suspension.[64] The subsequent retaliatory conduct that encompasses the suspension and termination has become part of this suit but was not the initial claim

---

[63] ROA.517-556 Third Supplemental and Amending Complaint

¶42 at ROA.523-524 at. Morales voiced objections to her supervisors on or around December 5, 2019, when she learned that an FBI agent met with a CNO employee without Morales's involvement and against Morales's requests when the FBI did not have an open case or investigation with the U.S. Attorney's office.

¶45 at ROA.524-525. Morales's supervisor removed Morales from her cases claiming that the FBI informed OIG that she associated with felons and talked to FBI sources, Morales objected stating that the allegations were false and retaliatory towards her previously voiced objections to FBI agent led actions.

¶46 at ROA.525. Morales reported to her supervisor that a memorandum of interview documented by FBI agents excluded relevant evidence and contained misrepresentations of facts.

¶51 at ROA.526. Despite Morales's requests to her supervisors for assistance she was removed from her cases in retaliation for reporting FBI illegal and unethical behavior

¶53 at ROA.527, ¶57 at ROA.527, ¶58 at ROA.528., and ¶59 at ROA.528 Morales was not allowed to conduct interviews after she reported the conduct and was also falsely accused by the FBI of recording interviews.

[64] ROA.1241-1242.

for discrimination. Morales amended her Charge of Discrimination to include her suspension and termination on May 10, 2021.[65]

Additionally, certain claims in Morales's federal complaint only arose during and after her suspension and termination appeals. Specifically, on May 19, 2021, Bobbie Jones hacked into Morales's private Facebook account while Jones was at work.[66] Jones changed Morales's passwords, locked her out of her account and downloaded Morales's activity.[67] Morales filed a police report for the illegal conduct.[68] Morales asserts that this was part of the retaliatory work environment that she was subject to during her time with the OIG. Morales suffered ongoing discrimination that began months before the retaliatory conduct of the OIG after filing her charge of discrimination with the EEOC.

The District Court's ruling dismissed all of Morales's allegations against all Defendants, many of which were not part of the facts that formed the basis of her suspension and termination.[69] The claims dismissed include Count 1 against OIG - retaliation under Title VII, 42 U.S.C. §2000e-3(a); Count 2 against OIG - conspiracy to violate human rights under La. R.S. 51:2256; Count 3 against OIG - violations of the Louisiana Whistleblower Statute, La. R.S. 23:967; Count 4 against OIG and

---

[65] ROA.1245-1247.
[66] ROA.537-538 at ¶97.
[67] ROA.538 at ¶97.
[68] ROA.538 at ¶98.
[69] ROA.1427-1434; ROA.2150.; ROA.1251.; and ROA.2318-2320.

Michel - deprivation of a vested property right under 42 U.S.C. §1983; Count 5 against OIG - Disparate Treatment—Gender under Title VII, 42 U.S.C. § 2000e-2(a); Count 6 against OIG - violations of civil rights under 42 U.S.C. §1981 and §1983; Count 7 against OIG - Disparate Treatment—Race under Title VII, 42 U.S.C. §2000e-2(a); Count 8 against OIG - discrimination based on race and gender and retaliation in violation of La. R.S. 23:3301 et seq.; Count 9 against OIG - conspiracy to interfere with civil rights under 42 U.S.C. §1985(3); Count 10 against Jones - violations of the Louisiana Unfair Trade Practices Act, La. R.S. 51:1405(A) et seq.; and Count 11 against Jones - intentional infliction of emotional distress.[70]

## SUMMARY OF THE ARGUMENT

Morales submits that the District Court erred when it granted summary judgment for Defendants, OIG, Ed Michel, Bobbie Jones, and the City of New Orleans dismissing all of her claims. As a permanent Civil Servant, Morales appealed her suspension and termination through the NOCSC. The NOCSC dismissed her appeal finding that the OIG met its burden to terminate Morales based on the determination that she gave away an iPhone four or five years prior to her termination that was worth $0.00 but owned by the OIG. The NOCSC determined that because Morales could not provide documentation that she had approval for the

---

[70] ROA.1427-1434.

donation, her suspension and termination were upheld. The defendants argued that all of Morales's claims in her Federal Complaint, even though they were not all included in her Civil Service appeal, were barred through res judicata or collateral estoppel.

The District Court erred in granting the motions for summary judgment because the court's ruling denies Morales of her constitutional right to a jury trial on her federal claims, claims that were never presented or litigated in the NOCSC hearing. The District Court further erred when it granted the motions for summary judgment, finding that every claim asserted by Morales was barred because she filed and lost an appeal through the NOCSC, despite the fact that she asserts claims outside of the same facts that comprised her suspension and termination, the burdens of proof in the two tribunals are distinct, and NOCSC has limited jurisdiction and the hearing did not involve the claims asserted in her Federal case.

## ARGUMENT

### I.  STANDARD OF REVIEW

An appellate court reviews the grant of a motion for summary judgment *de novo*.[71] In its review, the appellate court applies the same standard as the district court.[72]

[71] *Burst v. Shell Oil Co.*, 550 Fed. Appx. 170, 172 (5th Cir. 2016).
[72] *Id.; Perez v. Region 20 Educ. Serv. Ctr.*, 307 F.3d 318, 323 (5th Cir. 2002).

## II.     <u>MOTION FOR SUMMARY JUDGMENT STANDARD</u>

Summary judgment is proper when, after reviewing the pleadings, the discovery and disclosure materials on file, and any affidavits, a court determines that there is no genuine dispute of material fact.[73] "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact."[74]

Once the party seeking summary judgment carries that burden, the nonmoving party must come forward with specific facts showing that there is a genuine dispute of material fact for trial.[75]   When evaluating the evidence presented in support of a motion for summary judgment, the court must view the evidence "in the light most favorable to the nonmoving party."[76] "Factual controversies are to be resolved in favor of the nonmoving party."[77] A genuine issue of material fact exists when the "evidence is such that a reasonable jury could return a verdict for the nonmoving party."[78]   A fact is material if it 'might affect the outcome of the suit' [and a] factual

---

[73] See Fed. R. Civ. P. 56.
[74] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).
[75] *Matsushita Elec. Indus. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986).
[76] *Gillis v. Louisiana* 294 F.3d 755, 758 (5th Cir. 2002).
[77] *Little v. Liquid Air Corp*., 37 F.3d 1069, 1075 (5th Cir. 1994).
[78] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[79]

Although the substance or content of the evidence submitted to support or dispute a fact on summary judgment must be admissible . . . the material may be presented in a form that would not, in itself, be admissible at trial."[80] The party responding to the motion for summary judgment may not rest upon the pleadings but must identify specific facts that establish a genuine issue.[81] The nonmoving party's evidence, however, "is to be believed, and all justifiable inferences are to be drawn in [the nonmoving party's] favor."[82]

## III.  THE DISTRICT COURT ERRED IN ABROGATING MORALES'S CONSTITUTIONAL RIGHT TO A FEDERAL JURY TRIAL FOR HER TITLE VII CLAIMS BECAUSE HER CIVIL SERVICE APPEAL TO HER SUSPENSION AND TERMINATION WERE DENIED.

In 1991, Congress amended the Civil Rights Act, Title VII, to require a jury trial when a plaintiff seeks compensatory or punitive damages under 42 U.S.C. 1981a. The amended statute now reads, in pertinent part:

(c) Jury trial. If a complaining party seeks compensatory or punitive damages under this section—
    (1) any party may demand a trial by jury; and

---

[79] *Harville v. City of Houston*, 945 F.3d 870, 876 (5th Cir. 2019).
[80] *Lee v. Offshore Logistical & Transp., L.L.C.*, 859 F.3d 353, 355 (5th Cir. 2017) (citations omitted).
[81] *Anderson*, 477 U.S. at 248.
[82] *Id.* at 255.

(2) the court shall not inform the jury of the limitations described in subsection (b)(3).[83]

By contrast, the NOCSC Rules do not require, or allow for, a jury trial. In her lawsuit, Morales alleges violations of 42 U.S.C. 1981 (Count 6).[84] Morales further asks for compensatory and punitive damages.[85] Morales claims allow for punitive damages as a remedy, which is considered legal relief and is therefore entitled to a jury trial.[86] Based on the plain language of Title VII and the facts and circumstances alleged in Morales' lawsuit, she is entitled to a jury trial, which the New Orleans NOCSC Rules do not provide. The Supreme Court holds that the right to a jury trial cannot be abridged.[87]

In *Curtis v. Loether*, the Supreme Court affirmed its position of the right to a jury trial stating that "when Congress provides for enforcement of statutory rights in an ordinary civil action in the district courts, where there is obviously no functional justification for denying the jury trial right, a jury trial must be available if the action involves the rights and remedies of the sort typically enforced in an action at law.[88] The Fifth Circuit has also stated, "[c]ourts must be careful to afford jury trials in

---

[83] 42 U.S.C. 1981a(c).
[84] ROA.549-550 at ¶125-129.
[85] ROA.555-556.
[86] *Curtis v. Loether,* 415 U.S. 189, 197 (1974)).
[87] *United States v. Tull*, 481 U.S. 412, 425, 107 S.Ct. 1831 (1097).
[88] *Curtis v. Loether* ,415 U.S. 189, 195 (1974).

accordance with *Lytle* when legal claims are properly joined with Title VII claims.[89]

Title VII mandates that a plaintiff receive a trial *de novo* in federal court following

a state administrative proceeding.[90] The Supreme Court has also held that

administrative determinations are not afforded preclusive effect; thus, whether or not

a plaintiff is successful in a Civil Service Commission hearing has no bearing on the

ability to pursue money judgment in federal court.[91]

Morales' claims alleged in this lawsuit were never heard by the NOCSC, let

alone a jury. Morales requested a jury trial and made a *prima facie* claim under Title

VII for disparate treatment on sex and race, as well as retaliation. Her Title VII

claims were not disposed of in prior litigation because they were never addressed by

the Civil Service Commission or the state court of appeals.

The New Orleans Civil Service Rules do not provide for a jury trial. For these

reasons, Morales's Seventh Amendment right to a jury trial would be unduly

infringed upon by granting the motion for summary judgment on the sole issue of

*res judicata* and collateral estoppel.

### IV.  THE DISTRICT COURT ERRED IN FINDING THAT ALL OF MORALES'S CLAIMS WERE BARRED BY COLLATERAL ESTOPPEL AND RES JUDICATA BECAUSE HER CIVIL

---

[89] *Wauhop v. Allied Humble Bank, N.A.,* 926 F.2d 454, 456 (5th Cir. 1991); *see also Lytle v. Houshold Mfg., Inc.*, — U.S. —, 110 S.Ct. 1331, 1335, 108 L.Ed. 2d 504 (1990).
[90] *Univ. of Tenn. v. Elliott,* 478 U.S. 788, 795-96, 106 S.Ct. 3220, 92 L.Ed.2d 635 (1986).
[91] *Id.* at 795.

**SERVICE APPEAL TO HER SUSPENSION AND TERMINATION
WAS DENIED.**

**A.     The United States Supreme Court effectively overruled *Winn v.
City of New Orleans*, as applied to this case in the Judgment, in
its 2020 decision of *Bostock v. Clayton County*.**

The District Court's grant of Defendants' Motions for Summary Judgment
was based primarily on the 2015 U.S. Fifth Circuit decision *Winn v. City of New
Orleans*.[92] In *Winn*, the plaintiff was a New Orleans police officer who was
terminated.[93] He subsequently appealed his termination to the NOCSC, which
upheld the termination.[94] The Louisiana Fourth Circuit affirmed.[95] The officer then
filed a Section 1983 claim against the New Orleans Police Department alleging that
he had been terminated in retaliation for exercising his First Amendment rights.[96]
The federal district court ruled that the officer's claim was barred by res judicata
because, in order to prevail on that claim, the officer would need to show that the
exercise of his First Amendment rights was <u>the</u> reason for his termination, which
had already been litigated and decided in state court.[97]

In applying *Winn*, the District Court's in this appeal found as follows:

The federal district court ruled that the officer's claim was barred by
res judicata because, in order to prevail on that claim, the officer would

---

[92] ROA.1433.
[93] *Winn v. City of New Orleans*, 620 Fed. Appx. 270 (5th Cir. 2015) (unpublished).
[94] *Id.*
[95] *Id.*
[96] *Id.*
[97] *Id.*

need to show that the exercise of his First Amendment rights was <u>the</u> <u>reason</u> for his termination, and the reason for the officer's termination had already been adjudicated otherwise in state court.[98] (emphasis added)

*Bostock,* however, effectively overturns the U.S. 5th Circuit's determination in *Winn* that "the state court's finding that Winn was terminated for legal cause 'implicitly and necessarily rejects' Winn's contention that he was terminated for improper reasons...."[99] *Winn*, at the time, was based on the principle that if there was any cause for termination that did not constitute a Title VII violation, then the plaintiff's Title VII causes of action would be "implicitly and necessarily reject[ed]."[100] What *Bostock* makes clear is that employers cannot avoid liability for Title VII violations even when there may be other causes for termination that do not constitute Title VII violations.

In *Bostock*, the U.S. Supreme Court analyzed whether unlawful discrimination under Title VII need be the *only* cause of adverse employment action to constitute a violation or whether the discrimination need only be a *but-for* cause of the adverse employment action.[101] *Bostock* involved three plaintiffs who were

---

[98] ROA.1433.
[99] *Winn v. City of New Orleans*, 620 Fed. Appx. 273 (5th Cir. 2015) (citing *Winn v. New Orleans City*, CV 12-1307, 2015 WL 10713690, at *9 (E.D. La. Jan. 14, 2015).
[100] *Winn v. New Orleans City*, CV 12-1307, 2015 WL 10713690, at *9 (E.D. La. Jan. 14, 2015).
[101] *Bostock v. Clayton County,* 140 S. Ct. 1731, 1737 (2020).

each fired because they were either homosexual or transgender.[102] The primary issue

was whether their firing constituted a violation of Title VII, specifically, 42 U.S.C.

2000e-2(a), which provides, in pertinent part:

> **(a) Employer practices.** It shall be an unlawful employment practice
> for an employer—
>
>> **(1)** to fail or refuse to hire or to discharge any individual, or
>> otherwise to discriminate against any individual with respect to
>> his compensation, terms, conditions, or privileges of
>> employment, because of such individual's race, color, religion,
>> sex, or national origin; or
>>
>> **(2)** to limit, segregate, or classify his employees or applicants for
>> employment in any way which would deprive or tend to deprive
>> any individual of employment opportunities or otherwise
>> adversely affect his status as an employee, because of such
>> individual's race, color, religion, sex, or national origin.[103]

The Supreme Court's initial analysis concerned whether "sex" includes

merely biological sex or extends also to sexual orientation, gender identity, or

transgender status. On that issue, the Court found that employers violate Title VII

by taking adverse employment action based on an individual's sex, sexual

orientation, gender identity, or transgender status.[104]

However, the second part of the Court's analysis concerned the interpretation

of "because of such individual's race, color, religion, sex, or national origin"

---

[102] *Id.*

[103] 42 U.S.C. 2000e-2(a).

[104] *Bostock v. Clayton County,* 140 S. Ct. 1731, 1754 (2020).

(emphasis added).[105] Using an example, the Court explained, "if a car accident occurred *both* because the defendant ran a red light and because the plaintiff failed to signal his turn at the intersection, we might call each a but-for cause of the collision."[106] The Court further explained:

> When it comes to Title VII, the adoption of the traditional but-for causation standard means a defendant cannot avoid liability just by citing some *other* factor that contributed to its challenged employment decision. So long as the plaintiff 's sex was one but-for cause of that decision, that is enough to trigger the law.[107]

Additionally, the unlawful basis for termination need not be the sole or primary cause of the employer's adverse action.[108]

Notably, even before *Bostock*, the Fifth Circuit's holding in *Winn* was an aberration among federal cases considering the preclusive effect of administrative and civil service board decisions in subsequent employment-related lawsuits.[109] A

---

[105] 42 U.S.C. 2000e-2(a).

[106] *Bostock v. Clayton County,* 140 S. Ct. 1731, 1739 (2020).

[107] *Bostock v. Clayton County,* 140 S. Ct. 1731, 1739 (2020).

[108] *Bostock v. Clayton County,* 140 S. Ct. 1731, 1735 (2020).

[109] *See Floyd v. Amite Cty. Sch. Dist.,* 495 F. Supp.2d 619 (S.D. Miss. 2007) (holding that the plaintiff did not have a full and fair opportunity to litigate his Title VII claims before the administrative board and, even if he had, a jury could find the that legitimate basis for termination was a mere pretext to underlying discriminatory cause); *see also Carlisle v. Phenix City Bd. of Educ.*, 849 F.2d 1376 (11th Cir. 1988) (holding that the plaintiff's claims were not precluded because the issues had not been properly litigated in the state court proceedings); *see also Tolefree v. Kansas City, Missouri*, 980 F.2d 1171 (8th Cir. 1992) (holding that the plaintiff's claims were not precluded since the administrative board's decision that the termination was justified did not foreclose the possibility that it was motivated in part by unlawful cause).

jury could find that the cause for termination, even if deemed "just" by an administrative board, was mere pretext covering up another unlawful cause.

Moreover, the U.S. 5th Circuit cases *Frazier v. King* and *Garner v. Giarrusso* are controlling over *Winn,* not only because of their facts and holdings but because their outcomes are consistent with the U.S. Supreme Court's holding in *Bostock.*

In *Frazier*, the 5th Circuit held that the plaintiff was not precluded from bringing a Section 1983 action even though she had challenged her termination before the Civil Service Commission (CSC).[110] The Court wrote, "[res judicata] is not relevant where the original forum does not have the power to award the damages sought in the second action."[111] Based on the 5th Circuit's *Frazier* holding, the district court found in *Winn* that "it would be nonsensical to hold that the CSC's review of [Plaintiff's] termination now prevents Plaintiff from seeking a remedy that the CSC had no power to grant."[112] Accordingly, she found that res judicata did not apply.[113]

In *Garner*, the 5th Circuit again declined to apply res judicata and collateral estoppel, stating two reasons:

> First, the scope of the administrative hearing was much narrower than that of [Plaintiff]'s lawsuit. Second, although the procedural safeguards afforded in the [New

---

[110] *Frazier v. King*, 873 F.2d 820, 824 (5th Cir. 1989).

[111] *Id.* at 825.

[112] *Winn*, 2015 WL 10713690 at *4.

[113] *Id.*

Orleans] Civil Service Commission hearing were satisfactory for its purpose, that body was not a competent forum for the resolution of federal claims of employment discrimination brought under Title VII and Section 1981.[114]

The Court further explained:

Had the district court applied res judicata so as to bar [Plaintiff]'s subsequent lawsuit, manifest injustice would have occurred because [Plaintiff] would have been deprived of an opportunity to challenge the department's transfer, assignment, and re-evaluation practices.[115]

Morales' claims in this lawsuit fall squarely within the confines of *Frazier* and *Garner*.[116] As the Court noted in *Frazier*, applying res judicata and collateral estoppel broadly to administrative proceedings would result in plaintiffs being unable to pursue administrative remedies without simultaneously jeopardizing their federal causes of action.[117] It would incentivize plaintiffs to bypass the administrative process, whereas limiting the application of preclusion doctrine in administrative proceedings would "encourage[e] plaintiffs to seek administrative remedies before turning to the federal courts."[118]

---

[114] *Garner v. Giarrusso*, 571 F.2d 1330, 1336 (5th Cir. 1978).
[115] *Id.* at 1336-1337.
[116] While *Winn* is partially applicable here, the plaintiff's claims in that case—which were the basis for Judge Triche Milazzo's dismissal under collateral estoppel—differ from Morales' claims in this lawsuit.
[117] *Frazier*, 873 F.2d at 824.
[118] *Id.*

At the same time, the *Frazier* Court was wary of plaintiffs "escap[ing]" Louisiana rules of res judicata by pleading separate and distinct relief in different lawsuits where both suits involve the same cause of action."[119] But the Court found, logically, that preclusion doctrine "is not relevant where the original forum does not have the power to award the damages sought in the second action."[120] The plaintiff in *Frazier* had not engaged in "artful pleading" to make it appear that the "'things demanded' in her two actions differ." The Court reasoned, "limitations on the power of the [Louisiana Civil Service Commission] prohibited her from seeking complete damages in the [Louisiana Civil Service Commission] proceeding."[121]

The same principles outlined in *Garner* and *Frazier* apply to Morales' claims here. Just as in *Garner*, here, the scope of the New Orleans Civil Service Commission proceedings was much narrower than the claims made in Morales' lawsuit. Furthermore, just as the Courts noted in *Garner* and *Frazier*, the original administrative forum—the NOCSC in Morales' case—could not award the types of damages that Morales seeks in this lawsuit—"that body was not a competent forum for the resolution of federal claims…."[122] Accordingly, none of Morales' claims alleged in this lawsuit can be precluded by res judicata or collateral estoppel.

---

[119] *Id.* at 825, citing *Lewis v. East Feliciana Parish School Board,* 820 F.2d 143 (5th Cir.1987); *Hernandez v. City of Lafayette,* 699 F.2d 734 (5th Cir.1983).
[120] *Frazier*, 873 F.2d at 825.
[121] *Id*.
[122] *Garner*, 571 F.2d at 1336.

**B.    CIVIL SERVICE JURISDICTION IS LIMITED TO THE EVENT OF TERMINATION, EXCLUDING THE EMPLOYER'S PRE-TERMINATION VIOLATIONS OF LAW FROM CONSIDERATION.**

The NOCSC is required "to decide independently from the facts presented whether the appointing authority has a good or lawful cause for taking disciplinary action and, if so, whether punishment is commensurate with the dereliction."[123] The legal basis for the NOCSC making any change in the appointing authority's disciplinary action is limited to the appointing authority's failure to establish sufficient cause for its disciplinary action.[124]

In Morales's case, the NOCSC only heard circumstances of the termination itself, not facts related to discrimination, retaliation, or civil rights violations as Morales alleges in this lawsuit. The Hearing Examiner did not even allow Morales to assert those claims. During the June 16, 2021, hearing, the Hearing Examiner stated plainly, "I am, as I have stated in emails, this matter will be focused on the allegations contained in the disciplinary letter…"[125]

Morales' various charges of racial and gender discrimination from her EEOC charge were not litigated or adjudicated before the NOCSC. On appeal, the Louisiana Fourth Circuit did not conduct a *de novo* review of the NOCSC findings.

---

[123] *Whitaker v. New Orleans Police Dep't.*, 03-0512, p. 2 (La. App 4 Cir. 9/17/03), 863 So.2d 572, 574 (citation omitted).
[124] *Branighan v. Dep't of Police*, 362 So.2d 1221, 1222 (La. App. 4th Cir. 1978).
[125] ROA.1397 at lines 21-25.

Instead, the Court applied a manifest error standard.[126] As such, the Fourth Circuit did not have an opportunity to hear Morales's claims that are the subject of this lawsuit.

The Fourth Circuit Court stated, "we do not address the OIG's allegations or investigation concerning the five alleged violations unrelated to the iPhone."[127] Morales was therefore not allowed to raise new issues before the NOCSC or any state court. Instead, the Fourth Circuit was limited to the evidence brought before the NOCSC referee.[128]

Nor did the Louisiana Supreme Court hear the merits of Morales' claims since it denied the writ. The Louisiana Supreme Court is clear that there is no precedential value to a writ denial.[129]

### 1. CIVIL SERVICE JURISDICTION EXPLICITLY EXCLUDES FEDERAL CLAIMS.

---

[126] *Mathieu v. New Orleans Pub. Library*, 09-2746, p. 5 (La. 10/19/10), 50 So.3d 1259, 1262

[127] ROA.888, at FN7.

[128] *Voltolina v. City of Kenner*, 20-151, pp. 4-5 (La. App. 5 Cir. 12/2/20), 306 So.3d 640, 644; *Russell v. Mosquito Control Bd.,* 06-0346, p. 8 (La. App. 4 Cir. 9/27/06), 941 So.2d 634, 640.

[129] *See Pitre v. Louisiana Tech Univ.,* 95-1466, p.8 (LA. 5/10/96), 673 So.2d 585, 589; *St. Tammany Manor, Inc. v. Spartan Building Corp.*, 509 So. 2d 424, 428 (La. 1987); *Cutrer v. Mid-Continent Group*, 99-1402 (La. 7/2/99); 747 So. 2d 23, 24 (mem.) (Lemmon, J., concurring) ("The law of the case doctrine does not apply to writ denials."); *see also Marsh Eng'g, Inc. v. Parker*, 96-1434 (La. 9/27/96); 680 So.2d 637, 638 (mem.) (Lemmon, J., concurring) ("[B]ut note that the denial has no res judicata effect in this court on the issue of prescription.").

The District Court's Judgment dismissed all of Morales' federal claims (Count 1—retaliation; Count 2—discrimination based on gender; Count 4—deprivation of a vested property right; Count 5—disparate treatment based on gender; Count 6—deprivation of civil rights under 42 U.S.C. §1981 and §1983; Count 7—discrimination based on race; and Count 9—conspiracy to interfere with civil rights), even though none of these claims were properly litigated or adjudicated before the NOCSC or the Louisiana Fourth Circuit.

Louisiana state and federal courts, including the Louisiana 4th Circuit, the Eastern District, and the U.S. 5th Circuit, have consistently held that civil service commissions do not have jurisdiction over federal employment-related claims.[130] Moreover, civil service commissions do not have the authority to award general tort damages.[131]

In Morales' case, the NOCSC summarized its role as follows:

The Commission has a duty to decide independently from the facts presented in the record whether the appointing authority carried its legally imposed burden of proving by a preponderance of evidence that

---

[130] *Garner v. Giarrusso*, 571 F.2d 1330, 1336 (5th Cir. 1978); *Winn v. New Orleans City*, CV 12-1307, 2015 WL 10713690, at *3 (E.D. La. Jan. 14, 2015), *aff'd sub nom. Winn v. City of New Orleans*, 620 Fed. Appx. 270 (5th Cir. 2015) (unpublished); *Eberhardt v. Levasseur*, 630 So. 2d 844, 846 (La. App. 4th Cir. 1993), writ denied, 635 So. 2d 1107 (La. 1994).

[131] *Stevenson v. Williamson*, 547 F. Supp. 2d 544, 557 (M.D. La. 2008), aff'd, 324 Fed. Appx. 422 (5th Cir. 2009) (unpublished); *Simon v. Board of Commissioners of Port of New Orleans,* 875 So.2d 102, 106 (La.App. 4 Cir.2004); *Greenleaf v. DHH, Metropolitan Developmental Center,* 594 So.2d 418 (La.App. 1 Cir.1991) *writ denied,* 596 So.2d 102 (La.App. 4 Cir.1992)).

it had good or lawful cause for suspending and terminating the classified employee and, if so, whether such discipline was commensurate with the dereliction.[132]

The NOCSC explained that to withstand an appeal, "the appointing authority has the burden of proving by a preponderance of the evidence: 1) the occurrence of the complained of activity, and 2) that that conduct complained of impaired the efficiency of the public service in which the appointing authority is engaged.[133]

In *Winn*, the district court clarified that "the [Civil Service Commission] merely has the 'power and authority to hear and decide all removal and disciplinary cases.'"[134] The NOCSC does not have jurisdiction over federal employment-related claims.[135]

## 2. THE "LEGAL STANDARDS IN THE CIVIL SERVICE SUIT AND FEDERAL COMPLAINT ARE DIFFERENT.

The NOCSC Decision states that the NOCSC was concerned with whether the appointing authority had "good or lawful cause for suspending and terminating the classified employee and, if so, whether such discipline was commensurate with the

---

[132] ROA.773 (citing *Abbott v. New Orleans Police Dep't*, 2014-0993 (La. App. 4 Cir. 2/11/15); 165 So.3d 191, 197; *Walters v. Dept, of Police of the City of New Orleans*, 454 So. 2d 106 (La. 1984).

[133] ROA.773 (citing *Gast v. Dep't of Police*, 2013-0781 (La. App. 4 Cir. 03/13/14); 137 So. 3d 731, 733).

[134] *Winn*, 2015 WL 10713690 at *3 (citing La. Const. art. X, § 12).

[135] *Id.*

dereliction."[136] However, the "good or lawful cause" standard is completely different from the "but-for cause" standard applied by the Supreme Court in *Bostock*.

Moreover, the NOCSC and Louisiana Fourth Circuit Court of Appeals utilized differing standards that did not address Morales's claims in her Federal Complaint.

In *Kremer*, the Supreme Court found that the administrative proceedings and state court review were appropriate because of the legal standards applied.[137] The investigative portion of the administrative proceeding used a probable cause standard on whether to believe the plaintiff's allegations of discrimination were true and the judicial review was done to ensure that the plaintiff's procedural rights were upheld and the determination was not arbitrary and capricious.[138] In *Kremer,* the legal standard is wholly focused on the issue of discrimination; however, Morales was not afforded the same type of review. As stated above, the NOCSC Decision says that the NOCSC was concerned with whether the appointing authority had "good or lawful cause for suspending and terminating the classified employee and, if so, whether such discipline was commensurate with the dereliction."[139] However,

---

[136] See Defendants Exhibit A (4) at p.11. (p. 125 of 257 Doc 59-2) (citing *Abbott v. New Orleans Police Dep't*, 2014-0993 (La. App. 4 Cir. 2/11/15); 165 So.3d 191, 197; *Walters v. Dept, of Police of the City of New Orleans*, 454 So. 2d 106 (La. 1984).

[137] *Kremer v. Chemical Constr. Corp,* 456 U.S. 461 (1982) at 483-85.

[138] *Id.* at 483-84.

[139] ROA.773 (citing *Abbott v. New Orleans Police Dep't*, 2014-0993 (La. App. 4 Cir. 2/11/15); 165 So.3d 191, 197; *Walters v. Dept, of Police of the City of New Orleans*, 454 So. 2d 106 (La. 1984).

whether the appointing authority had "good or lawful cause" for termination is not the standard in employment-related lawsuits.

### 3. THE NOCSC IS AN AUTONOMOUS, SELF-GOVERNING BODY THAT SETS ITS OWN RULES.

The NOCSC is governed by the "Rules of the Civil Service Commission, City of New Orleans" ("NOCSC Rules").[140] While the NOCSC Rules state that appeals from dismissals will be heard "in accordance with the Code of Civil Procedure,"[141] the Rules do not reference the Louisiana Code of Civil Procedure, and in some instances, actually conflict with how the Code of Civil Procedure would apply to employment-related disputes if they were filed in district court.

For example, while the Rules provide that employees who allege discrimination "because of their political or religious beliefs, sex, race, age, disability, or sexual orientation shall have the right to appeal to the commission,"[142] the NOCSC, or any state or city civil service commission, does not have jurisdiction over federal employment-related claims, including discrimination based on political or religious beliefs, sex, race, age, disability, or sexual orientation.[143] Again, as

---

[140] *See* La. R.S. 33:2400; *See also* RAO.2173-2305, Rules of the Civil Service Commission, City of New Orleans.

[141] ROA.2196, NOCSC Rule II, Sec. 4.11(b).

[142] ROA.2195. at NOCSC Rule II, Sec. 4.5.

[143] *Garner v. Giarrusso*, 571 F.2d 1330, 1336 (5th Cir. 1978); *Winn v. New Orleans City*, CV 12-1307, 2015 WL 10713690, at *3 (E.D. La. Jan. 14, 2015), *aff'd sub nom. Winn v. City of New Orleans*, 620 Fed. Appx. 270 (5th Cir. 2015) (unpublished);

stated above, civil service commissions do not have the authority to award general tort damages.[144]

As another example, the NOCSC Rules state that the Commission will initiate a hearing on any appeal within 60 calendar days after the appeal is filed.[145] Notably, there is no opportunity for formal discovery as provided for in the Louisiana Code of Civil Procedure.[146] There is no opportunity, or time, to serve interrogatories, requests for admissions, or requests for production of documents, as provided for in the Code of Civil Procedure.[147] In fact, "Louisiana Code of Evidence" does not appear in the NOCSC Rules. Rules found in the Louisiana Code of Evidence, such as prohibitions on hearsay and prejudicial evidence, or governance of presumptions, do not exist in the NOCSC Rules.

## C. RES JUDICATA AND COLLATERAL ESTOPPEL DO NOT BAR MORALES'S FEDERAL OR STATE EMPLOYMENT CLAIMS.

Pursuant to Louisiana's res judicata statute, La. R.S. 13:4231, and Louisiana

---

*Eberhardt v. Levasseur*, 630 So. 2d 844, 846 (La. App. 4th Cir. 1993), writ denied, 635 So. 2d 1107 (La. 1994).

[144] *Stevenson v. Williamson*, 547 F. Supp. 2d 544, 557 (M.D. La. 2008), aff'd, 324 Fed. Appx. 422 (5th Cir. 2009) (unpublished); *Simon v. Board of Commissioners of Port of New Orleans,* 875 So.2d 102, 106 (La.App. 4 Cir.2004); *Greenleaf v. DHH, Metropolitan Developmental Center,* 594 So.2d 418 (La.App. 1 Cir.1991) *writ denied,* 596 So.2d 102 (La.App. 4 Cir.1992)).

[145] ROA.2196. at NOCSC Rule II, Sec. 4.12.

[146] La. Code Civ. Proc. art. 1421, *et seq.*

[147] *Id.*

caselaw, res judicata and collateral estoppel do not apply if the fact or issue had not been properly litigated in the prior action or if the forum of the prior action lacked jurisdiction to hear the subsequent claims.[148] "To have any preclusive effect a judgment must be valid, that is, among other things, it must have been rendered by a court with jurisdiction over the subject matter."[149]

Importantly, "[i]f the court rendering judgment lacks subject matter jurisdiction over a claim or if the procedural rules of the court made it impossible to raise a claim, then it is not precluded."[150] Furthermore, because Title VII provides the legal remedy of punitive damages, there is also a right to a trial by jury.[151] Additionally, the Louisiana 4th Circuit has previously held that when a CSC Hearing Examiner dismisses a defense—if a defense is heard, which was not the case for Morales' NOCSC proceeding—that dismissal does not have preclusive effect in subsequent litigation.[152]

The United States Fifth Circuit has further held that res judicata and collateral estoppel should not be rigidly applied, stating that, "both defenses must be qualified or rejected when their use would contravene an overriding public policy or result in

---

[148] *Garner v. Giarrusso*, 571 F.2d 1330, 1336 (5th Cir. 1978).

[149] *Kelty v. Brumfield,* 633 So.2d 1210, 1215 (La. 1994)

[150] *Welsh v. Fort Bend Indep. Sch. Dist.,* 860 F.3d 762, 765 (5th Cir. 2017) (quoting *Browning v. Navarro*, 887 F.2d 553, 558 (5th Cir. 1989).

[151] 42 U.S.C. §1981(c).

[152] *Eberhardt v. Levasseur*, 630 So. 2d 844, 847 (La. App. 4th Cir. 1993), *writ denied,* 635 So. 2d 1107 (La. 1994).

manifest injustice."[153] The Louisiana Supreme Court agrees with this argument, stating that "[t]he doctrine of res judicata is stricti juris; any doubt concerning application of the principle of res judicata must be resolved against its application."[154] Collateral estoppel is applicable when "(1) the identical issue was previously adjudicated; (2) the issue was actually litigated; and (3) the previous determination was necessary to the decision."[155] Each of these elements is essential and "must be established beyond all question."[156] Moreover, any issues that involve a *different legal standard* will not be considered identical even if the factual setting of both suits may be the same.[157]

As established above, Morales' claims that are the subject of this lawsuit were never properly litigated in, or determined by, the NOCSC. The CS Hearing Examiner made clear at the start of the hearing, "I will only say that the termination was based upon six listed violations, six different reasons that are set forth in the letter."[158] There were no affirmative defenses and no opportunity for discovery.

---

[153] *Garner*, 571 F.2d at 1336.

[154] *Kelty v. Brumfield,* 633 So.2d 1210, 1215 (La. 1994)

[155] *Jackson v. Frisco Indep. Sch. Dist*., 789 F.3d 589, 595 (5th Cir. 2015) (*quoting Pace v. Bogalusa City Sch. Bd.,* 403 F.3d 272, 290 (5th Cir.2005); Bradberry v. Jefferson Cnty., Tex., 732 F.3d 540, 549 (5th Cir. 2013)).

[156] *Kelty*, 633 So.2d at 1215.

[157] *Jackson v. Frisco Indep. Sch. Dist*., 789 F.3d 589, 595 (5th Cir. 2015) (*quoting B & B Hardware, Inc. v. Hargis Indus., Inc.,* - U.S.-, 135 S.Ct. 1293 1306, 191 L.Ed.2d 222 (2015) (emphasis added).

[158] ROA.1274-1275 at lines 23-1.

Because of the narrow scope, Morales could not avail herself of the Louisiana Code of Evidence or the Code of Civil Procedure. The NOCSC hearing was limited to the claims made in the termination letter and then further narrowed based on the OIG's assertion that the discipline was based on the iPhone donation; there was no opportunity to litigate Morales' Louisiana statutory law claims.

### 4.    NEITHER COLLATERAL ESTOPPEL NOR RES JUDICATA BARS MORALES' CLAIM AGAINST DEFENDANT MICHEL.

Morales' claim against Michel in his personal capacity is a separate matter from the circumstances of termination that were heard in the NOCSC process. Morales never asserted a claim against Michel in his personal capacity in state court or in the NOCSC proceedings. Therefore, her claim against him now, deprivation of a vested property right under 42 U.S.C. §1983, cannot be barred.

### 5.    NEITHER COLLATERAL ESTOPPEL NOR RES JUDICATA BARS MORALES' CLAIMS AGAINST DEFENDANT JONES.

Similarly, Morales never had an opportunity to litigate claims against Jones in her personal capacity in the NOCSC hearing. It was indeed Jones' lie about the iPhone charger that precipitated the baseless investigation into Morales.[159] But, once again, Morales did not have an opportunity to raise this claim during the NOCSC

---

[159] ROA.1223 Centola testimony at lines 5-7; RAO.1227-1228 Fournier testimony at lines 24-5 and RAO.1228 Turner testimony at lines 10-13 and ROA.1229 at lines17-21.

hearing, which, was limited to the allegations contained in the termination letter. Moreover, Jones' cyberhacking of Morales's Facebook account occurred after the CSC hearing. As an ongoing act of retaliation and harassment this issue has not been before any court. Accordingly, these claims against Jones cannot be barred.

## CONCLUSION

The Court should vacate the district court's judgment and remand for further proceedings.

DATED: July 17, 2023                     Respectfully submitted,

                                         s/Stephanie Dovalina
                                         Stephanie Dovalina
                                         Attorney for Plaintiff – Appellant

## CERTIFICATE OF SERVICE

This is to certify that the foregoing instrument has been served via the Court's ECF filing system in compliance with Rule 25(b) and (c) of the Federal Rules of Appellate Procedure, on July 17, 2023, on all registered counsel of record, and has been transmitted to the Clerk of the Court.

                                         s/Stephanie Dovalina
                                         Stephanie Dovalina

## <u>CERTIFICATE OF COMPLIANCE</u>

1.    This brief complies with the type-volume limitation of FED. R. APP. P.

32(A)(7)(B) because:

    a.  this brief contains 8,495 words, excluding the parts of the brief

    exempted by FED. R. APP. P. 32(f).

2.    This brief also complies with the typeface requirements of FED. R. APP. P.

32(A)(5) and the type requirements of FED. R. APP. P. 32(A)(6) because:

    a.  this brief has been prepared in a proportionally spaced typeface

    using Microsoft Word with a 14-point font named Times New

    Roman.

                  s/Stephanie Dovalina
                  Stephanie Dovalina