Case No. 23-30340

---

IN THE UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT

---

KRISTEN MORALES,

Plaintiff – Appellant

v.

NEW ORLEANS CITY; ED MICHEL, INTERIM INSPECTOR OF THE OFFICE OF INSPECTOR GENERAL, IN OFFICIAL AND INDIVIDUAL CAPACITIES; BOBBIE JONES; OFFICE OF THE INSPECTOR GENERAL;

Defendants – Appellees

---

On Appeal from the United States District Court
for the Eastern District of Louisiana
Honorable Eldon E. Fallon, District Judge

_____

RECORD EXCERTS OF APPELLANT, KRISTEN MORALES
_____

Stephanie Dovalina,
LSBA #31137
700 Camp Street, Ste. 105
New Orleans, LA 70130
Phone No.: (504)528-9500
Mobile: (504) 442-4959
Fax: (504) 353-9516
stephanie@dovalinalawgroup.com
Attorney for Kristen Morales

## TABLE OF CONTENTS

TAB #                                                                    ROA

1        Docket Sheet…………………………………………..ROA.1

2        Order and Reasons for OIG MSJ………………..…………..ROA.1427

3        Order and Reasons for CNO MSJ………………………..ROA.2150

4        Judgment Dismissing Case………………………………ROA.2151

5        Order and Reasons Denying Motion to Amend Judgment…ROA.2318

6        Decision of New Orleans Civil Service Commission………ROA.771

7        Termination Letter………………………………………ROA.1248

8        Notice of Appeal…………………………………………ROA. 2745

9        Certificate of Service

TAB 1

2000E,APPEAL,CLOSED

Jump to Docket Table

# U.S. District Court
# Eastern District of Louisiana (New Orleans)
# CIVIL DOCKET FOR CASE #: 2:21-cv-01992-EEF-MBN

| | |
|---|---|
| Morales v. New Orleans City et al | Date Filed: 10/28/2021 |
| Assigned to: Judge Eldon E. Fallon | Date Terminated: 04/21/2023 |
| Referred to: Magistrate Judge Michael North | Jury Demand: Both |
| Case in other court:  USCA, 5th Circuit, 23-30340 | Nature of Suit: 442 Civil Rights: Jobs |
| Cause: 42:2000e Job Discrimination (Employment) | Jurisdiction: Federal Question |

**Plaintiff**

**Kristen Morales**                                    represented by     **Stephanie Dovalina**
                                                                          Stephanie Dovalina LLC
                                                                          700 Camp Street
                                                                          Ste 105
                                                                          New Orleans, LA 70130
                                                                          504-528-9500
                                                                          Fax: 504-353-9816
                                                                          Email: stephanie@dovalinalawgroup.com
                                                                          *LEAD ATTORNEY*
                                                                          *ATTORNEY TO BE NOTICED*

V.

**Defendant**

**New Orleans City**                                   represented by     **Elizabeth S. Robins**
                                                                          Law Department, City of New Orleans
                                                                          1300 Perdido Street
                                                                          Ste 5e03
                                                                          New Orleans, LA 70112
                                                                          504-658-9800
                                                                          Email: esrobins@nola.gov
                                                                          *LEAD ATTORNEY*
                                                                          *ATTORNEY TO BE NOTICED*

                                                                          **Jonathan Holden Adams**
                                                                          Burglass Tankersley Gaudin & Phayer
                                                                          5213 Airline Drive
                                                                          Metairie, LA 70001
                                                                          504-836-0432
                                                                          Fax: 504-287-0463
                                                                          Email: jadams@burglass.com
                                                                          *TERMINATED: 11/21/2022*
                                                                          *LEAD ATTORNEY*

                                                                          **Churita H. Hansell**

DOJ-USAO
650 Poydras Street
Suite 1707
New Orleans, LA 70130
504-680-3073
Email: churita.hansell@usdoj.gov
*TERMINATED: 09/01/2022*

**Corwin St. Raymond**
City Attorney's Office
1300 Perdido Street
Suite 5e03
New Orleans, LA 70112
504-658-9803
Email: cmstraymond@nola.gov
*ATTORNEY TO BE NOTICED*

**Donesia D. Turner**
City of New Orleans
1300 Perdido Street
Ste 5e03
New Orleans, LA 70112
504-658-9800
Fax: 504-658-9868
Email: donesia.turner@nola.gov
*ATTORNEY TO BE NOTICED*

**Eraka W. DeLarge**
City Attorney's Office (New Orleans)
1300 Perdido Street
Suite 7E05
New Orleans, LA 70112
504-658-9800
Fax: 504-658-9868
Email: eraka.w.delarge@ice.dhs.gov
*TERMINATED: 11/21/2022*

**Kevin C. Hill**
New Orleans City Attorney's Office
1300 Perdido Street
Ste 5e03
New Orleans, LA 70112
504-658-9800
Fax: 504-658-9868
Email: kchill@nola.gov
*ATTORNEY TO BE NOTICED*

**Defendant**

**Ed Michel**
*Interim Inspector of the Office of Inspector
General, in official and individual
capacities*

represented by **Walter Francis Becker , Jr.**
Chaffe McCall LLP (New Orleans)
Energy Centre
1100 Poydras St.
Suite 2300

New Orleans, LA 70163-2300
504-585-7000
Email: becker@chaffe.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Amy L. McIntire**
Chaffe McCall LLP (New Orleans)
Energy Centre
1100 Poydras St.
Suite 2300
New Orleans, LA 70163-2300
504-585-7030
Email: mcintire@chaffe.com
*ATTORNEY TO BE NOTICED*

**H. Michael Bush**
Chaffe McCall LLP (New Orleans)
Energy Centre
1100 Poydras St.
Suite 2300
New Orleans, LA 70163-2300
504-585-7000
Email: Bush@chaffe.com
*ATTORNEY TO BE NOTICED*

**Sarah Voorhies Myers**
Chaffe McCall LLP (New Orleans)
Energy Centre
1100 Poydras St.
Suite 2300
New Orleans, LA 70163-2300
504-585-7000
Email: myers@chaffe.com
*ATTORNEY TO BE NOTICED*

**Defendant**

**Bobbie Jones**                    represented by  **H. Michael Bush**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Amy L. McIntire**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Sarah Voorhies Myers**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Office of the Inspector General**                    represented by

**Amy L. McIntire**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**H. Michael Bush**
(See above for address)
*TERMINATED: 10/17/2022*
*LEAD ATTORNEY*

**Catherine Grace Schroeder**
Chaffe McCall, LLP
1100 Poydras St.
Ste. 2300
New Orleans, LA 70163
504-585-7218
Fax: 504-585-7075
Email: catherine.schroeder@chaffe.com
*ATTORNEY TO BE NOTICED*

**Peter Joseph Rotolo , III**
Chaffe McCall LLP (New Orleans)
Energy Centre
1100 Poydras St.
Suite 2300
New Orleans, LA 70163-2300
504-585-7000
Email: rotolo@chaffe.com
*ATTORNEY TO BE NOTICED*

**Sarah Voorhies Myers**
(See above for address)
*TERMINATED: 10/17/2022*

| Date Filed | # | Docket Text |
|---|---|---|
| 10/28/2021 | 1 (p.12) | COMPLAINT with jury demand against All Defendants (Filing fee $ 402 receipt number ALAEDC-9085066) filed by Kristen Morales. (Attachments: # 1 (p.12) Civil Cover Sheet)Attorney Stephanie Dovalina added to party Kristen Morales(pty:pla).(Dovalina, Stephanie) (Entered: 10/28/2021) |
| 10/29/2021 | 2 | Initial Case Assignment to Judge Eldon E. Fallon and Magistrate Judge Michael North. (cc) (Entered: 10/29/2021) |
| 12/01/2021 | 3 (p.46) | WAIVER OF SERVICE Returned Executed; waiver sent to New Orleans City on 11/2/2021, answer due 1/3/2022. (Dovalina, Stephanie) (Entered: 12/01/2021) |
| 12/01/2021 | 4 (p.47) | WAIVER OF SERVICE Returned Executed; waiver sent to Ed Michel on 11/2/2021, answer due 1/3/2022. (Dovalina, Stephanie) (Entered: 12/01/2021) |
| 12/15/2021 | 5 (p.48) | Request of Summons Issued as to Bobbie Jones filed by Kristen Morales re 1 (p.12) Complaint,. (Dovalina, Stephanie) (Entered: 12/15/2021) |
| 12/15/2021 | 6 (p.50) | |

| | | |
|---|---|---|
| | | EXPARTE/CONSENT First MOTION for Extension of Time to Answer re 1 (p.12) Complaint, by Ed Michel. Motion(s) referred to Michael North. (Attachments: # 1 (p.12) Proposed Order)Attorney Sarah Voorhies Myers added to party Ed Michel(pty:dft).(Myers, Sarah) (Entered: 12/15/2021) |
| 12/16/2021 | 7 (p.53) | Summons Issued as to Bobbie Jones. (cg) (Entered: 12/16/2021) |
| 12/17/2021 | 8 (p.55) | EXPARTE/CONSENT MOTION for Extension of Time to Answer re 1 (p.12) Complaint, by New Orleans City. Motion(s) referred to Michael North. (Attachments: # 1 (p.12) Proposed Order)Attorney Elizabeth S. Robins added to party New Orleans City(pty:dft).(Robins, Elizabeth) (Entered: 12/17/2021) |
| 12/20/2021 | 9 (p.58) | ORDER GRANTING 6 (p.50) Motion for Extension of Time to Answer as to Ed Michel. Defendant shall have through 1/24/2022 within which to plead in response to the 1 (p.12) Complaint of Plaintiff, Kristen Morales. Signed by Magistrate Judge Michael North on 12/20/2021. (jls) (Entered: 12/20/2021) |
| 12/20/2021 | 10 (p.59) | ORDER GRANTING 8 (p.55) Motion for Extension of Time. New Orleans City is hereby granted until 1/24/2022 to Answer re 1 (p.12) Complaint. Signed by Magistrate Judge Michael North on 12/20/2021. (jls) (Entered: 12/20/2021) |
| 01/13/2022 | 11 (p.60) | WAIVER OF SERVICE Returned Executed; waiver sent to Bobbie Jones on 1/13/2021, answer due 3/14/2021. (Dovalina, Stephanie) (Entered: 01/13/2022) |
| 01/24/2022 | 12 (p.61) | MOTION to Dismiss for Failure to State a Claim by Bobbie Jones, Ed Michel. Motion(s) referred to Michael North. Motion(s) will be submitted on 2/16/2022. (Attachments: # 1 (p.12) Memorandum in Support, # 2 Notice of Submission)Attorney Amy L. McIntire added to party Bobbie Jones(pty:dft).(McIntire, Amy) Modified to refer on 1/28/2022 (jls). (Entered: 01/24/2022) |
| 01/24/2022 | 13 (p.82) | First MOTION to Dismiss for Failure to State a Claim by New Orleans City. Motion(s) referred to Michael North. Motion(s) will be submitted on 2/16/2022. (Attachments: # 1 (p.12) Memorandum in Support, # 2 Notice of Submission)(Adams, Jonathan) Modified to refer on 1/28/2022 (jls). (Entered: 01/24/2022) |
| 01/27/2022 | 14 (p.96) | EXPARTE/CONSENT MOTION to Continue *Submission Date of 12b6 Mtns* by Kristen Morales. Motion(s) referred to Michael North. (Attachments: # 1 (p.12) Proposed Order)(Dovalina, Stephanie) Modified to refer on 1/28/2022 (jls). (Entered: 01/27/2022) |
| 01/28/2022 | 15 (p.99) | ORDER: IT IS ORDERED that the 14 (p.96) Motion to Continue is GRANTED, and the submission date on Defendant City of New Orleans, Ed Michel and Bobbie Jones's 12(b)(6) Motions to Dismiss is CONTINUED to March 16, 2022. Signed by Judge Eldon E. Fallon on 1/28/2022.(cwa) (Entered: 01/28/2022) |
| 02/03/2022 | 16 (p.100) | ORDER ON CONSENT: One of the parties to this proceeding does not wish to consent to proceed to trial before a Magistrate Judge. Accordingly, the matter is hereby returned to the docket of the presiding District Judge for further proceedings except those enumerated in Local Rule 72.1. Signed by Magistrate Judge Michael North on 2/2/2022.(jls) (NEF: Honorable Eldon E. Fallon, Section L) (Entered: 02/03/2022) |
| 03/03/2022 | 17 (p.101) | Order Vacating Case Referral to Magistrate Judge. IT IS ORDERED that the referral of this matter for trial on the merits before the Magistrate Judge under Local Rule |

| | | |
|---|---|---|
| | | 73.2 is hereby VACATED. IT IS FURTHER ORDERED that the pending 12 (p.61) and 13 (p.82) motions to dismiss shall no longer be referred to the Magistrate Judge. Signed by Judge Eldon E. Fallon on 3/2/2022.(cwa) (Main Document 17 replaced on 3/3/2022) (cwa). (Entered: 03/03/2022) |
| 03/08/2022 | 18 (p.102) | EXPARTE/CONSENT First MOTION to Amend/Correct 1 (p.12) Complaint, *in response to 12b6 Mtns to Dismiss* by Kristen Morales. (Attachments: # 1 (p.12) Proposed Pleading, # 2 Proposed Order)(Dovalina, Stephanie) (Entered: 03/08/2022) |
| 03/11/2022 | 19 (p.143) | ORDER granting 18 (p.102) Motion to Amend/Correct Complaint. Signed by Judge Eldon E. Fallon on 3/9/2022. (cwa) (Entered: 03/11/2022) |
| 03/11/2022 | 20 (p.144) | FIRST AMENDED COMPLAINT with Jury Demand against Bobbie Jones, Ed Michel, New Orleans City, Office of Inspector General filed by Kristen Morales.(cwa) (Entered: 03/11/2022) |
| 03/25/2022 | 21 (p.181) | MOTION to Dismiss for Failure to State a Claim by Bobbie Jones, Ed Michel. Motion(s) will be submitted on 4/13/2022. (Attachments: # 1 (p.12) Memorandum in Support, # 2 Notice of Submission)(McIntire, Amy) (Entered: 03/25/2022) |
| 03/25/2022 | 22 (p.200) | First MOTION to Dismiss for Failure to State a Claim *for Which Relief can be Granted* by New Orleans City. Motion(s) will be submitted on 4/13/2022. (Attachments: # 1 (p.12) Memorandum in Support, # 2 Notice of Submission, # 3 (p.46) Exhibit)(Adams, Jonathan) (Entered: 03/25/2022) |
| 03/29/2022 | 23 (p.216) | EXPARTE/CONSENT MOTION to Continue *Submission Date 12b6 PMTD Michel and Jones* by Kristen Morales. (Attachments: # 1 (p.12) Proposed Order)(Dovalina, Stephanie) (Entered: 03/29/2022) |
| 03/29/2022 | 24 (p.219) | EXPARTE/CONSENT MOTION to Continue *Submission Date 12b6 MTD City of New Orleans* by Kristen Morales. (Attachments: # 1 (p.12) Proposed Order)(Dovalina, Stephanie) (Entered: 03/29/2022) |
| 03/30/2022 | 25 (p.222) | ORDER: IT IS ORDERED that the 23 (p.216) Motion to Continue Submission Date of Defendants Michel and Jones' 21 (p.181) Partial Motion to Dismiss filed by Plaintiff, Kristen Morales is GRANTED, and the submission date is hereby CONTINUED to April 27, 2022. Signed by Judge Eldon E. Fallon on 3/29/2022.(cwa) (Entered: 03/30/2022) |
| 03/30/2022 | 26 (p.223) | ORDER: IT IS ORDERED that the 24 (p.219) Motion to Continue Submission Date filed by Plaintiff, Kristen Morales is GRANTED, and the submission date on Defendant City of New Orleans' 22 (p.200) Rule 12(b)(6) Motion to Dismiss is hereby CONTINUED to April 27, 2022. Signed by Judge Eldon E. Fallon on 3/29/2022.(cwa) (Entered: 03/30/2022) |
| 04/19/2022 | 27 (p.224) | RESPONSE/MEMORANDUM in Opposition filed by Kristen Morales re 22 (p.200) First MOTION to Dismiss for Failure to State a Claim *for Which Relief can be Granted* . (Dovalina, Stephanie) (Entered: 04/19/2022) |
| 04/19/2022 | 28 (p.232) | RESPONSE/MEMORANDUM in Opposition filed by Kristen Morales re 21 (p.181) MOTION to Dismiss for Failure to State a Claim . (Dovalina, Stephanie) (Entered: 04/19/2022) |
| 04/25/2022 | 29 (p.251) | EXPARTE/CONSENT MOTION for Leave to File *Reply Memorandum in Support of Ed Michel and Bobbie Jones' Motion to Dismiss Plaintiff's First Supplemental and Amending Complaint* by Bobbie Jones, Ed Michel. (Attachments: # 1 (p.12) |

| | | |
|---|---|---|
| | | Proposed Order, # 2 Proposed Pleading)(McIntire, Amy) (Entered: 04/25/2022) |
| 04/25/2022 | 30 (p.263) | EXPARTE/CONSENT MOTION Leave of Court to File Reply Memorandum by New Orleans City. (Attachments: # 1 (p.12) Proposed Order, # 2 Proposed Pleading)(Adams, Jonathan) (Entered: 04/25/2022) |
| 04/26/2022 | 31 (p.272) | ORDER granting 29 (p.251) Motion for Leave to File Reply Memorandum. Signed by Judge Eldon E. Fallon on 4/25/2022. (lw) (Entered: 04/26/2022) |
| 04/26/2022 | 32 (p.273) | REPLY MEMORANDUM In Support to Motion filed by Bobbie Jones, Ed Michel re 21 (p.181) MOTION to Dismiss for Failure to State a Claim . (lw) (Entered: 04/26/2022) |
| 04/26/2022 | 33 (p.283) | ORDER granting 30 (p.263) Motion to file Reply Memorandum. Signed by Judge Eldon E. Fallon on 4/25/2022. (lw) (Entered: 04/26/2022) |
| 04/26/2022 | 34 (p.284) | REPLY MEMORANDUM to Motion filed by New Orleans City re 22 (p.200) First MOTION to Dismiss for Failure to State a Claim *for Which Relief can be Granted*. (lw) (Entered: 04/26/2022) |
| 06/23/2022 | 35 (p.290) | ORDER AND REASONS. IT IS ORDERED that Defendants Michel and Joness Motion to Dismiss, R. Doc. 21, is GRANTED IN PART and DENIED IN PART as further set forth in document. IT IS FURTHER ORDERED that Defendant City of New Orleanss Motion to Dismiss, R. Doc. 22, is DENIED. IT IS FURTHER ORDERED that Defendants Motions to Dismiss regarding Plaintiffs first Complaint, R. Docs. 12 and 13, are DENIED AS MOOT. IT IS FURTHER ORDERED that all Defendants shall have until July 23, 2022 to file answers to Plaintiffs claims. Signed by Judge Eldon E. Fallon on 6/23/2022. (lw) (Entered: 06/23/2022) |
| 07/14/2022 | 36 (p.305) | Second AMENDED COMPLAINT with Jury Demand against All Defendants filed by Kristen Morales.(Dovalina, Stephanie) (Entered: 07/14/2022) |
| 07/25/2022 | 37 (p.344) | ANSWER to 36 (p.305) Amended Complaint with Jury Demand by New Orleans City.(Adams, Jonathan) (Entered: 07/25/2022) |
| 07/25/2022 | 38 (p.379) | ANSWER to 36 (p.305) Amended Complaint by Bobbie Jones, Ed Michel.(McIntire, Amy) Modified text on 7/26/2022 (lw). (Entered: 07/25/2022) |
| 07/26/2022 | 39 (p.410) | Request of Summons Issued as to Office of the Inspector General filed by Kristen Morales re 36 (p.305) Amended Complaint, 20 (p.144) Amended Complaint, 1 (p.12) Complaint,. (Dovalina, Stephanie) (Entered: 07/26/2022) |
| 07/26/2022 | 40 (p.412) | Summons Issued as to Office of the Inspector General. (lw) Modified text on 7/26/2022 (lw). (Entered: 07/26/2022) |
| 08/08/2022 | 41 (p.414) | SUMMONS Returned Executed; Office of the Inspector General served on 8/1/2022, answer due 8/22/2022. (Dovalina, Stephanie) (Entered: 08/08/2022) |
| 08/22/2022 | 42 (p.416) | ANSWER to 36 (p.305) Amended Complaint by Office of the Inspector General.Attorney Amy L. McIntire added to party Office of the Inspector General(pty:dft).(McIntire, Amy) (Entered: 08/22/2022) |
| 09/01/2022 | 43 (p.444) | EXPARTE/CONSENT MOTION to Substitute Attorney. Attorney Corwin M. St. Raymond to be substituted in place of Churita H. Hansell by New Orleans City. (Attachments: # 1 (p.12) Proposed Order)(Adams, Jonathan) (Entered: 09/01/2022) |
| 09/01/2022 | 44 | ORDER granting 43 (p.444) Motion to Substitute Attorney. Added attorney Corwin |

| | | |
|---|---|---|
| | (p.447) | St. Raymond is substituted in place of Churita H. Hansell for New Orleans City. Signed by Judge Eldon E. Fallon on 9/1/2022. (blg) (Entered: 09/02/2022) |
| 10/07/2022 | 45 (p.448) | NOTICE: Scheduling Conference set for 11/2/2022 11:30 AM before case manager by telephone. By Clerk.(lag) (Entered: 10/09/2022) |
| 10/17/2022 | 46 (p.450) | EXPARTE/CONSENT MOTION to Substitute Attorney. Attorney Peter J. Rotolo, III and Catherine Schroeder to be substituted in place of H. Michael Bush and Sarah V. Myers by Office of the Inspector General. (Attachments: # 1 (p.12) Proposed Order)(McIntire, Amy) (Entered: 10/17/2022) |
| 10/17/2022 | 47 (p.453) | ORDER granting 46 (p.450) Motion to Substitute Attorney. Added attorneys Peter Joseph Rotolo, III, Catherine Grace Schroeder for Office of the Inspector General. Attorneys H. Michael Bush and Sarah Voorhies Myers terminated. Signed by Judge Eldon E. Fallon on 10/17/2022. (lag) (Entered: 10/17/2022) |
| 11/02/2022 | 48 (p.454) | SCHEDULING ORDER: Final Pretrial Conference set for 7/25/2023 01:30 PM before Judge Eldon E. Fallon. Telephone Status Conference set for 12/13/2022 01:30 PM before Judge Eldon E. Fallon. Jury Trial set for 8/7/2023 08:30 AM before Judge Eldon E. Fallon. All discovery must be completed by 6/26/2023. Signed by Judge Eldon E. Fallon. (Attachments: # 1 (p.12) Pretrial Notice Form)(lag) (Entered: 11/02/2022) |
| 11/21/2022 | 49 (p.468) | EXPARTE/CONSENT MOTION to Withdraw Jonathan H. Adams and Eraka W. Delarge as Attorney by New Orleans City. (Attachments: # 1 (p.12) Proposed Order)(Adams, Jonathan) (Entered: 11/21/2022) |
| 11/21/2022 | 50 (p.471) | ORDER GRANTING 49 (p.468) Motion to Withdraw as Attorney. IT IS ORDERED that Jonathan H. Adams, Esq. and Eraka W. Delarge, Esq. are hereby withdrawn as counsel of record for the City of New Orleans in this case. Signed by Judge Eldon E. Fallon on 11/21/2022. (pp) (Entered: 11/21/2022) |
| 12/02/2022 | 51 (p.472) | EXPARTE/CONSENT MOTION for Leave to File *to file Third Supplemental and Amending Complaint* by Kristen Morales. (Attachments: # 1 (p.12) Proposed Pleading, # 2 Proposed Order)(Dovalina, Stephanie) (Entered: 12/02/2022) |
| 12/02/2022 | 52 (p.516) | ORDER granting 51 (p.472) Motion for Leave to File 3rd Amended Complaint. Signed by Judge Eldon E. Fallon on 12/2/2022. (mmm) (Entered: 12/02/2022) |
| 12/02/2022 | 53 (p.517) | 3rd AMENDED COMPLAINT with Jury Demand against Bobbie Jones, Ed Michel, New Orleans City, Office of the Inspector General filed by Kristen Morales.(mmm) (Entered: 12/02/2022) |
| 12/13/2022 | 54 (p.557) | Minute Entry for proceedings held before Judge Eldon E. Fallon: Telephone Status Conference held on 12/13/2022. (lag) (Entered: 12/13/2022) |
| 12/14/2022 | 55 (p.558) | ANSWER to 53 (p.517) Amended Complaint with Jury Demand by Bobbie Jones, Ed Michel, Office of the Inspector General.(McIntire, Amy) (Entered: 12/14/2022) |
| 12/16/2022 | 56 (p.585) | *Affirmative Defenses and* ANSWER to 53 (p.517) Amended Complaint with Jury Demand by New Orleans City.(Robins, Elizabeth) (Entered: 12/16/2022) |
| 12/19/2022 | 57 (p.622) | ORDER: Telephone Status Conference set for 2/14/2023 03:30 PM before Judge Eldon E. Fallon.Signed by Judge Eldon E. Fallon on 12/19/2022.(my) (Entered: 12/19/2022) |
| 02/14/2023 | | |

| | | |
|---|---|---|
| | 58 (p.623) | Minute Entry for proceedings held before Judge Eldon E. Fallon: Telephone Status Conference held on 2/14/2023. ORDERED that a Telephone Status Conference set for 4/18/2023 03:30 PM before Judge Eldon E. Fallon. (lag) (Entered: 02/14/2023) |
| 02/23/2023 | 59 (p.624) | MOTION for Summary Judgment *Based on Preclusive Effect of State Court Judgment* by Bobbie Jones, Ed Michel, Office of the Inspector General. Motion(s) will be submitted on 3/15/2023. (Attachments: # 1 (p.12) Memorandum in Support, # 2 Exhibit, # 3 (p.46) Statement of Contested/Uncontested Facts, # 4 (p.47) Notice of Submission)(McIntire, Amy) (Entered: 02/23/2023) |
| 03/01/2023 | 60 (p.911) | EXPARTE/CONSENT MOTION for Extension of Time to File Response/Reply as to 59 (p.624) MOTION for Summary Judgment *Based on Preclusive Effect of State Court Judgment Mtn to Continue Submission Date* by Kristen Morales. (Attachments: # 1 (p.12) Proposed Order)(Dovalina, Stephanie) (Entered: 03/01/2023) |
| 03/01/2023 | 61 (p.914) | ORDER granting 60 (p.911) Motion to continue, Resetting submission date on 59 (p.624) MOTION for Summary Judgment *Based on Preclusive Effect of State Court Judgment* : Motion(s) will be submitted on 3/29/2023. Signed by Judge Eldon E. Fallon on 3/1/2023.(lag) (Entered: 03/01/2023) |
| 03/21/2023 | 62 (p.915) | RESPONSE/MEMORANDUM in Opposition filed by Kristen Morales re 59 (p.624) MOTION for Summary Judgment *Based on Preclusive Effect of State Court Judgment* . (Attachments: # 1 (p.12) Statement of Contested/Uncontested Facts, # 2 Exhibit, # 3 (p.46) Exhibit, # 4 (p.47) Exhibit, # 5 (p.48) Exhibit, # 6 (p.50) Exhibit, # 7 (p.53) Exhibit, # 8 (p.55) Exhibit, # 9 (p.58) Exhibit, # 10 (p.59) Exhibit, # 11 (p.60) Exhibit)(Dovalina, Stephanie) (Entered: 03/21/2023) |
| 03/27/2023 | 63 (p.1398) | EXPARTE/CONSENT MOTION for Leave to File *Reply Memorandum of Law in Support of New Orleans Office of Inspector General, Ed Michel, and Bobbie Jones Motion for Summary Judgment Based on Preclusive Effect of State Court Judgment* by Bobbie Jones, Ed Michel, Office of the Inspector General. (Attachments: # 1 (p.12) Proposed Order, # 2 Proposed Pleading)(McIntire, Amy) Modified on 3/28/2023 (lag). (Entered: 03/27/2023) |
| 03/28/2023 | 64 (p.1413) | ORDER granting 63 (p.1398) Motion for Leave to File Reply. Signed by Judge Eldon E. Fallon on 03/28/2023. (am) (Entered: 03/28/2023) |
| 03/28/2023 | 65 (p.1414) | REPLY to Response to Motion filed by Bobbie Jones, Ed Michel, Office of the Inspector General re 59 (p.624) MOTION for Summary Judgment *Based on Preclusive Effect of State Court Judgment*. (am) (Entered: 03/28/2023) |
| 03/30/2023 | 66 (p.1427) | ORDER AND REASONS granting 59 (p.624) Motion for Summary Judgment. Signed by Judge Eldon E. Fallon on 3/29/2023. (lag) (Entered: 03/30/2023) |
| 04/03/2023 | 67 (p.1435) | MOTION for Summary Judgment by New Orleans City. Motion(s) will be submitted on 4/26/2023. (Attachments: # 1 (p.12) Memorandum in Support, # 2 Statement of Contested/Uncontested Facts, # 3 (p.46) Notice of Submission)(Robins, Elizabeth) (Entered: 04/03/2023) |
| 04/03/2023 | 68 (p.1449) | DEFICIENT DOCUMENT - EXPARTE/CONSENT MOTION to Expedite *Hearing on City MSJ* by New Orleans City. (Robins, Elizabeth) Modified on 4/11/2023 (dno). (Entered: 04/03/2023) |
| 04/12/2023 | 69 (p.1451) | EXPARTE/CONSENT MOTION to Expedite *Consideration of City's MSJ (Doc 67)* by New Orleans City. (Attachments: # 1 (p.12) Proposed Order)(Robins, Elizabeth) |

| | | |
|---|---|---|
| | | (Entered: 04/12/2023) |
| 04/14/2023 | 70 (p.1454) | ORDER that the telephone status conference scheduled in this case on 4/18/2023 is CANCELLED. Signed by Judge Eldon E. Fallon on 4/13/2023.(lag) (Entered: 04/14/2023) |
| 04/18/2023 | 71 (p.1455) | RESPONSE/MEMORANDUM in Opposition filed by Kristen Morales re 67 (p.1435) MOTION for Summary Judgment . (Attachments: # 1 (p.12) Statement of Contested/Uncontested Facts, # 2 Exhibit 1, # 3 (p.46) Exhibit 2, # 4 (p.47) Exhibit 3, # 5 (p.48) Exhibit 4, # 6 (p.50) Exhibit 5, # 7 (p.53) Exhibit 6, # 8 (p.55) Exhibit 7, # 9 (p.58) Exhibit 8, # 10 (p.59) Exhibit 9, # 11 (p.60) Exhibit 10, # 12 (p.61) Exhibit 11, # 13 (p.82) Exhibit 12, # 14 (p.96) Exhibit 13, # 15 (p.99) Exhibit 14, # 16 (p.100) Exhibit 15, # 17 (p.101) Exhibit 16, # 18 (p.102) Exhibit 17, # 19 (p.143) Exhibit 18)(Dovalina, Stephanie) (Entered: 04/18/2023) |
| 04/19/2023 | 72 (p.2150) | ORDER granting 67 (p.1435) Motion for Summary Judgment; finding as moot 69 (p.1451) Motion to Expedite. Signed by Judge Eldon E. Fallon on 04/19/2023. (am) (Entered: 04/19/2023) |
| 04/21/2023 | 73 (p.2151) | JUDGMENT entered in favor of New Orleans City, Office of the Inspector General, Bobbie Jones, Ed Michel against Kristen Morales, dismissing the plaintiff's case with prejudice. Signed by Judge Eldon E. Fallon on 4/20/2023.(lag) (Entered: 04/21/2023) |
| 04/26/2023 | 74 (p.2152) | MOTION to Amend/Correct 66 (p.1427) Order on Motion for Summary Judgment by Kristen Morales. Motion(s) will be submitted on 5/24/2023. (Attachments: # 1 (p.12) Memorandum in Support, # 2 Exhibit, # 3 (p.46) Notice of Submission)(Dovalina, Stephanie) (Entered: 04/26/2023) |
| 05/03/2023 | 75 (p.2307) | EXPARTE/CONSENT MOTION for Extension of Deadlines *to Seek Recovery of Attorneys' Fees and Costs* by Bobbie Jones, Ed Michel, Office of the Inspector General. (Attachments: # 1 (p.12) Proposed Order)(McIntire, Amy) (Entered: 05/03/2023) |
| 05/03/2023 | 76 (p.2311) | ORDER granting 75 (p.2307) Motion for Extension of Deadlines as set forth in document. Signed by Judge Eldon E. Fallon on 5/3/2023. (mmm) (Entered: 05/03/2023) |
| 05/16/2023 | 77 (p.2312) | RESPONSE/MEMORANDUM in Opposition filed by Bobbie Jones, Ed Michel, Office of the Inspector General re 74 (p.2152) MOTION to Amend/Correct 66 (p.1427) Order on Motion for Summary Judgment . (McIntire, Amy) (Entered: 05/16/2023) |
| 05/17/2023 | 78 (p.2318) | ORDER AND REASONS: denying 74 (p.2152) Motion to Amend/Correct, as stated herein. Signed by Judge Eldon E. Fallon on 05/17/2023. (am) (Entered: 05/17/2023) |
| 05/19/2023 | 79 (p.2321) | NOTICE OF APPEAL by Kristen Morales as to 66 (p.1427) Order on Motion for Summary Judgment, 78 (p.2318) Order on Motion to Amend/Correct, 72 (p.2150) Order on Motion for Summary Judgment, Order on Motion to Expedite, 73 (p.2151) Judgment. (Filing fee $ 505, receipt number ALAEDC-9943815.) (Dovalina, Stephanie) (Entered: 05/19/2023) |
| 05/24/2023 | 80 (p.2323) | APPEAL TRANSCRIPT REQUEST by Kristen Morales re 79 (p.2321) Notice of Appeal,. (Transcript is unnecessary for appeal purposes) (Dovalina, Stephanie) (Entered: 05/24/2023) |

| 05/30/2023 | 81 (p.2325) | BILL OF COSTS by Bobbie Jones, Ed Michel, Office of the Inspector General. Matter to be submitted on May 31, 2023 at 10:00 before Clerk of Court. Any opposition should be filed within 14 days of the filing of this document. (Attachments: # 1 (p.12) Memorandum in Support, # 2 Exhibit Schedule and Itemization of Costs, # 3 (p.46) Exhibit Exhibits to Schedule, # 4 (p.47) Notice of Submission, # 5 (p.48) Affidavit)(McIntire, Amy) (Entered: 05/30/2023) |
| 05/30/2023 | 82 (p.2335) | MOTION for Attorney Fees *and Expert Costs* by Bobbie Jones, Ed Michel, Office of the Inspector General. Motion(s) will be submitted on 6/21/2023. (Attachments: # 1 (p.12) Memorandum in Support, # 2 Exhibit, # 3 (p.46) Notice of Submission)(McIntire, Amy) (Entered: 05/30/2023) |
| 05/30/2023 | 83 | USCA Case Number 23-30340 appealed to USCA, 5th Circuit for 79 (p.2321) Notice of Appeal, filed by Kristen Morales (lag) (Entered: 05/31/2023) |

Morales v. New Orleans City et al (2:21-cv-01992-EEF-MBN)

TAB 2

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| **MORALES** | * | **CIVIL ACTION** |
| **VERSUS** | * | **NO. 21-1992** |
| **CITY OF NEW ORLEANS, OFFICE** | * | **SECTION "L" (5)** |
| **OF OIG THROUGH ED MICHEL,** | | |
| **INTERIM INSPECTOR GENERAL,** | * | |
| **AND BOBBIE JONES** | | |

<u>**ORDER AND REASONS**</u>

Before the Court is Defendants Office of the Inspector General (OIG), Ed Michel, and

Bobbie Jones' (collectively "Defendants") Motion for Summary Judgment. R. Doc. 59. Plaintiff

has responded in opposition. R. Doc. 62. Having considered the briefing and the applicable law,

the Court now rules as follows.

**I.     BACKGROUND**

This case involves alleged employment discrimination by the Office of Inspector General

("OIG") of the City of New Orleans (the "City"). Plaintiff Kristen Morales alleges that she was

employed as a criminal investigator for the OIG from April 18, 2011 until her termination on

January 7, 2021. R. Doc. 53 at 4–6. Plaintiff alleges that she was wrongfully terminated in

retaliation for filing a charge of discrimination, opposing discriminatory and unethical practices,

and reporting violations of state and federal law. *Id.* at 17. Plaintiff further alleges that, prior to her

termination, she was suspended without pay starting on December 14, 2020, and was otherwise

subjected to a hostile work environment and intentionally harassed as Defendants sought to

wrongfully discipline and terminate her. *Id.* at 6. Plaintiff alleges that the retaliation began after

she lodged internal complaints in January 2019 claiming that she was treated differently from her

male colleagues, including by being required to maintain a certification but not receiving a

23-30340.1427

corresponding pay increase. *Id.* at 7. Plaintiff also alleges that Ed Michel ("Michel"), the Interim Inspector of the OIG and Plaintiff's supervisor, contributed to her wrongful termination by falsely claiming that Plaintiff had stolen an iPhone, and that Bobbie Jones ("Jones"), an information technology specialist in the OIG, contributed by hacking into Plaintiff's private Facebook account and downloading information. *Id.* at 21–22. Plaintiff asserts claims against the OIG for (1) retaliation under Title VII, 42 U.S.C. § 20003-3(a); (2) conspiracy to violate human rights under La. R.S. § 51:2256; (3) violation of the Louisiana Whistleblower Act, La. R.S. § 23:967; (4) deprivation of a vested property right under 42 U.S.C. § 1983; (5) disparate treatment based on gender and race under Title VII, 42 U.S.C. § 2000e-2(a); (6) violations of 42 U.S.C. §§ 1981 and 1983; (7) discrimination based on gender and race under the Louisiana Employment Discrimination Law, La. R.S. § 23:301 et seq.; and (8) conspiracy to interfere with civil rights under 42 U.S.C. § 1985(3). *Id.* at 26-36. Plaintiff brings her claim for deprivation of a vested property right under 42 U.S.C. § 1983 against Michel in addition to the OIG. *Id.* at 30–32. She also asserts claims against Bobbie Jones for violation of the Louisiana Unfair Trade Practice Act, La. R.S. § 51:1405(a), *et. seq.*, and for intentional infliction of emotional distress under Louisiana law. *Id.* at 36–39.

Plaintiff asserts that she has satisfied all administrative prerequisites for filing suit under Title VII and the Louisiana Employment Discrimination Law. *Id.* at 2–3. Plaintiff avers that she filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on November 23, 2020 and filed an amended charge of discrimination on May 10, 2021. *Id.* Plaintiff further avers that the Civil Rights Division of the Department of Justice issued a Notice of Right to Sue on July 30, 2021. *Id.*

23-30340.1428

Plaintiff seeks compensatory damages for mental anguish and emotional distress; back pay; loss of future earnings and earning capacity; and loss of benefits. *Id.* at 39–40. Plaintiff also seeks punitive damages and attorneys' fees. *Id.*

## II.   PRESENT MOTIONS

Defendants now move this court to grant summary judgment in their favor dismissing all of Plaintiffs claims against them. R. Doc. 59. Defendants argue that Plaintiff's claims are barred by collateral estoppel and res judicata. *Id.* at 1. They assert that all of Plaintiff's claims arise from her suspension and termination with the OIG, and that Plaintiff has already appealed that suspension and termination to the New Orleans Civil Service Commission (NOCSC), which held that Plaintiff was properly suspended and terminated. *Id.* The NOCSC decision was then upheld by the Louisiana Fourth Circuit Court of Appeals and the Louisiana Supreme Court. *Id.* at 1–2. Accordingly, Defendants argue that there is a binding and final state court judgment upholding Plaintiff's suspension and termination, which ultimately bars Plaintiff from bringing the claims she seeks to raise in this matter under the doctrines of collateral estoppel and res judicata. *Id.*

In opposition, Plaintiff asserts that the claims she raises here are not barred by collateral estoppel and res judicata because they were not adjudicated in the NOCSC proceeding. R. Doc. 62 at 10

### III. APPLICABLE LAW
#### A.  Summary Judgment

Summary judgment is proper when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The court must view the evidence in a light most favorable to the nonmovant. *Coleman v. Hous. Indep. Sch. Dist.*, 113 F.3d 528, 533 (5th Cir. 1997). Initially, the movant bears the burden of presenting the basis for the

3

motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). When a party seeks summary judgment on an affirmative defense, the movant "must establish beyond peradventure all of the essential elements" of the defense to warrant judgment in his favor. *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). The burden then shifts to the nonmovant to come forward with specific facts showing there is a genuine dispute for trial. See Fed. R. Civ. P. 56(c); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). "A dispute about a material fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Bodenheimer v. PPG Indus., Inc.*, 5 F.3d 955, 956 (5th Cir. 1993) (citation omitted).

## B. Res Judicata and Collateral Estoppel

The doctrine of res judicata provides that once a final judgment on the merits has been entered in a case, the parties and their privies are precluded from relitigating claims that were or could have been raised in that case. *Allen v. McCurry*, 449 U.S. 90, 94 (1980) (citation omitted). "When a federal court is asked to give res judicata effect to a state court judgment, the federal court must determine the preclusiveness of that state court judgment under the res judicata principles of the state from which the judgment originates." *Jones v. Sheehan, Young & Culp, P.C.*, 82 F.3d 1334, 1338 (5th Cir. 1996). Here, as the preclusive judgment arises from Louisiana state court, La. R.S. § 13:4231 sets forth the requirements of res judicata:

> Except as otherwise provided by law, a valid and final judgment is conclusive between the same parties, except on appeal or other direct review, to the following extent:
>
> (1) If the judgment is in favor of the plaintiff, all causes of action existing at the time of final judgment arising out of the transaction or occurrence that is the subject matter of the litigation are extinguished and merged in the judgment.
>
> (2) If the judgment is in favor of the defendant, all causes of action existing at the time of final judgment arising out of the transaction or occurrence that is the

23-30340.1430

subject matter of the litigation are extinguished and the judgment bars a subsequent action on those causes of action.

(3) A judgment in favor of either the plaintiff or the defendant is conclusive, in any subsequent action between them, with respect to any issue actually litigated and determined if its determination was essential to that judgment.

Louisiana law "embraces the broad usage of the term 'res judicata' to include both claim preclusion (res judicata) and issue preclusion (collateral estoppel)." *Henkelmann v. Whiskey Island Pres., LLC*, 145 So. 3d 465, 470 (La. Ct. App. 1 Cir. 2014). Claim preclusion (res judicata) and issue preclusion (collateral estoppel) are distinct principles. Under claim preclusion or res judicata, a "judgment on the merits precludes the parties from relitigating matters that were or could have been raised in that action." *Id.* Res judicata applies when (1) there is a prior valid judgment; (2) the prior judgment is final; (3) the parties in the prior suit and the present suit are the same; (4) the cause or causes of action asserted in the second suit existed at the time of the final judgment in the first litigation; and (5) the cause or causes of action asserted in the second suit arose out of the transaction or occurrence that was the subject matter of the first litigation. *Gabriel v. Lafourche Parish Water Dist.*, 112 So. 3d 281, 284 (La. Ct. App. 1 Cir. 2013) (citing *Burguieres v. Pollingue*, 843 So. 2d 1049, 1053 (La. 2003)).

Under issue preclusion or collateral estoppel, "once a court decides an issue of fact or law necessary to its judgment, that decision precludes relitigation of the same issue in a different cause of action between the same parties." *Henkelmann*, 145 So. 3d at 470. The criteria used to determine whether a party is precluded from relitigating an issue are: (1) whether the issue at stake is identical to the one involved in the prior litigation, (2) whether the issue was actually litigated, and (3) whether the determination of the issues was necessary to the judgment in the prior litigation. *McDonald v. Cason*, 801 So. 2d 1255, 1262 (La. App. 3 Cir. 2001).

23-30340.1431

## IV.   DISCUSSION

The parties do not dispute that all of Plaintiff's claims asserted in state and federal court arise from Plaintiff's suspension and termination by the OIG. Because the NOCSC ruled that Plaintiff's suspension and termination were proper, and because that decision was upheld by the Louisiana Fourth Circuit and the Louisiana Supreme Court, Defendants argue that Plaintiff is barred by res judicata from raising claims which, for her to prevail, would require her to show that her suspension and termination were in some way improper. R. Doc. 59-1 at 10–15. On the other hand, Plaintiff argues that the specific claims she seeks to bring in this suit were not or could not have been previously litigated in state court. R. Doc. 62.

In it clear that, under Louisiana law, "the [NOCSC] has exclusive jurisdiction over classified civil service employer-employee disputes that are employment related." *Simon v. Bd. of Comm'rs*, 2004-0368 (La. App. 4 Cir. 05/12/04); 875 So. 2d 102, 104 (citing La. Const. art. 10, sec. 10(A)(1); *Eberhardt v. Levasseur*, 630 So. 2d 844 (La. App. 4 Cir. 1993)). The Louisiana Constitution vests the NOCSC with the "exclusive power and authority to hear and decide all removal and disciplinary cases" for classified employees like Plaintiff. *See* La. Const. art. 10, sec. 12(B). "The entire thrust of the exclusive jurisdiction grant is to preclude district courts from having concurrent jurisdiction with the [NOCSC] over classified civil service employer-employee disputes." *Russo v. Jefferson Par. Water Dep't*, No. 96-2134, 1998 U.S. Dist. LEXIS 444, at *18 (E.D. La. Jan. 16, 1998) (internal quotations omitted). Because the Civil Service Commission has exclusive jurisdiction to hear employment-related disputes, "a civil service employee must first successfully challenge his termination with the [NO]CSC before he can pursue damages or a money judgment in district court." *Winn v. New Orleans City*, No. 12-1307, 2015 WL 10713690 at *4 (E.D. La. Jan. 14, 2015), *aff'd sub nom. Winn v. City of New Orleans*, 620 F. App'x 270 (5th

6

Cir. 2015) (quoting *Johnson v. Bd. of Supervisors of La. State Univ.*, 45105 (La. App. 2 Cir. 03/03/10); 32 So. 3d 1041, 1047).

> *Winn v. New Orleans City* is controlling here. In *Winn*, the Fifth Circuit upheld the district court's dismissal of a similar civil rights claim. 620 F. App'x 270 (5th Cir. 2015). there, a New Orleans Police Officer was terminated and appealed his termination to the NOCSC, which determined that the termination was proper. The Louisiana Fourth Circuit affirmed. The officer then filed a Section 1983 claim against the New Orleans Police Department alleging that he had been terminated in retaliation for exercising his First Amendment rights. The federal district court ruled that the officer's claim was barred by res judicata because, in order to prevail on that claim, the officer would need to show that the exercise of his First Amendment rights was the reason for his termination, and the reason for the officer's termination had already been adjudicated otherwise in state court. *Winn*, WL 10713690, at \*4; *see also Hughes v. Arveson*, 924 F. Supp. 735, 737-38 (M.D. La. 1996) (holding that a plaintiff's Section 1981 claim was barred by res judicata because she could have raised her allegation of race discrimination before the Civil Service Commission); *Paz v. City of Houston*, 748 F. Supp. 480, 486 (S.D. Tex. 1990) (holding that state court judgment affirming decision of Civil Service Commission was res judicata of constitutional claims raised by police officer in subsequent federal litigation).

> The same is true in this case. Plaintiff argues that her suspension and termination were discriminatory and/or retaliatory. But the state court proceedings in this matter have already established that Plaintiff was fired based on her own action of giving away an iPhone owned by the OIG to a private citizen. As the Fifth Circuit held in *Winn*, the Louisiana Fourth Circuit's holding that Plaintiff was terminated for legal cause "implicitly and necessarily rejects" any

23-30340.1433

contention that Plaintiff "was terminated for improper reasons." 620 F. App'x at 273.[1] Accordingly, this issue is precluded. This renders irrelevant Plaintiff's argument that her exact claims raised here were not or could not have been raised before in state court: Plaintiff cannot prove an essential element of her claims because the issue of the reason for her termination is precluded. Therefore, summary judgment for Defendants must be entered on those claims.

## V.    CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment, R. Doc. 59, is hereby **GRANTED**.

New Orleans, Louisiana, this 29th day of March, 2023.

UNITED STATES DISTRICT JUDGE

---

[1] Plaintiff attempts to distinguish *Winn* by arguing that *Winn* dismissed a free-speech retaliation claim, and, here, she is not alleging free speech retaliation. R. Doc. 62 at 10. But nothing in *Winn* limits its holding to free-speech retaliation claims; its reasoning applies equally to the civil rights claims Plaintiff seeks to raise here.

23-30340.1434

TAB 3

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **MORALES** | * | **CIVIL ACTION** |
| **VERSUS** | * | **NO. 21-1992** |
| **CITY OF NEW ORLEANS, OFFICE** | * | **SECTION "L" (5)** |
| **OF OIG THROUGH ED MICHEL,** | | |
| **INTERIM INSPECTOR GENERAL,** | * | |
| **AND BOBBIE JONES** | | |

## ORDER AND REASONS

Before the Court is Defendant New Orleans City's Motion for Summary Judgment. R. Doc, 67. Plaintiff has responded in opposition. R. Doc. 71. Plaintiff's arguments against summary judgment have already been rejected by this Court in its order, R. Doc. 66, granting the other Defendants' Motion for Summary Judgment, R. Doc. 59. Accordingly, for the same reasons as explained in the Court's prior order, R. Doc. 66, New Orleans City's Motion for Summary Judgment is hereby **GRANTED**. Defendant's Motion to Expedite consideration of its Motion for Summary Judgment is **DENIED AS MOOT**.

New Orleans, Louisiana, this 19th day of April, 2023.

_____
UNITED STATES DISTRICT JUDGE

1

TAB 4

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

KRISTEN MORALES                                    CIVIL ACTION

VERSUS                                             NO.   21-1992

CITY OF NEW ORLEANS, ET AL                         SECTION: L (5)

J U D G M E N T

Considering this Court's Order & Reasons entered herein on March 30, 2023, and on

April 19, 2023, accordingly:

IT IS ORDERED, ADJUDGED AND DECREED that there be judgment in favor of the

defendants, Office of the Inspector General (OIG), Ed Michel, Bobbie Jones and the City of New

Orleans, and against plaintiff, Kristen Morales, dismissing the plaintiff's case, with prejudice, with

each party to bear its own costs.

New Orleans, Louisiana, this   20th   day of April, 2023.

**ELDON E. FALLON**
**UNITED STATES DISTRICT JUDGE**

TAB 5

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| **MORALES** | * | **CIVIL ACTION** |
| **VERSUS** | * | **NO. 21-1992** |
| **CITY OF NEW ORLEANS, OFFICE** | * | **SECTION "L" (5)** |
| **OF OIG THROUGH ED MICHEL,** | | |
| **INTERIM INSPECTOR GENERAL,** | * | |
| **AND BOBBIE JONES** | | |

**ORDER AND REASONS**

Before the Court is Plaintiff's Motion, R. Doc. 74, to Amend this Court's Order, R. Doc. 66, granting Defendants' Motion for Summary Judgment, R. Doc. 59. Having considered the briefing and the applicable law, the Court rules as follows.

**I.     BACKGROUND**

This case involves alleged employment discrimination by the Office of Inspector General ("OIG") of the City of New Orleans (the "City"). Plaintiff Kristen Morales alleged that she was employed as a criminal investigator for the OIG from April 18, 2011 until her termination on January 7, 2021. R. Doc. 53 at 4–6. Plaintiff alleged that she was wrongfully terminated in retaliation for filing a charge of discrimination, opposing discriminatory and unethical practices, and reporting violations of state and federal law. *Id.* at 17. Plaintiff further alleged that, prior to her termination, she was suspended without pay starting on December 14, 2020, and was otherwise subjected to a hostile work environment and intentionally harassed as Defendants sought to wrongfully discipline and terminate her. *Id.* at 6.

Previously, Defendants moved for summary judgment on Plaintiff's claims, arguing that they are barred by collateral and res judicata because they all arise from her suspension and termination with the OIG, which Plaintiff already unsuccessfully appealed to the New Orleans

1

Civil Service Commission (NOCSC), whose decision was upheld by the Louisiana Fourth Circuit Court of Appeals and the Louisiana Supreme Court. The Court agreed, holding that because there is a binding and final state court judgment upholding Plaintiff's suspension and termination, Plaintiff's claims were barred by collateral estoppel and res judicata. R. Doc. 66.

## II.    DISCUSSION

Plaintiff now moves this Court to amend its judgment pursuant to Federal Rule of Civil Procedure 59(e). Rule 59(e) allows for the filing of a Motion to Alter or Amend a judgment if filed no later than 28 days after the entry of the judgment. A "motion to alter or amend a judgment serves the narrow purpose of allowing a party to correct manifest errors of law or fact or to present newly discovered evidence." *Harris v. BP Expl. & Prod. Inc.*, 2022 WL 16851174, at *2 (E.D. La. Nov. 10, 2022) (internal citations omitted). However, altering, amending, or reconsidering a judgment under Rule 59(e) "is an extraordinary remedy that should be used sparingly." *Templet v. HydroChem Inc.*, 367 F.3d 473, 479 (5th Cir. 2004).

To prevail on a Rule 59(e) motion, the moving party must prove one of the following: "(1) the motion is necessary to correct a manifest error of fact or law; (2) the movant presents newly discovered or previously unavailable evidence, (3) the motion is necessary in order to prevent manifest injustice; or (4) the motion is necessary is justified by an intervening change in the controlling law." *Flynn v. Terrebonne Parish Sch. Bd.*, 348 F. Supp. 2d 769, 771 (E.D. La. 2004). Here, Plaintiff asserts that amendment of the Court's order is necessary to avoid errors of law and manifest injustice.

However, Plaintiff's motion merely rehashes her arguments made in opposition to Defendants' Motion for Summary Judgment, which this Court has already considered and rejected. "A [Rule 59(e)] motion is not the proper vehicle for rehashing evidence, legal theories, or

2

23-30340.2319

arguments that could have been offered[, or were offered,] . . . before the entry of judgment." *Harris*, 2022 WL 16851174, at *2. "[A] Rule 59 motion is not a vehicle for rehashing issues concluded to the movant's dissatisfaction." *Lois Frank Shell Oil Co.*, No. 11-871, 2012 U.S. Dist. LEXIS 51316, at *8 (E.D. La. Apr. 11, 2012). Plaintiff seeks in her Motion to Amend merely to have the Court reconsider arguments that have already been made and rejected. Accordingly, the Court finds no reason to reconsider its prior order granting summary judgment to Defendants.

## III. CONCLUSION

For the foregoing reasons, Plaintiff's Motion to Amend, R. Doc. 74, is hereby **DENIED**.

New Orleans, Louisiana, this 17th day of May, 2023.

UNITED STATES DISTRICT JUDGE

3

TAB 6

**CIVIL SERVICE COMMISSION**
**CITY OF NEW ORLEANS**

**KRISTEN MORALES,**
**Appellant**

v.                                          **Docket Nos. 9234 & 9240**

**CITY OF NEW ORLEANS OFFICE OF INSPECTOR GENERAL**
**Appointing Authority**

**DECISION**

As indicated in the attached Hearing Examiner's extremely thorough and excellently written December 17, 2021 Report, Kristen Morales ("Appellant") was employed by the Office of Inspector General ("Appointing Authority" or "OIG") as an Investigator IV with permanent status. The Appointing Authority placed the Appellant on emergency suspension on December 15, 2020, and terminated her employment by letter dated January 12, 2021. (Ex. HE-1).

In addition to reviewing the above referenced Hearing Examiner's December 17, 2021 Report, the undersigned Commissioners have reviewed the entire record in this matter, including the transcripts and exhibits regarding the hearing which took place before the Hearing Examiner on April 21, 2021; June 16, 2021; and June 21, 2021. At the hearing, both parties had a full and fair opportunity to present any and all evidence for this Commission's consideration. After careful review and consideration of the entire record analyzed in light of applicable, controlling Louisiana law, the undersigned Commissioners

9

EXHIBIT 4

23-30340.771

fully adopt as their own the advisory recommendations as set forth by the Hearing Examiner in his December 17, 2021 Report. For the reasons set forth below and in the attached December 17, 2021 Report, the appellant's appeal is DENIED.

More specifically, although the January 12, 2021 termination letter references multiple alleged policy violations, the Appointing Authority candidly admitted at the hearing on June 21, 2021, that the decision to terminate the Appellant was primarily based on the Appellant improperly, without authorization, giving an OIG iPhone to a private individual (Reginald Fournier) and then trying to justify that gift by wrongfully claiming that she had permission to do so from her supervisor (Howard Schwartz). (Tr. Vol.II, pp 60-61). Thus, the undersigned Commissioners have particularly focused on this issue involving the iPhone in analyzing whether the suspension and ultimate termination were warranted.

The undersigned Commissioners agree with the Hearing Examiner that the appellant's actions in regard to the iPhone, especially her lack of candor in wrongfully claiming she had permission to give it to Fournier when there is absolutely no evidence to support that assertion, justified the suspension and termination. Howard Schwartz, called as a witness by the Appellant, specifically testified that he would not have authorized the Appellant to give an OIG cell phone to a private person. (Tr. Vol II, page 440). As stated by the Hearing Examiner on page 12 of his Report: "As previously held, complete candor is an essential requirement of the {Appellant's} position." OIG Investigator Michael Centola testified at the hearing that the Appellant's lack of candor would call into question her ability "to testify in any hearing." (Tr.Vol II, page 60).

10

23-30340.772

It is well-settled that, in an appeal such as this before the Commission pursuant to Article X, § 8(A) of the Louisiana Constitution, the appointing authority has the burden of proving by a preponderance of the evidence: 1) the occurrence of the complained of activity, and 2) that the conduct complained of impaired the efficiency of the public service in which the appointing authority is engaged. *Gast v. Dep't of Police*, 2013-0781 (La. App. 4 Cir. 3/13/14), 137 So. 3d 731, 733 (quoting *Cure v. Dep't of Police*, 2007-0166 (La. App. 4 Cir. 8/1/07), 964 So. 2d 1093, 1094). The Commission has a duty to decide independently from the facts presented in the record whether the appointing authority carried its legally imposed burden of proving by a preponderance of evidence that it had good or lawful cause for suspending and terminating the classified employee and, if so, whether such discipline was commensurate with the dereliction. *Abbott v. New Orleans Police Dep't*, 2014-0993 (La. App. 4 Cir. 2/11/15); 165 So.3d 191, 197; *Walters v. Dept. of Police of the City of New Orleans*, 454 So. 2d 106 (La. 1984). The entire record in this case presently before the Commission clearly shows that that the OIG has carried its burden of proving the occurrence of the Appellant's wrongful activity and that her conduct impairs the efficiency of the public service in which the OIG is engaged. The imposed penalties of suspension and termination were commensurate with the offenses proven to have been committed by the Appellant, a classified employee.

As to each and all of the remaining allegations against the Appellant as set forth in the above referred to January 12, 2021 letter sent to the Appellant, the undersigned Commissioners fully agree with all of the recommendations made by the Hearing Examiner. Thus, the undersigned Commissioners refer the parties to the December 17, 2021 Report of the Hearing Examiner as we

adopt as our own each and every recommendation made therein by the Hearing Examiner. We see

no reason to repeat therein what is clearly set forth in that December 17, 2021 Report.

    In conclusion, the Appellant's appeal is DENIED.


This is the _14th_ day of _January_ 2022.

WRITER:

    Mark C. Surprenant
    MARK SURPRENANT, COMMISSIONER

CONCUR:

    Brittney Richardson
    BRITTNEY RICHARDSON, CHARPERSON

    Ruth White Davis
    RUTH DAVIS, COMMISSIONER

Signature: _Mark C. Surprenant_
Mark C. Surprenant (Jan 13, 2022 13:53 CST)

Signature: _Ruth White Davis_
Ruth Davis (Jan 13, 2022 22:01 CST)

Signature: _BRich_
Brittney Richardson (Jan 13, 2022 22:26 CST)

12

23-30340.774

KRISTEN MORALES                    CIVIL SERVICE COMMISSION

VERSUS                             CITY OF NEW ORLEANS

OFFICE OF INSPECTOR GENERAL        NO. 9234 & 9240

## REPORT OF THE HEARING EXAMINER

### INTRODUCTION

Kristen Morales ("Appellant") was employed by the Office of Inspector General ("Appointing Authority" or "OIG") as an Investigator IV with permanent status. The Appointing Authority placed the Appellant on emergency suspension on December 15, 2020, and terminated her employment by letter dated January 12, 2021. (H.E. Exh. 1). While the termination letter references multiple policy violations, the Appointing Authority candidly admitted that the decision to terminate the Appellant was based on the first listed reason found in the termination letter as follows:

(I)    Giving an iPhone, which was purchased and owned by the Office of Inspector General (OIG), to a private individual who had no official connection to the OIG nor the City of New Orleans, which violates Policy Memorandum 60(R)and Louisiana.

Ed Michel, the Interim Inspector General, testified that he received advice from a staff member of the Department of Civil Service to document in the termination letter every incident he could uncover, regardless of whether those other incidents were the basis for disciplinary action. (Tr. Vol. II at 347 – 349; 417 – 418). As a consequence, the termination letter is a bloated eleven-page document containing seven separate alleged policy violations, which

13



unfortunately resulted in a voluminous hearing transcript containing needless repetitive details. Because the Appointing Authority chose to provide evidence regarding all seven allegations, this report will address all of them, even though some are without merit and others are arguably irrelevant based upon the Appointing Authority's candid admissions.

## ALLEGATIONS

### I.   iPhone

#### A. Facts and Testimony

##### 1.  Undisputed Facts

Certain facts are not in dispute. The Appellant does not deny giving an iPhone 4 belonging to the OIG to an individual named Reginald Fournier. Fournier was employed as a cafeteria worker in the Federal Reserve Bank ("FRB") building where the OIG is located. The Appointing Authority determined that the Appellant lacked candor when questioned regarding the iPhone, which caused the Appointing Authority to lose trust in her ability to effectively perform the duties of an OIG investigator. (Tr. Vol. II, at 302 – 303; 312 – 316; 347 – 348).

The Appellant gave Fournier the iPhone towards the end of 2015. (Tr. Vol. II, at 22). At the time she gave Fournier the iPhone, it was at least four years old and not in use by the OIG. (Tr. Vol. II, at 21; A.A. Exh. 13). The Appointing Authority learned and confirmed that the Appellant gave Fournier the iPhone on or around October 22, 2020, after Bobbie Jones, IT Security Specialist,

14

23-30340.776



reported the information to him. (Tr. Vol. II, at 207 – 210; Morales Exh. 12). On or around November 16, 2020, OIG Investigator Terrance Barrett met with Fournier and took custody of the iPhone, which he confirmed upon inspection was OIG property. (Tr. Vol. II, at 142 – 146; Morales Exh. 13). On December 1, 2020, Larry Centola, Chief of Investigation, called the Appellant into his office without advanced notice to discuss the iPhone, and to inform her for the first time that she was under investigation. (Tr. Vol. II, at 23 – 24; A.A. Exh. 18). While the Appellant admitted giving Fournier the iPhone, she denied that she did so without permission from her then supervisor Howard Schwartz. (Tr. Vol. II at 27 – 28; A.A. Exh. 18). On January 7, 2021, the Appointing Authority conducted a pre-termination hearing after the Appellant's employment was terminated.

### 2. Larry Centola

Larry Centola testified that he oversaw the initial investigation regarding the missing iPhone. (TR. Vol. II, at 10 – 11). Centola stated that Bobbie Jones informed him that one of the FRB employees, Reginald Fournier, was inquiring about obtaining a charger for an iPhone provided to him by the Appellant. Because the OIG's inventory list reflected missing iPhones, he reported what he had learned from Jones to Interim Inspector General Ed Michel. At that time, a decision was made to contact Fournier to ascertain if the iPhone provided to him by the Appellant was one of the iPhones missing from the OIG. (Tr. Vol. II, at 12 – 13).

15

23-30340.777

Mr. Michel delegated the task to his subordinate, Terry Barrett. Barrett interviewed Fournier and took possession of the iPhone once it was determined that it was one of the iPhones missing from the list created by Ms. Jones. (Tr. Vol. II, at 17 -18; A.A. Exh. 12). He further testified that the investigation uncovered no documents evidencing approval to donate the iPhone to Fournier. He then reported his findings to Michel. (Tr. Vol. II, at 18 – 23).

Centola interviewed the Appellant on December 1, 2020 without notice or an opportunity to prepare. Barrett was also present along with investigator Larry Douglas. Barrett took notes while Centola asked questions. Centola testified that the Appellant did not deny giving Fournier the iPhone, but could not recall whether it was an OIG phone or her personal phone. The Appellant told him that if she had given Fournier an OIG phone, she would have done so with the approval of her supervisor Howard Schwartz and that she would have documented his approval. (Tr. Vol. II, at 27 – 28). After the interview, Schwartz was contacted and stated he did not and would not have permitted the Appellant to give an OIG iPhone to Fournier. (Tr. Vol. II, at 31).

Centola testified that he reported to Michel that the Appellant was unable to provide a clear and concise narrative regarding the iPhone, that her answers lacked candor, and that her assertions regarding authorization were not supported by any other evidence. (Tr. Vol. II, at 42 – 46).

16

### 3. Bobby Jones

Bobbie Jones, IT Security Specialist testified that she was responsible for maintaining the OIG's inventory of technological equipment including cellular phones. Prior to her arrival, the Appellant was the custodian of inventory. Upon Jones' arrival in September of 2017, she began collecting IT equipment and creating inventory lists, including unaccounted for devices. (Tr. Vol. II, at 196 – 205; A.A. Exh. 12).

Jones testified that while dining in the FRB cafeteria in the fall of 2020, Darrell Turner, an FRB cafeteria worker, approached her and asked whether she had a charger for the phone that the Appellant had previously given to Reggie Fournier. She stated that a few weeks later Fournier spoke to her in the cafeteria and told her he did not need a charger and that he had gotten a new phone. (Tr. Vol. II, at 208 -209). She reported the conversations to Mr. Centola, who informed Mr. Michel. Ms. Jones acknowledged that iPhones such as the one at issue were surplus and no longer used by the OIG. If the office no longer needed the property, the OIG could give it to the Office of Property Management for recycling. (Tr. Vol. II, at 217 -219).

### 4. Ed Michel

Ed Michel testified that he has been the Interim Inspector General beginning November 1, 2020 following the resignation of his predecessor, Derry Harper. It was his decision to terminate the Appellant's employment based upon the investigation of the missing iPhone. He first learned of Ms. Jones

17

23-30340.779

Morales Case No. 9234 & 9240

conversations with the FRB employees Turner and Fournier at the end of October 2020. She advised him that two FRB cafeteria workers approached her regarding an iPhone charger for a phone provided to Fournier by the Appellant. Following receiving this information from Ms. Jones, he instructed Mr. Centola to conduct an investigation. Once Centola determined that the Appellant had given an iPhone 4 to Fournier, he interviewed the Appellant. (Tr. Vol. II, at 295 – 299).

Michel did not participate in the interview, but was informed of the information gathered. Specifically, the Appellant admitted giving Fournier the iPhone, but maintained that she informed Howard Schwartz from whom she received permission, which would have been in written form. Once Schwartz was contacted and discredited the Appellant's explanation, he placed her on emergency suspension and scheduled a pre-termination hearing. (Tr. Vol. II, at 300 – 306).

After the pre-termination hearing, Michel determined that the Appellant violated CAO policy memorandum No. 60 (R), which states that employees shall not loan or give City devices to any other person. (Tr. Vol. II, at 307 – 309). He further determined that termination was the appropriate disciplinary action, characterizing the Appellant's conduct as "egregious". He stated that the Appellant lacked candor, falsely claimed that she had permission to give the phone to a private citizen, and was guilty of theft. (Tr. Vol. II, at 310 – 313, 347 – 348). Michel emphasized that the Appellant's lack of candor was an important

Page | 6

18

Morales Case No. 9234 & 9240

factor due to the nature of the work performed by his office. Because his office

investigates malfeasance within City government, his employees must be

beyond reproach because their findings can result in criminal prosecutions

where they are often called as witnesses. (Tr. Vol. II, at 351- 352, 373 - 383).

### 5. Howard Schwartz

The Appellant offered the testimony of Howard Schwartz who was

employed by the OIG for seven and a half years and was the Appellant's direct

supervisor at the time she gave the iPhone to Fournier. He testified that he was

contacted by William Bonney regarding whether he authorized the Appellant to

donate an OIG iPhone to a private citizen. He had no recollection of the

donation of any cell phones. While he testified that it was not in the Appellant's

character to give away OIG property without permission, he also testified that

he would never have authorized the Appellant to give a phone to a private

person. (Tr. Vol. II, at 428 – 432, 437 – 440). (Tr. Vol. II, at 441 -442).

### 6. Reginal Fournier and Darrell Turner

The Appellant also called Reginald Fournier and Darrell Turner as

witnesses. While their testimony did not contradict the Appointing Authority's

determination that the Appellant gave OIG property to Fournier, both witnesses

stated that they never spoke to Jones about a charger for the iPhone 4 or

shared any information with her that would cause her to learn that the

Appellant had given Fournier a phone. (Tr. Vol. II, at 280 – 281, 286).

Page | 7

/9

23-30340.781

Morales Case No. 9234 & 9240

### 7. Derry Harper

Derry Harper was the Inspector General from December of 2017 until October 30, 2020. He testified that he was unaware of any serious concerns about missing cell phones and that no issues concerning missing cell phones were ever brought to his attention. (Tr. Vol. II, at 448 – 454). While Mr. Harper did not have any information regarding the iPhone issue, he provided relevant insights regarding the Appellant's performance and personality. He described the Appellant as "a candid person, but not always complete in letting the office know her issues". He stated that she never misrepresented anything to him. He described her as an excellent investigator – "the best he had". But regarding her relationships with her co-workers, he stated that the Appellant tended to overreact to workplace situations because of either a lack of maturity or an inability to control her emotions. He stated that she had issues with professionalism and properly comporting herself, which caused individual tension between herself and other employees. (Tr. Vol. II, at 457 -459).

### 8. Appellant Kristen Morales

The Appellant testified that when questioned she answered truthfully that she gave an iPhone to Fournier. However, she contends that she was ambushed by Centola when he called her into his office without notice to discuss something that occurred at least four years prior. She testified that the phone had no value and was of no use to the agency because it was "contaminated". She defended her reaction to the questioning by stating that

Page | 8

2d

Morales Case No. 9234 & 9240

the questions asked were vague and she responded to questions by asking

questions of her own to assure an accurate response. She stated that she was

not intentionally evasive, but not she was not prepared to answer questions

regarding what she considered small matters that she had forgotten. (Tr. Vol. II,

at 475 -479).

The Appellant contended that she would have sought Schwartz'

permission and that she would have documented his permission. However, she

does not know what happened to the documented authorization, speculating

that the documentation was destroyed by Jones or other co-workers in an effort

to cause her termination. She further testified that she would have consulted

with OIG General Counsel Suzanne Wisdom regarding proper language for the

authorization. (Tr. Vol. II, at 479 – 488).

On cross-examination, the Appellant acknowledged that she gave

Fournier the phone, which was the property of the OIG. She testified that,

because the OIG determines what happens to its property regardless of its

value, it would have been inappropriate for her to give away the phone without

authorization. She admitted that Schwartz did not recall giving permission to her

and that, when interviewed, Wisdom denied giving permission or preparing a

document giving permission for her to give a phone to a private citizen. She

stated that they just did not remember every minor activity that occurred in the

office. She also acknowledged that there was no evidence that cell phones

had ever been donated to private citizens.

Page | 9

21

23-30340.783

Morales Case No. 9234 & 9240

Finally, in her testimony, the Appellant embellished the explanation that she provided during her pre-termination hearing by stating that she sought permission to give away the phone because it was contaminated. When confronted during cross-examination, she stated that she remembered additional circumstances after final disciplinary action was taken. (Tr. Vol. II, at 576 – 584).

### B. Analysis of Facts and Law

The Appointing Authority has established by a preponderance of evidence that the Appellant violated CAO policy memorandum No. 60 (R), by unilaterally deciding to give an iPhone 4 to a private citizen, notwithstanding the fact that the phone had no value and was of no use to the OIG. While it seems heavy handed to go to such lengths to investigate such a minor infraction, and it is apparent that the new leadership wanted the Appellant removed because of interpersonal relationships that existed within the office, the Appellant gave the Appointing Authority the rope it needed to hang her when she failed to admit her error in judgment, instead falsely claiming that she was given permission to donate the phone to Mr. Fournier. Her contention that she acted with authorization was simply not credible considering that the Appellant's claims were impeached by the testimony of Mr. Schwarz and the statement provided by Ms. Wisdom.

This matter is another example of where the coverup is worse than the crime. A similar case involving the same Appointing Authority came before the

Page | 10

22

23-30340.784

Morales Case No. 9234 & 9240

Commission in *Boudreaux v. Office of Inspector General*, Case No. 7961 (2013),

affirmed *Boudreaux v. Office of Inspector General*, 2013-1366, (La. 4 Cir

3/12/14),137 So.3d 695. The appeal there involved an investigation concerning

the location and circumstances of the Appellant purchasing shrimp for an office

party. Rather than admit that the shrimp were given to her as appreciation for

purchasing a large quantity of crawfish, she misrepresented to the Appointing

Authority that the shrimp were purchased from a different business. In reaching

its conclusion, the Commission accepted the reasoning of the Appointing

Authority's investigator Howard Schwartz stating:

> Mr. Schwartz concluded that the Appellant was untruthful when she
> initially informed him that she bought the shrimp at Rouses and she
> compounded her dishonesty by concocting an explanation that
> she actually bought the shrimp at Castnet's. He stated that had the
> Appellant acknowledged that she received the shrimp as a gratuity
> from Kjean's, he would have instructed her to pay for the shrimp to
> remedy the indiscretion. Instead, because she was less than
> candid, he no longer could trust her to perform the duties of an
> investigator.

Based upon the evidence, the Commission concluded that:

> The Appointing Authority has established by a preponderance of
> evidence that the Appellant obscured how she obtained shrimp for an
> office party to avoid admitting that she violated internal rules regarding
> the acceptance of gratuities from third parties. Because of the nature of
> the position held by the Appellant, we agree that complete candor is an
> essential requirement of the position.
>
> While it may seem harsh to terminate an otherwise capable employee for
> a minor indiscretion, we cannot say that the Appointing Authority abused
> its discretion.

Page | 11

$2^3$

23-30340.785

Morales Case No. 9234 & 9240

As in *Boudreaux*, the Appellant attempted to avoid admitting that she engaged in a minor indiscretion that violated internal rules. In this case, CAO policy memorandum No. 60 (R). As previously held, complete candor is an essential requirement of the position. As such, the Appointing Authority acted within its discretion when it terminated the Appellant.

## II. Violation of Covid Protocols by Invading the personal space of William Bonney

### A. Facts and Testimony

#### 1. Undisputed Facts

As reflected in the disciplinary letter, on November 6, 2020, Deputy Inspector General William Bonny was in the OIG copy room making copies of documents. The Appellant entered the copy room to use the equipment. Bonny left the room while the Appellant was present. Once the Appellant left, Bonny returned to complete his task. The Appellant returned to the copy room to complete her task. An argument ensued regarding the Appellant presence in the room, which ended when the Appellant left.

#### 2. William Bonney

William Bonney testified that he was alone in the copying room making copies when the Appellant entered the room and stood next to him. Apparently, without saying anything, Bonney left the room and remained outside until the Appellant left. Bonney returned to his task and the Appellant entered the room again. Bonney testified that he had to tell the Appellant that

Page | 12

2 Y

23-30340.786

Morales Case No. 9234 & 9240

she was standing too close and to leave the room twice. (Tr. Vol. I, at 44 – 48).

Bonney confirmed that he was copying a large number of documents that

required time and he acknowledged that he did not notify anyone in the office

that he needed to use the copy room for an extended period. (Tr. Vol. I, and

159 – 161).

### 3. Ed Michel

Ed Michel testified that he became aware of the incident after the

Appellant filed a grievance regarding her exchange with Bonney, complaining

that he raised his voice towards her when she reentered the copy room. Based

upon his investigation of the incident, he determined that there was insufficient

evidence to determine whether Bonney raised his voice, but concluded that

the Appellant invaded Bonney's space based solely upon Bonney's

uncorroborated statement. While Michel emphasized the importance of

adhering to the pandemic protocol, which required employees to remain 6 feet

away from each other while in the work place, there was no directive limiting

the copy room to one person at a time. (Tr. Vol. II, at 322 – 324, 387 - 392).

### 4. Kristen Morales

The Appellant testified that she entered the copy room to print a report

regarding an investigation. When she entered the first time, Bonney never asked

her to leave and never mentioned COVID. She noted that they were both

wearing masks. She stated that it was customary for employees to inform each

other when they were using the copy room for a large job, which did not occur

Page | 13

25

23-30340.787

in the instant case. The Appellant testified that when she reentered the copy room to complete her task, Bonney addressed her in an aggressive manner telling her that she had to leave. She stated that Bonney's demeaner upset her and that after leaving the copy room, she returned to her desk and immediately sent an email to Michel informing him of the incident and then filed a grievance. She contends that this charge was retaliation against her for filing a grievance concerning the same incident. (Tr. Vol. II, at 528 – 532).

### B. Analysis of Facts and Law

The Appointing Authority has failed to establish that the Appellant engaged in misconduct or that the incident justified termination. Mr. Bonney may have been upset because he thought that the Appellant was standing too close to him, and the Appellant may have taken his reaction to her entering the room as an aggressive overreaction to her merely trying to do her job. The Appointing Authority should have counseled both parties and instructed them to learn to work with each other rather than making mountains out of mole hills.

### III. Accepting a Gift for Personal Benefit

### A. Facts and Testimony

It is uncontested that the Appellant attended the Heisman Trophy ceremony on December 14, 2019. She flew to the ceremony on a privately rented jet with her friend, Patty Spurlock. It is uncontested that at the time of the trip Derry Harper was the Inspector General, and was aware that the Appellant accepted a trip on a private jet provided by Ms. Spurlock. He testified that he

26

saw no issue or reason to investigate the matter. (Tr. Vol. II, at 460 -463).

Approximately a year later, shortly after becoming the Interim Inspector General, Ed Michel asked Mike Centola to question the Appellant about the trip during the investigation of the iPhone. She admitted accepting Ms. Spurlock's invitation to fly to the Heisman Trophy ceremony on a private jet provided by Ms. Spurlock. At the time of questioning, the Appellant could only offer Ms. Spurlock's first name – Patty. She informed Centola she could provide the last name if she could retrieve her phone. Later that day, after retrieving her phone, she provided Centola with Ms. Spurlock's full name. Tr. Vol. II, at 36 – 41, 49 – 52, 448 -449).

It is uncontested that the Appointing Authority found no evidence that Ms. Spurlock had any business connections with the City, that she was seeking to conduct business with the City, that she was seeking influence over the passage of state of local legislation, that she was conducting operations or activities that are regulated by the OIG, or that she had a substantial economic interest in any activities regulated by the OIG.

Michel testified that he investigated the acceptance of the plane ride to determine whether the Appellant violated of *CAO Policy Memorandum 84(R)(q)*, which provides that "an employee shall not accept or solicit a valuable gift from any person, business, or organization for personal benefit..." He testified that it did not matter whether the individual has an affiliation with

Page | 15

27

23-30340.789

the City of New Orleans or whether there was a real or perceived conflict of interest.  He further testified that he found that the Appellant answered all other questions regarding the trip truthfully, but found that she lacked candor because she could not remember Ms. Spurlock's last name until a few hours after Mr. Centola asked the question.  (Tr. Vol. II, at 331 – 336; A.A. Exh. 13).

The Appellant testified that when confronted by Centola, she denied that she violating internal rules.  The Appellant referenced *OIG Rules of Employee Conduct III. Conflicts of Interest, (A)(3)*, which references accepting gifts where the person or entity would present a conflict of interest real or potential.  She explained that her friend Patty rented a plane for the Heisman ceremony and invited her to come along.  They have fun together and know each other from Saints games where their seats are close to each other.  She stated that she was aware of the OIG's conflicts of interest rule and accepted the ride knowing that her friend had no association with the City or the OIG.  (Tr. Vol. II, at 536 – 545; Morales Exh. 19).

### B.  Analysis of Facts and Law

The Appointing Authority has failed to establish that the Appellant engaged in misconduct or that the incident justified termination.  The Appointing Authority's reliance on *CAO Policy Memorandum 84(R)(q)* is based upon an overly broad and superficial analysis of policy and law.   Both the Louisiana Code of Ethics and the OIG's internal rules focus on real or perceived

Page | 16

28

23-30340.790

conflicts of interest. A review of the facts and law confirm that neither existed here. OIG policy states that there is a violation where there is a conflict of interest.

Regarding the *Louisiana Code of Ethics*, the Louisiana Supreme Court has long held that the primary objective of the Ethics Code is to prevent not only the actuality of conflicts of interest, but also to prevent the occurrence of those situations that tend to create a perception of conflicts of interest. *In re Beychok, 495 So.2d 1278, 1281 (La. 1986)*. According to the Court, "a conflict of interest is a situation that would require an official to serve two masters, presenting a potential, rather than an actuality, of wrongdoing". *Glazer v. Commission on Ethics for Public Employees,* 431 So.2d 752, 756 (La.1983).

Mr. Michel also testified that he was aware of and relied upon the *Boudreaux* case when making his determination because the facts giving rise to the case arose in his office. His reliance on the case is based upon an erroneous interpretation of the facts and the conclusions drawn by the Court. First, Ms. Boudreaux was acting in her official capacity when she purchased the shrimp because it was purchased for her office. The extra shrimp were given as a gratuity because of Ms. Boudreaux's status as an investigator. Her actions created the perception of a conflict of interest that would have resulted in a minor infraction but for the fact that she lied about it when questioned. She was

29

23-30340.791

not terminated for violating the policy, but for trying to avoid responsibility. As

stated in *Boudreaux*:

> Our review of the record reveals that the hearing officer and the
> Commission found that a reasonable basis existed to question
> Boudreaux's truthfulness and find that her lack of candor sufficiently
> impaired her ability to perform her duties as an investigator in the
> Inspector General's office. Though Boudreaux urges a different, and
> conceivably plausible reason for her actions, such is not sufficient to
> warrant overturning the rulings of the hearing officer and
> Commission.

*Boudreaux* at 697.

In the instant case, the Appellant was not in any manner acting in her

official capacity when she accepted her friend's invitation to fly with her to the

Heisman Trophy ceremony. There was no real or perceptible conflict of interest.

Further, the Appellant's momentary lapse regarding Ms. Spurlock's last name

was not lying, and the Appointing Authority's logic regarding the Appellant's

lack of candor is nothing more than a disingenuous attempt to find additional

fault.

It was improper for the Interim Inspector General to dredge up a past

incident that was previously addressed and disposed of by his predecessor. Mr.

Harper correctly found no fault in the Appellant's activities. There was no

conflict, no violation of OIG policy or state law, and no lack of candor regarding

the circumstances of the Appellant's plane ride to the Heisman Trophy

ceremony.

30

23-30340.792

Morales Case No. 9234 & 9240

### IV. Failure to Adhere to the City Domicile Requirements

#### A. Facts and Testimony

The Appointing Authority's determination that the Appellant violated the

City Domicile Ordinance is based upon the Appellant's submission of a

*Declaration of Domicile (Form B)*, which informed the Appointing Authority that

she was domiciled at 49 Antiqua Dr., Apt B, Kenner, Louisiana 70065. (Tr. Vol. I, at

141, Vol. II, at 106 -107, 338 - 345, 405; A.A. Exh. 6).   In the disciplinary letter, the

Appointing Authority stated to the Appellant:

> As you know, you submitted Form A, Employee Statement of
> Receipt Domiciliary Requirement and Form B, Declaration to former
> IG, Derry Harper, for his signature on September 11, 2020. On Form B
> you listed your new home address as 49 Antiqua Drive, Kenner LA
> 70065. However, because you have resided in Orleans Parish after
> January 1 2013, by claiming that you are domiciled in Kenner, LA
> you are in violation of the City Domicile Ordinance because your
> previous exemption no longer applies. The OIG also has a domestic
> return receipt from the United States Post Office concerning a
> certified letter that was delivered to you on October 17, 2020 at 49
> Antigua Drive, Kenner LA 70065 which is additional proof that you
> reside at 49 Antigua Drive, Kenner, LA 70065.

(H.E. Exh. 1. p. 7).

Michael Centola conducted the investigation and testified that he relied

exclusively on the Appellant's signature on the *Declaration of Domicile (Form B)*,

which he deemed an admission that her domicile was Kenner, LA and

consequently sufficient evidence that she was in violation of the City Domicile

Ordinance. (Tr. 106 – 107).

Page | 19

*3I*

23-30340.793

Morales Case No. 9234 & 9240

Ed Michel testified that because Ms. Morales admitted on the September 11th form that she moved her domicile to Kenner on July 4th without an exemption, she was not in compliance with the City's domicile requirements, and that policy required a penalty "up to and including termination". (Tr. Vol. II, at 345).

On cross-examination, Michel stated he was aware that the Appellant was quarantining with her boyfriend in July at his residence in Kenner, LA. because she had Covid. He acknowledged that the Appellant was not instructed to leave the Kenner residence nor that she was in violation of the ordinance by choosing to quarantine outside of Orleans Parish. (Tr. Vol. II, at 405). Michel testified that the Appellant never requested an exemption to the ordinance. However, when questioned in December, she maintained that her domicile was her apartment in Orleans Parish. He also acknowledged that he disregarded the evidence of domicile provided by the Appellant, which included her utility bills, a letter from her landlord verifying her domicile, live camera footage of her apartment, and a copy of her lease that was set to expire at the end of January 2021. He maintained that termination was justified based upon the Notification of Domicile form, which he perceived as an admission by the Appellant rather than a request. He reached this conclusion even though the form contained a signature line for the Appointing Authority indicating approval of the Form and acceptance of the request. The OIG never approved or disapproved the Form, and never gave the Appellant the option of

Page | 20

32

retaining her domicile in Orleans Parish to avoid disciplinary action. (Tr. Vol. II, at 405 – 406; Morales Exh. 6 and 8).

The Appellant testified that when Centola asked her where she lived, she responded that she lived at 300 Jules Street in Orleans Parish. She provided supporting evidence to both Centola and Michel insisting that she had not changed her domicile. (Tr. Vol. II, at 498 – 500; Morales Exh. 6). She explained that she was seeking permission to change her domicile after two months of quarantine in Jefferson Parish. However, the Appellant stated that she never acted upon her request because the OIG never informed her of its decision regarding the request. She testified that she returned to her home on Jules Street once she recovered from her illness and it was safe to venture out. She testified that she did not see any harm in asking for a change in domicile and that she always intended to remain in Orleans Parish if it was a requirement of her continued employment. (Tr. Vol. II, at 546 – 553).

### B. Analysis of Facts and Law

Terminations based upon violations of the domicile ordinance have previously come before the Commission on appeal. In *Aldor v. New Orleans Fire Department*, 2001-0439 (La. App. 4 Cir. 11/21/01), 803 So.2d 112, the Court affirmed the Commission's ruling that the Appointing Authority terminated Aldor for cause based upon the Commission's determination that Aldor's arrangement with an Orleans Parish resident to use his address for domicile

33

23-30340.795

purposes "was a residence of convenience, established in order to circumvent the Domicile Ordinance". *Id.* at 119.

However, in *Danforth v. Department of Public Works*, 2002-0529 (La. App. 4 Cir. 5/14/03), the Court distinguished *Aldor* in a circumstance where it was determined that Danforth temporarily moved to Jefferson Parish because of a dispute regarding possession of marital property located in Orleans Parish where he was previously domiciled. Upon receiving notification by the Appointing Authority that he was in violation, Danforth returned to Orleans Parish in order to comply with the Domicile Ordinance. Nevertheless, the Appointing Authority terminated Danforth's employment. The Court affirmed the Commission's finding that the penalty was not commensurate with the violation stating:

> Mr. Danforth agrees that continued employment falls within the purview of the Domicile Ordinance; however, he argues that mandatory termination is only applicable when the employee refuses to change his living arrangements once notified of the Appointing Authority's objection. Mr. Danforth argues that there is no indication that Mr. Aldor attempted to remedy his domicile situation once notified of the potential violation; however, Mr. Danforth immediately rectified his domicile situation upon notification that he was in violation of the Domicile Ordinance and prior to his termination. We agree…

> The entire panel agrees that a violation of the Domicile Ordinance is a sufficient basis for dismissal; however, termination is not mandatory. The language "other disciplinary actions" further indicates that alternative penalties are permissive. Therefore, the Commission's finding that the penalty was not commensurate with the infraction is neither arbitrary nor capricious. Further, in light of the particular circumstances of this case that Mr. Danforth did not intend to abandon his Glenmeade Court domicile, and upon

34

23-30340.796

> notification of his potential violation, he established a New Orleans domicile prior to his termination.

*Id.* at 653.

The instant case is analogous to *Danforth*. The Appellant left Orleans Parish due to circumstances beyond her control. She credibly testified that she was spending all of her time in Jefferson Parish while she was quarantined, and that she never intended to leave Orleans Parish if it meant losing her job. Clearly, Form B is not just notification of a change in domicile because the notification requires approval. The Appellant reasonably perceived the submission of the form as a request for permission to change her domicile. Rather than deny the request, the Appointing Authority ignored it and chose to use it as additional justification for removing the Appellant from her position.

The Appointing Authority acted arbitrarily and abused its discretion. The Appellant's submission of a form does not justify disciplinary action without evidence of an intent to circumvent the ordinance and a refusal to comply once placed on notice.

## V. Failure to Follow Instructions / Insubordination

### A. Undisputed Facts

In the termination letter, the Appointing Authority informed the Appellant that she violated internal policy by failing to follow certain instructions concerning confidential internal communications and proper email etiquette. Specifically, the termination letter stated:

35

Morales Case No. 9234 & 9240

> …Regardless of that instruction [to follow proper email etiquette], you have persisted in sending emails containing information related to internal OIG investigations and other matters to the City Attorney and Chief Administrative Officer, specifically sending emails on December 1, 2020 at 5:51 pm and multiple emails on December 3, 2020 at 9:51 am, 10:05 am, 3:44 pm, and 3:57 pm. These emails were even sent even though the Interim IG instructed you to refrain from doing so just one day prior on December 2, 2020 and confirmed that directive in writing on December 3, 2020.

(H.E. Exh. 1 at page 8).

The facts upon which the Appointing Authority bases this violation are irrefutable. The email communications were between the Appellant and Ed Michel beginning shortly after the Appellant's interview by Michael Centola regarding the OIG's investigation of the Appellant for various internal violations of policy. The Appellant copied Gilbert Montano, Chief Administrative Officer, and Sunni LeBeouf, City Attorney, in the emails. In response, Michel admonished the Appellant for including parties outside of the OIG in emails, which mentioned the Appellant's involvement in the OIG's criminal investigation of the Hard Rock Hotel. The Appellant persisted after receiving the instruction from Michel. (A.A. Exh. 22).

### C. Testimony

#### 1. Michael Centola

Michael Centola was also copied in the emails. He testified that while the Appellant was within her rights to include Mr. Montano in emails regarding internal grievances, she violated policy by referencing specific investigations

Page | 24

36

Morales Case No. 9234 & 9240

that the OIG was conducting. He noted that the Appellant continued to repeat this violation even after she was instructed to cease. He stated that making such references to parties outside of the OIG potentially compromised the integrity of the investigation. (Tr. Vol. II, at 46 – 48).

### 2. Ed Michel

Ed Michel testified as a fact witness regarding his email communications and as the final decision maker regarding disciplinary action. He testified that he sent the original email, which was his response to the Appellant's most recent grievance concerning the above discussed encounter between the Appellant and William Bonney in the copy room. He stated that the Appellant violated internal policy when she responded to his email and included information relative to an ongoing criminal investigation that the OIG was conducting upon which she copied individuals outside of the OIG. Specifically, in her December 2, 2020 response, she copied Gilbert Montano, CAO, Sunny LeBeouf, City Atty., and Renee Hollins, Asst. CAO. In the email response, the Appellant stated:

> You had Centola and staff surprise me to conduct an Administrative Investigation on me, taking away from the [Hard Rock Hotel investigation] which you have delayed multiple times (this was my purpose for being in the office yesterday). You said in your email below that you wanted me to focus on my investigation, but that seems very disingenuous, especially after yesterday's events.[1]

---

[1] A.A. Exhibit 22 is a redacted version of the email communication. Testimony confirms that the redated portion was "Hard Rock Hotel investigation."

Page | 25

37

23-30340.799

Morales Case No. 9234 & 9240

Michel testified that he immediately responded to the Appellant's email

informing her that:

> You have been previously instructed in writing and verbally to
> refrain from discussing as well as originating and sending emails
> concerning OIG internal matters to those outside of the OIG. Yet,
> again, you sent another email yesterday discussing internal
> investigative activities, in direct violation of previous instructions.

The following day, the Appellant sent another email to Centola titled

"Incorrect Address – Domicile Paperwork" in which she voiced her displeasure

with the Appointing Authority's investigation, characterizing it as retaliatory. She

concluded her email by stating, "I am requesting that you allow me to start

working and dedicating my time to the Hard Rock investigation". Again, she

copied Montano. Again, Michel admonished her by stating in his email

response, "Note: you have sent another email to CAO Montano concerning

internal matters which I have instructed you to refrain from doing so yesterday."

Subsequent emails sent by the Appellant to Michel continued to copy Montano

and republished her prior comments as part of the email chain.

(A.A. Exh. 22).

Michel considered the Appellant's disregard of his instruction as

insubordination, explaining that, while the Appellant was free to copy Montano

and other City officials regarding her grievance, it was completely unnecessary

and inappropriate for her to reference OIG criminal investigations within her

communcations. (Tr. Vol. II, at 316 – 322). Michel further explained that, while it

23-30340.800

may have been known by City officials that the Appellant was involved in the Hard Rock Hotel investigation, it did not give her license to disregard his instructions to cease sending emails that included parties outside of the OIG. (Tr. Vol II, at 410 – 413).

### 3. Kristen Morales

The Appellant stated that her emails concerned either her grievance or the Appointing Authority's internal investigation against her. She contends that her references to the Hard Rock Hotel investigation did not impact the OIG because her involvement was known to all email recipients and therefore did not reveal any confidential information. She testified that she did not intentionally disobey Michel's instruction because she did not understand the written instructions contained in the emails. As reflected in the email chain, the Appellant contended that the action was taken by Michel in retaliation for engaging in protected activity, including filing a grievance and an EEOC charge. (Tr. Vol. II, at 554 -558).

### D. Analysis of Facts and Law

The Appointing Authority has established that the Appellant referenced an ongoing OIG investigation in emails that were sent to City officials whose employees were the subject of the investigation. The Appellant's emails were disrespectful towards Mr. Michel and conveyed to outside third parties that an investigation of a highly publicized matter was being neglected because of

39

Morales Case No. 9234 & 9240

office politics. After receiving instructions to cease copying City officials regarding such matters, the Appellant continued doing so.

The Appellant appears to have believed that she could imbed insubordinate comments into otherwise protected communciations without consequences. However, protection against retaliation does not apply to the comments for which the Appellant was disciplined. Stated another way, the Appellant cannot use her grievance or her filing of an EEOC charge as a shield against separate acts of misconduct. See East v. Office of Inspector General, 2011-0572 (La. App. 4 Cir. 2/29/12), 87 So.3d 925. In East, the Court affirmed the Commission's determination that the Appellants' acts of insubordination constituted unprotected activity, justifying disciplinary action by the Appointing Authority. Id. at 929.

The Appointing Authority did not provide any testimony regarding an appropriate penalty for this charge and, because the Appointing Authority acknowledged that it terminated the Appellant solely because of a separate act of misconduct, it cannot be determined whether there is some penalty that is commensurate with the violation. If called upon to opine, a suspension would be commensurate with the violation.

## VI.    Retaliation

Mr. Michel testified that the Appellant filed repetitive unfounded claims, which he considered a pattern and practice calculated to disrupt the office. (Tr. Vol. II, at 420 – 421). However, he provided no testimony supporting his

Page | 28

40

23-30340.802

**Morales Case No. 9234 & 9240**

conclusion. Therefore, the Appointing Authority has failed to establish that the Appellant's exercise of her right to utilize the City's internal grievance procedure was an act of misconduct that justified disciplinary action.

### CONCLUSION

As discussed above, the Appointing Authority has established that the Appellant lacked candor when questioned regarding the unauthorized donation of OIG property. While a lesser penalty would have been appropriate considering the lack of value and the unimportance of the iPhone to the OIG's mission, it cannot be said that the Appointing Authority abused its discretion or act arbitrarily by terminating the Appellant. Based upon the foregoing, the appeal should be **DENIED**.

| December 17, 2021 | s/ Jay Ginsberg |
|---|---|
| DATE | HEARING EXAMINER |

4/1

23-30340.803

TAB 7



**NEW ORLEANS OFFICE OF INSPECTOR GENERAL**

EDWARD MICHEL
INTERIM INSPECTOR GENERAL

December 15, 2020

**VIA U.S. CERTIFIED MAIL**
**Item No. 9590 9402 5968 0062 9305 03**

Kristen Morales
49 Antigua Drive,
Kenner LA 70065

## NOTIFICATION OF EMERGENCY SUSPENSION
## NOTICE OF PRE-TERMINATION HEARING

Dear Ms. Morales:

This letter is to give you formal notice that you are hereby placed on a **30-day Emergency Suspension without pay beginning December 15, 2020** for multiple policy violations, specifically the following:

(I) giving an iPhone, which was purchased and owned by the Office of Inspector General (OIG), to a private individual who has no official connection to the OIG nor the City of New Orleans, which violates Policy Memorandum 60(R), Policy Memorandum 83(R), Policy Memorandum 109(R) and Louisiana law;

(II) a second violation of Policy Memorandum No. 83(R) Standards of Behavior for City Employees, this time by improperly invading the personal space of William A. Bonney, which is particularly egregious during the current COVID-19 pandemic;

(III) accepting a valuable gift for personal benefit in violation of Policy Memorandum 83(R) and potentially the Louisiana Rules of Governmental Ethics;

(IV) failing to adhere to the domicile requirements for city employees, which is a violation of Policy Memorandum 19(R);

(V) failing to adhere to professional standards, repeated and consistent instances of insubordination and failing to follow directives issued by your supervisors, which violate Policy Memorandum 83(R);

(VI) retaliating and threatening retaliation against other employees who reported your perceived misconduct and policy violations, which also violates Policy Memorandum 83(R).

These violations are more fully detailed below and demonstrate a pattern of concerted misconduct which demonstrates your unwillingness to perform your duties in a satisfactory manner and describes behavior which unquestionably acted to the prejudice of the service and is detrimental to the efficient operation of the service.

Morales MSJ Opp Exhibit 5
23-30340.1248

In light of these multiple violations, please report on **Thursday, January 7, 2021, to the Federal Reserve Building, 525 St. Charles Avenue, Suite 300 at 10:00 am** for a pre-termination hearing to show cause why you should not be terminated because of the foregoing violations.

I. **Violation of Policy Memorandum 60(R), Policy Memorandum 83(R), and Louisiana Law by Giving Away an iPhone Owned by the OIG.**

The phone at issue was fully functional with known usage capabilities as recently as August 19, 2020. Your actions in this instance violated the following Chief Administrative Officer (CAO) policies and the State of Louisiana Constitution:

Policy Memorandum No. 60 (R) Wireless Communications Device Policy - Section IV, C. Additional Guidelines, Paragraph (13), *The employee shall not loan or give the City provided device to any other person.*

CAO Policy Memorandum No. 83(R) - Standards of Behavior for City Employees, Section II, General Standards, Paragraph (f), *neglect of duty* and Paragraph (o), *City property shall be used only for the purpose for which it was intended.*

CAO Policy Memorandum No 109 - Regulations Pertaining to Assignment, Usage and Care, and Return of City Property by Employees, Paragraph V(6), *An employee assigned the use of city property or equipment must maintain and not abuse or misabuse equipment while employed,* and Paragraph VII(1), *An employee must immediately report any lost, stolen, or damaged assigned property to an Appointing Authority or the designated representative.*

Article 7, Section 14(A) of the Louisiana Constitution of 1974 - Prohibited Uses. Except as otherwise provided by this constitution, the funds, credit, property, or things of value of the state or of any political subdivision shall not be loaned, pledged, or donated to or for any person, association, or corporation, public or private.

On November 11, 2020, Reginald Fournier, advised that he was in possession of a cell phone he had received from OIG Investigator Kristen Morales. According to Reginald Fournier, about 4 or 5 years ago, he told Investigator Kristen Morales that he was looking for a cell phone. He said Investigator Morales told him she would try to get him one. Mr. Fournier stated that Investigator Morales gave him the cell phone in question several months later.

On December 1, 2020, when asked by Chief Investigator Michael Centola if you had given an iPhone to Reginald Fournier, a private individual, your response was that the iPhone either belonged to you or the OIG. Office records show that this iPhone was purchased and owned by the OIG rather than belonging to you.

You also sought to cover up the fact that you had given the iPhone to a private individual by purportedly recalling that there was an occasion upon which cellphones might have been given to

2

Morales MSJ Opp Exhibit 5
23-30340.1249

local charities and churches along with computers. The OIG has confirmed that, although the office gave computers to a local church, the donations did not include cellphones belonging to the OIG. Mr. Fournier certainly is not an approved charity or church, and the cellphone at issue was not surplus property and continues to be useful property for the OIG. You advised you would attempt to locate any email, letter or document authorizing the transfer of equipment following the conclusion of the interview. However, as of December 14, 2020, you have failed to provide any documentation concerning the transfer of an OIG cellphone to Mr. Fournier.

A Verizon Customer Receipt dated September 27, 2011, verifies the receipt by the OIG of an iPhone 4 ESN/MEID # A100001C7FEB58. There is a handwritten notation on this receipt signifying the serial number of the phone received as #C8VG69E3DDP7. The cellphone's serial number, #C8VG69E3DDP7 and the MEID were located and compared to serial numbers on an OIG IT equipment spreadsheet. It was determined that the cellphone is the property of the OIG because the spreadsheet contained an entry for the cell phone listed as a Black iPhone 4–8GB with that same serial number. The status is listed as "no phone", meaning that it was unaccounted for. The former Inspector General (IG), Edouard Quatrevaux, as well as the former First Assistant Inspector General, Howard Schwartz were interviewed and both advised they did not authorize any OIG personnel to give away OIG purchased cellular phones. In fact, former IG, Edouard Quatrevaux, advised if such a transaction did occur, it would constitute theft. In addition, he did not recall a situation where we gave OIG computers to local charities and churches.

Your improper and unauthorized donation of public property owned by the OIG directly violates the provisions of Policy Memoranda 60(R), 83(R), and Article VII, Section 14 of the Louisiana Constitution.

Further, because you refused to answer truthfully questions posed by the Chief Investigator Michael Centola on December 1, 2020 regarding the iPhone, your behavior during this interview also constitutes a violation of Ordinance 024395, Section 2-1120, chapter (20)(a):

> "It shall be the duty of every city officer, employee, department, agency board, commission, public benefit corporation, contractor, subcontractor, licensee of the city, and applicant for certification of eligibility for a city contract or program, to cooperate with the Office of Inspector General in any investigation, audit, inspection, performance review, or hearing pursuant to this chapter."

and Section 2-1120, chapter (20)(d):

> "Any employee who violates any provision of this chapter shall be subject to discharge or such other discipline as may be specified in a collective bargaining agreement, in addition to any other penalty provided in the City Charter or Ordinances."

Morales MSJ Opp Exhibit 5

23-30340.1250

## II.     A Second Violation of Policy Memorandum 83(R) by Improperly Invading Another Employee's Personal Space

On November 6, 2020, you violated the personal space of one of your supervisors, Deputy Inspector General William A. Bonney, which is even more critically important during the COVID-19 pandemic. You entered the copy room on two occasions while Bonney was standing in front of one of the copiers. On the first occasion after seeing Bonney was in the room, you entered and came within a foot of Bonney, before Bonney chose to depart the area. On the second occasion, you again entered the copy room and stood in front of the paper shredding machine while Bonney was standing in front of one of the copiers. Bonney told you, "You have to leave." Instead of following your supervisor's instructions, you replied that you had something on the copier to print. Bonney once again told you, "You have to leave." Prior to this encounter with Mr. Bonney, all employees including yourself were given detailed written instructions, via email, regarding COVID-19 protocols, and yet you still ignored these instructions regarding social distancing.

As you know, this is not the first occasion upon which you have violated the personal space of a fellow employee.

OIG employee LeaRae Webb made a complaint against you related to your behavior on January 16, 2019. Ms. Webb elevated the complaint to the City of New Orleans Chief Administrative Officer (CAO) for further action. Ms. Webb alleged that you violated her personal space twice on January 16, 2019, when she was conversing with OIG employee Terry Barrett. Ms. Webb characterized your behavior as aggressive, rude, and unprofessional and felt that you attempted to intimidate and threaten her. Ms. Webb's complaint was previously investigated and is not the basis of this suspension and termination proceeding. This prior complaint is only referenced here to demonstrate your knowledge of policy related to this behavior.

The CAO conducted an independent investigation into Ms. Webb's grievance. It was determined that you violated Ms. Webb's personal space on two occasions on January 16, 2019. The CAO defines personal space "as an approximate area surrounding an individual in which other people should not physically violate in order for them to feel comfortable or secure" and as a "zone around individuals which they regard as psychologically theirs." The CAO determined that your behavior on January 16, 2019, violated Policy Memorandum No. 83(R), Standards of Behavior for City Employees, Section II, General Standards, Paragraph (a) _An employee shall be courteous, civil, and respectful._ and Paragraph (b) _An employee shall have patience with the public and with fellow employees._

On August 8, 2019, then Inspector General Harper and then General Counsel Patrice Sullivan met with you to inform you of the findings of the CAO's investigation into the aggrieved conduct. Inspector General Harper provided you with Policy Memorandum No. 83(R) counseled you on the need to interact professionally and to project the best image possible in your interactions with fellow employees and those you encounter in the public. You were asked to acknowledge receipt of this Policy and to confirm your understanding of the requirements of the Policy, which you did.

Morales MSJ Opp Exhibit 5

23-30340.1251

In spite of your confirmed understanding of Policy Memorandum 83(R)(a) and (b), you improperly violated the personal space of Mr. Bonney on November 6, 2020, violating the Policy after receiving detailed written instructions regard COVID-19 protocols.

## III.     A Violation of Policy Memorandum 83(R) and the Louisiana Code of Government of Ethics by Accepting a Valuable Gift for Personal Benefit

On December 1, 2020, after you sent an unsolicited photo of yourself flying on a private jet to another law enforcement agency with whom you we were conducting a joint investigation, you were asked to identify the person who gave you a free trip to New York City, aboard a private jet, to attend the Heisman Trophy presentation ceremony in December 2019. You responded by stating it was "Patti", but you could not remember her last name. This response demonstrates either a lack of candor on your part or bad judgement for boarding a private jet with an individual you could not accurately identify, in this case you could not recall the last name of this friend who provided you with something of significant value. An internal memo drafted by you on August 30, 2011 represents your clear understanding that OIG employees are not to accept "gifts, gratuities, financial gains or anything of value", yet you accepted passage on a private jet from an individual you could not accurately identify and who you simply knew as "Patti".

OIG investigators occupy a unique position in the City's classified service. Given that investigators conduct sensitive investigations into the inner workings of the City, it is important that those investigators comport themselves in an honest and respectful manner. Complete candor is an essential requirement of the position you hold.

Your acceptance of this valuable gift constitutes a violation of CAO Policy Memorandum No. 83(R) - Standards of Behavior for City Employees, Section II, General Standards, Paragraph (q) which reads, *An employee shall not accept or solicit a valuable gift from any person, business, or organization for personal benefit.*

In addition, your acceptance of this gift may violate the Louisiana Code of Government Ethics, La. R.S. 42:1115, which provides:

A. No public servant shall solicit or accept, directly or indirectly, anything of economic value as a gift or gratuity from any person or from any officer, director, agent, or employee of such person, if such public servant knows or reasonably should know that such person:

(1) Has or is seeking to obtain contractual or other business or financial relationships with the public servant's agency, or

(2) Is seeking, for compensation, to influence the passage or defeat of legislation by the public servant's agency.

B. No public employee shall solicit or accept, directly or indirectly, anything of economic value as a gift or gratuity from any person or from any officer, director,

Morales MSJ Opp Exhibit 5

23-30340.1252

agent, or employee of such person, if such public employee knows or reasonably should know that such person:

> (1) Conducts operations or activities which are regulated by the public employee's agency.

> (2) Has substantial economic interests which may be substantially affected by the performance or nonperformance of the public employee's official duty.

Your failure to obtain further information about "Patti" to determine whether she is seeking any type of relationship with our agency or conducts any operations investigated or reviewed by the OIG could violate La. R.S. 42:1115.

Further, because you refused to answer truthfully questions posed by the Chief Investigator Michael Centola on December 1, 2020 regarding your trip to the Heisman Trophy presentation ceremony, your behavior during this interview also constitutes a violation of Ordinance 024395, Section 2-1120, chapter (20)(a):

> "It shall be the duty of every city officer, employee, department, agency board, commission, public benefit corporation, contractor, subcontractor, licensee of the city, and applicant for certification of eligibility for a city contract or program, to cooperate with the Office of Inspector General in any investigation, audit, inspection, performance review, or hearing pursuant to this chapter."

and Section 2-1120, chapter (20)(d):

> "Any employee who violates any provision of this chapter shall be subject to discharge or such other discipline as may be specified in a collective bargaining agreement, in addition to any other penalty provided in the City Charter or Ordinances."

## IV. Violations of Policy Memorandum 19(R) and the City Domicile Ordinance

Ordinance 29454, Section 2-973 provides: *[i]t shall be the policy of the city to provide employment, promotions, reemployment or reinstatement, and retention of employees with the city to persons who do or will have actual domicile in Orleans Parish*....

Code of the City of New Orleans, Chapter 2, Administration, Article X, Sec. 2-975. - Exemptions. (a) states: The domicile requirement imposed by this article shall not apply to any employee of the city who was hired by the city prior to January 1, 2013, except that no employee who was previously exempted and later changed his/her actual domicile to Orleans Parish shall be entitled to retain the benefits of this exemption if that employee establishes a new actual domicile outside of Orleans Parish.

6

Morales MSJ Opp Exhibit 5
23-30340.1253

Policy Memorandum 19(R) further provides that an employee may obtain an exemption to the domicile requirement "*upon the demonstration of extreme hardship by an employee on an individual, case-by-case basis, by the appointing authority of the employee subject to the approval by the Chief Administrative Officer*."

As you know, you submitted Form A, Employee-Statement of Receipt Domiciliary Requirement and Form B, Declaration of Domicile to former IG, Derry Harper, for his signature on September 11, 2020. On Form B you listed your new home address as 49 Antigua Drive, Kenner LA 70065. However, because you have resided in Orleans Parish after January 1, 2013, by claiming that you are domiciled in Kenner, LA you are in violation of the City Domicile Ordinance because your previous exemption no longer applies. The OIG also has a domestic return receipt from the United States Post Office concerning a certified letter that was delivered to you on October 17, 2020 at 49 Antigua Drive, Kenner LA 70065 which is additional proof that you reside at 49 Antigua Drive, Kenner LA 70065.

Mr. Harper informed the undersigned (at the time, serving as First Assistant IG), that he was not inclined to allow you to disregard the residency requirement. When you inquired about the status of your requested exemption on December 2, 2020, you were informed that your appointing authority, the current Interim IG, was not inclined to allow you to disregard the residency requirement. The Interim IG also requested that your correct Orleans Parish address be provided for certain Human Resource documents, including ADP and health care documents, and that you complete a proper domicile exemption request form.

On December 3, 2020, you responded by stating that you have provided an Orleans Parish address for the Human Resources documents, and the address provided is a post office box number. In that same communication, you indicated that you, in fact, live in Orleans Parish, but you also stated that you would submit a request for a domicile exemption. It is unclear why you would need an exemption if you live in Orleans Parish, and your statements more than suggest that you are in violation of Ordinance 29454 and Policy Memorandum 19(R).

On December 14, 2020, you were requested to provide a physical address where the OIG could send this documentation via certified mail. Instead, you provided P.O. Box 792376, New Orleans, Louisiana 70179 as your mailing address. Interim Inspector Michel again requested a physical address in New Orleans where the certified letter could be received and you refused to furnish a physical address in New Orleans.

## V.     Violations of Policy Memorandum 83(R) by Repeatedly and Consistently Failing to Follow Supervisor's Directives

Policy Memorandum 83(R)II(f) provides: "*Each employee, because of the job assignment, has certain required duties and must assume certain responsibilities. Each employee has a job to do and must do that job. Failure to perform these duties or take the responsibility is neglect of duty*."

7

Critical to the performance of one's duties is following the directives and instructions of the employee's supervisors. In spite of this, you have repeatedly failed to follow directives that the Interim IG has given. The Interim IG has instructed you on multiple occasions to refrain from sending emails on internal OIG matters to other city employees. The former IG and former General Counsel have also admonished you for failing to follow proper email etiquette. Regardless of that instruction, you have persisted in sending emails containing information related to internal OIG investigations and other matters to the City Attorney and Chief Administrative Officer, specifically sending emails on December 1, 2020 at 5:51 pm and multiple emails on December 3, 2020 at 9:51 am, 10:05 am, 3:44 pm, and 3:57 pm. These emails were sent even though the Interim IG instructed you to refrain from doing so just one day prior on December 2, 2020 and confirmed that directive in writing on December 3, 2020.

As you know, Section 2-1120(6)(b), provides: "*The office of inspector general shall be **at all times** operationally independent from the legislative and executive branches of the city government, including the Council of the City of New Orleans, and the office of the mayor*."

Your decision to send emails to individuals external to the OIG regarding internal communications jeopardizes the efficient operations and operational independence of the OIG.

## VI.    Violations of Policy Memorandum 83(R) by Retaliating and Threatening Retaliation Against Other Employees for Reporting Your Perceived Misconduct and Policy Violations

Policy Memorandum 83(R)II(s) provides: "*City of New Orleans will not tolerate retaliation or threat of retaliation against those who make disclosures of actual or perceived misconduct*."

In spite of this clear Policy statement, you have persisted in making retaliatory grievances and complaints when your co-workers have reported any actual or perceived misconduct. In response to your co-workers' complaints, you lodged the following complaints:

- On January 9 and 15, 2019, you made an EEO complaint against the OIG alleging racial and gender discrimination. The OIG was forced to expend resources to retain outside counsel to conduct an investigation into your claims, which were determined to be unfounded.
- In an email dated December 3, 2020, you indicated that you would escalate a grievance as a result of the Interim IG providing a memorandum of interview related to complaints by your co-workers.
- You filed a grievance on January 23, 2020 alleging that there was "hostility and frustration" directed towards you as a result of another employee's behavior. An internal investigation concluded that your allegations were unfounded.
- You escalated grievances related to emails exchanged with co-workers related to purchase of a phone case dated January 31, 2020, February 1, 2020, and February 5, 2020. An internal investigation concluded that the grievance was unfounded. In fact, OIG's prior General Counsel concluded "[y]our escalation of the grievance . . . is not only unsubstantiated, it his highly inappropriate, unprofessional, and unsupported by any

8

evidence…Not only does your inclusion of this incident fail to support your grievance, it negligently casted aspersions on a member of the OIG staff and constitutes a baseless attack on the mission of this office."

- You escalated a grievance complaining that certain OIG employees were involved in investigating your multiple grievances, even though those employees were authorized to do so. An internal investigation concluded that you presented no evidence that any OIG employee was biased against you or any other OIG employee.
- On February 12, 2020, you raised additional issues stating that certain behavior by another employee, though it may have occurred outside of grievance policy time limits, should be considered and reviewed in connection with one of your prior grievances. After receiving substantial additional information from you and reviewing it carefully, an internal investigation concluded that the allegations were unfounded.
- As recently as December 9, 2020, you have filed an additional EEO complaint alleging discrimination, which may warrant expenditure of resources to investigate and defend against the complaint.

In short, your actions are retaliatory and, without questions, are prejudicing the services and preventing the efficient operations of the OIG. In fact, the OIG has had to expend tremendous resources to produce a 167-page response to your multiple grievances. In that response, the OIG specifically stated the following:

- "Your tone in emails has repeatedly been addressed with you yet . . . your unprofessional and emotional response necessitated an immediate meeting to address your behavior."
- "This office has given extensive attention to your complaints regarding your co-workers. Others have been counseled about my expectation that every person within the OIG community treat each other professionally and with respect. Included is the expectation that staff members not make habitual incendiary, harmful, unsupported claims against others. This behavior will not be tolerated. It is harmful to the OIG mission and something you have repeatedly been warned not to do. You have been counseled to curb your emotional oral and email outbursts and to be thoughtful of transmissions which ultimately are susceptible of becoming public records."
- "The documentation you provided to support your grievance, instead, demonstrates behavior I expect you to immediately correct."

In spite of these efforts to counsel you and a directive that you correct your behavior (which behavior is also at the center of the violations referenced in Sections II and V, *supra*), you have persisted in filing unfounded grievances, which require the OIG to divert its limited resources to address your retaliatory behavior. In addition, a federal law enforcement agency has indicated an unwillingness to work with you on OIG matters because of the same type of incendiary and harmful behavior. This is an outright violation of Policy Memorandum 83(R)II(s), and your actions are prejudicial to the public service and detrimental to the efficient operations of the service provided by the OIG. *See* La. Cons. Art. X, §8(A); *Bannister v. Dep't of Streets*, 666 So. 2d 641 (La. 1/16/96).

Morales MSJ Opp Exhibit 5
23-30340.1256

Accordingly, you are hereby suspended pending additional investigation, which may result in your termination.

**Your 30-day suspension will end on January 14, 2021 with a return to work on January 15, 2021 unless notified otherwise.**

This emergency suspension is *not a final* disciplinary action. You will remain out on suspension without pay while the department investigates your actions.

**This action was taken pursuant to Civil Service Rule IX 1.1.:** When an employee in the classified service is unable or unwilling to perform the duties of his/her position in a satisfactory manner, or has committed any act to the prejudice of the service, or has omitted to perform any act it was his/her duty to perform, or otherwise has become subject to corrective action, the appointing authority shall take action warranted by the circumstances to maintain the standards of effective service. The action may include one or more of the following:

    (a)    termination from the service.

    (b)    involuntary retirement.

    (c)    reduction in pay within the pay grade for the employee's classification, subject to the provisions of Rule IV, Section 3. A reduction in pay includes involuntary time away from work without pay, no matter how brief (e.g., involuntary leave without pay.)

    (d)    demotion to any position of a lower classification that the employee is deemed by the Appointing Authority and the Director to be competent to fill, accompanied by a reduction in pay which is within the pay grade range for the lower classification, subject to the provisions of Rule IV, Section 3, or

    (e)    suspension without pay not exceeding one hundred twenty (120) calendar days.

    (f)    fine.

    (g)    letters of reprimand as defined in Rule I.

**The Department will conduct a pre-termination hearing on Thursday, January 7, 2021, in the Federal Reserve Building, 525 St. Charles Avenue, Suite 300 at 10:00 am** to address your actions as well as any issues identified during the department's investigation and any prior incidents of a similar nature. You may have a representative present with you at the pre-termination hearing, however, they are there only to advise you, and may not question witnesses, including you, or present any documents. The hearing is your opportunity to address the Department regarding your actions and whether your employment with the department will continue. You should bring copies of any documents you want the Department to consider to the pre-termination hearing.

You may have the right as a civil service employee to appeal this disciplinary action within 30 days from the date of this letter. Any appeal must be made in writing and received in the Civil

Morales MSJ Opp Exhibit 5
23-30340.1257

Service Department located at 1340 Poydras St., Suite 900, New Orleans, La. 70112, by close of business on the thirtieth calendar day from the date of this letter.

Additionally, when you are suspended for a period of time, you should contact the CAO Hospitalization Office at 658-8615, to make `arrangements to maintain hospitalization insurance payments as well as any other benefits you may have. These payments are not paid for by the City while you are on suspension.

You will lose those benefits if you do not arrange to pay for them yourself. You are not paid by the City while on suspension.

Again, this emergency suspension is **not** a final disciplinary measure. The Department may impose additional discipline, including termination, or modify the discipline, based on the investigation results.

Sincerely,

Edward Michel
Interim Inspector General
City of New Orleans
Office of the Inspector General

cc: Civil Service
    OIG Personnel File
    Law Dept.

11

Morales MSJ Opp Exhibit 5
23-30340.1258

TAB 8

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| KRISTEN MORALES, | * | CIVIL ACTION NO.: 21-CV-01992 |
| **Plaintiff,** | * | |
| v. | * | JUDGE: ELDON E. FALLON |
| | * | |
| CITY OF NEW ORLEANS, OFFICE OF OIG | * | MAGISTRATE JUDGE: |
| THROUGH ED MICHEL, INTERIM | * | |
| INSPECTOR GENERAL, AND BOBBIE | * | MICHAEL B. NORTH |
| JONES. | * | |
| **Defendants.** | * | SECTION: L |
| | * | |

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***    \*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## <u>NOTICE OF APPEAL</u>

**NOW INTO COURT, through undersigned counsel,** comes Plaintiff, Kristen Morales, who hereby gives notice to this Honorable Court and to Defendants, that they appeal to the United States Court of Appeals for the Fifth Circuit the judgment of this Court, entered on April 20, 2023 (R. Doc. No. 73), dismissing all claims, the Order and Reasons of this Court, entered April 19, 2023 (R. Doc. No. 72), which granted Defendant City of New Orleans' Motion for Summary Judgment, and the Order and Reasons of this Court, entered March 29, 2023 (R.Doc. 66), granting Defendants New Orleans Office of the Inspector General's, Ed Michel's, and Bobbie Jones' Motion for Summary Judgment, and order denying Motion to Amend Judgment entered on May 18, 2023 (R.Doc. 78).

Respectfully submitted,

*/s/ Stephanie Dovalina*
Stephanie Dovalina, LSBA #31137
700 Camp Street, Ste. 105
New Orleans, LA 70130
Phone No.: (504)528-9500
Mobile: (504) 339-9815
Fax: (504) 353-9516
stephanie@dovalinalawgroup.com
Attorney for Kristen Morales

1

**Certificate of Service**

     I certify that on May 19, 2023, a copy of the foregoing was filed electronically with the Clerk of Court for the Eastern District of Louisiana using the CM/ECF system. Notice of this filing will be send to all parties by operation of the court's electronic filing system.

                    */s/ Stephanie Dovalina*
                    Stephanie Dovalina

23-30340.2322

# TAB 9

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 17th day of July 2023, I electronically filed the foregoing with the Clerk of Court for the U.S. Court of Appeals for the Fifth Circuit by using the appellate CM/ECF system.   All counsel of record are registered CM/ECF users, and will be served by the appellate CM/ECF system.

**s/ Stephanie Dovalina____**
Stephanie Dovalina