---

IN THE UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT

---

KRISTEN MORALES,
Plaintiff – Appellant

v.

NEW ORLEANS CITY; ED MICHEL, INTERIM INSPECTOR OF THE OFFICE OF INSPECTOR GENERAL, IN OFFICIAL AND INDIVIDUAL CAPACITIES; BOBBIE JONES; OFFICE OF THE INSPECTOR GENERAL;

Defendants – Appellees

---

On Appeal from the United States District Court
for the Eastern District of Louisiana
Honorable Eldon E. Fallon, District Judge

_____

APPELLANT'S REPLY BRIEF

_____

Stephanie Dovalina,
LSBA #31137
700 Camp Street, Ste. 105
New Orleans, LA 70130
Phone No.: (504)528-9500
Mobile: (504) 442-4959
Fax: (504) 353-9516
stephanie@dovalinalawgroup.com
Attorney for Kristen Morales

# **TABLE OF CONTENTS**

TABLE OF CONTENTS..................................................................2

TABLE OF AUTHORITIES ..........................................................3

I.    SUMMARY OF THE ARGUMENT ............................................6

II.    LAW AND ANALYSIS.................................................................8

    A.    Morales' Claims Against CNO Cannot Be Barred by Res Judicata Or Collateral Estoppel. .............................................8

    B.    Morales' Claims Against OIG Cannot Be Barred By Res Judicata Or Collateral Estoppel. ........................................192

        1.    Morales did not litigate the claims alleged in her federal lawsuit. ......................................................................12

        2.    The CSC did not have jurisdiction to adjudicate the claims in Morales' federal lawsuit. .........................................15

    C.    The District Court Erred In Dismissing Claims Without A Jury Trial. ...............................................................................209

    D.    The District Court Erred In Dismissing Morales' Louisiana Statutory Law Claims...........................................................20

    E.    The District Court Erred In Dismissing Morales' Claims Against Michel And Jones……………………………………………20

III.    CONCLUSION...........................................................................21

CERTIFICATE OF COMPLIANCE...................................................222

# TABLE OF AUTHORITIES

## Cases

*Bostock v. Clayton County,*
140 S. Ct. 1731 (2020).................................................................... 18, 19

*Browning v. Navarro*,
887 F.2d 553 (5th Cir. 1989) ...............................................................16

*Burguieres v. Pollingue,*
843 So.2d 1049, 1053 (La. 2003)……………………………………………..10

*Crockett v. Roberts,*
2010 U.S. Dist. LEXIS 144953 (E.D. La. Mar. 25, 2010) ................................20

*Eberhardt v. Levasseur*,
630 So. 2d 844 (La. App. 4th Cir. 1993) ..................................................... 15, 21

*Flah's, Inc. v. Schneider*,
71 App. Div. 2d 993 (1979) ................................................................13

*Gabriel v. Lafourche Parish Water Dist.*,
112 So. 3d 281, 284 (La. Ct. App. 1 Cir. 2013)...........................................10

*Garner v. Giarrusso*,
571 F.2d 1330 (5th Cir. 1978) ...............................................................21

*Greenleaf v. DHH, Metropolitan Developmental Center*,
594 So.2d 418 (La. App. 1 Cir.1991) ......................................................... 16, 17

*Henkelmann v. Whiskey Island Preserve, LLC*
145 So.3d 465 (La. Ct. App. 2014)............................................................10

*Jackson v. Frisco Indep. Sch. Dist.*,
789 F.3d 589 (5th Cir. 2015) ...............................................................21

*Jones-Sims v. Hous. Auth. of New Orleans,*
2000 WL 1285346 (E.D. La. Sept. 11, 2000)....................................................15

*Kelty v. Brumfield,*
633 So.2d 1210 (La. 1994) ..................................................................... 15, 21

*Kremer v. Chem. Constr. Corp*.,
　456 U.S. 461 (1982).................................................................. 12, 13, 14, 19

*La. Dep't of Agric. & Forestry v. Sumrall,*
　728 So. 2d 1254 (La. 1999) ............................................................16

*McDonald v. Cason*
　801 So.2d, 1255 (La. Ct. App. 2001).............................................10

*Miller v. Pascagoula Mun. Separate Sch. Sys,*
　2001 U.S. App. LEXIS 31801 (5th Cir. June 7, 2001)......................... 14, 15, 19

*Newbury v. City of Windcrest*,
　991 F.3d 672 (5th Cir. 2021) ...................................................... 18, 19

*Olivarez v. T-Mobile USA, Inc.*,
　997 F.3d 595 (5th Cir. 2021) ............................................................19

*Simon v. Board of Commissioners of Port of New Orleans*,
　875 So.2d 102 (La. App. 4 Cir. 2004) .......................................... 16, 17

*Stevenson v. Williamson*,
　547 F. Supp. 2d 544 (M.D. La. 2008)........................................... 16, 17

*Welsh v. Fort Bend Indep. Sch. Dist.*
　860 F.3d 762 (5th Cir. 2017) ...................................................... 16, 21

*Winn v. City of New Orleans*,
　620 Fed. Appx. 270 (5th Cir. 2015)............................................. 15, 17, 18

*Winn v. New Orleans City*,
　2015 WL 10713690 (E.D. La. Jan. 14, 2015) .................................... 15, 17, 18

**Statutes**

42 U.S.C. §1981 .......................................................................... 11, 19

42 U.S.C. §1983 …………………………………………………………11

42 U.S.C. §1985.............................................................................12

42 U.S.C. 2000e-2(a) ....................................................................11

La. R.S. §13:4231 ................................................................................21

La. R.S. §23:3301……………………………………………………………12

La. R.S. §23:967……………………………………………………………..11

**Constitutional Provisions**

La. Const. Art. X, Sec. 12 ................................................................ 16, 17

Appellant Kristen Morales ("Morales") respectfully submits this Reply Brief in response to the Brief of Appellees, City of New Orleans ("CNO") Office of Inspector General ("OIG"), Ed Michel ("Michel"), and Bobbie Jones ("Jones").

## I.     <u>SUMMARY OF THE ARGUMENT</u>

Appellees' arguments regarding collateral estoppel and res judicata revolve around the misguided notions that (1) all of Morales' federal causes of action arise from her suspension and termination by the OIG and (2) Morales' federal causes of action were properly considered and adjudicated within the meaning of Louisiana's res judicata statute.[1] But the fact remains that neither the Hearing Examiner, the CSC, the Louisiana Fourth Circuit, nor the Louisiana Supreme Court heard or adjudicated Morales' claims alleged in this lawsuit. Appellees further state that Morales filed "numerous"[2] or "several"[3] complaints in federal court. Morales filed only one Complaint in federal court, from which this appeal stems.

Appellees seek to denigrate Morales' character and undermine her claims and credibility by arguing that she "stole" an iPhone belonging to OIG and gave it to a private citizen.[4] Morales' federal and state law claims in this litigation are separate

---

[1] Brief of Appellees OIG, Michel, Jones, at p. 17-19, p. 23.
[2] Brief of Appellees OIG, Michel, Jones, at p. 3.
[3] Brief of Appellees OIG, Michel, Jones, at p. 16.
[4] Brief of Appellees OIG, Michel, Jones, at p. 4.

and apart from OIG's allegations regarding the iPhone. Therefore, those allegations cannot serve to bar Morales' causes of action against Appellees.

Appellees make cursory allusions to Morales' supposedly "inconsistent" or "demonstrably false"[5] statements during the investigation, her "shifting explanations,"[6] and her "conduct and lack of candor,"[7] all without specific citations to the record. Appellees fail to cite to a single line in the record showing that the CSC Hearing Examiner considered or adjudicated Morales' claims in her federal lawsuit; instead, they cite to the entirety of the CSC Decision, which incorporated the Report of the Hearing Examiner.

The Louisiana Fourth Circuit did not reject or even address Morales' claim that her termination was pre-determined and in retaliation for filing grievances and an EEOC Charge.[8] The Louisiana Fourth Circuit Court specified that it didn't even examine the other five reasons listed in Morales' disciplinary letters, including reason VI, that Morales was suspended and fired for filing an EEOC charge of discrimination and CAO grievances.[9] The Court's opinion was based on a mixed

---

[5] Brief of Appellees OIG, Michel, Jones, at p. 6.
[6] Brief of Appellees OIG, Michel, Jones, at p. 7.
[7] Brief of Appellees OIG, Michel, Jones, at p. 9.
[8] Brief of Appellees, OIG, Michel, Jones at p. 15-16.
[9] See Ruling from 4th Circuit, ROA.888 FN 7 stating:
"The December 15, 2020 letter detailed five additional policy violations underlying the OIG's disciplinary action. But, at the CSC hearing, Inspector General Michel testified that the primary reason for Ms. Morales' termination was her unauthorized donation of the OIG iPhone and her lack of candor in the subsequent investigation regarding the iPhone. The CSC found that either the OIG failed to prove the five additional violations occurred or found that they did not warrant

standard of review, with respect to the iPhone allegation only, of whether the appointing authority (OIG) proved the three elements of "(1) the occurrence of the complained-of conduct—misconduct; (2) the impairment, as a result of the misconduct, of the department's efficiency—impairment; and (3) the imposition of discipline commensurate with the misconduct—punishment."[10] The Fourth Circuit's review was limited to the scope of the CSC Hearing Examiner's inquiry, which was, in turn, limited to the iPhone allegation in the disciplinary letter.[11] By contrast, in this federal lawsuit, Morales' claims involve OIG's, Michel's, Jones', and the City of New Orleans' ("CNO") violations of law, which the CSC did not have jurisdiction to adjudicate and occurred out of facts separate from her civil service appeal.

## II. LAW AND ANALYSIS

### A. MORALES' CLAIMS AGAINST CNO CANNOT BE BARRED BY RES JUDICATA OR COLLATERAL ESTOPPEL

CNO's argues that res judicata and collateral estoppel bar Morales' claims are flawed for several reasons. First, some of Morales' claims pre-date her suspension and termination from OIG, and the CSC only decided the appeal concerning the

---

disciplinary action. **Therefore, the CSC denied Ms. Morales' appeal based solely on its finding that the OIG had good cause to terminate Ms. Morales for the iPhone-related violation. Accordingly, we do not address the OIG's allegations or investigation concerning the five alleged violations unrelated to the iPhone.**"
See also disciplinary letters at VII, ROA. 1255-1256 and 1267.
[10] ROA.890.
[11] ROA. 1342, 1343, 888 at FN7.

8

iPhone allegation in her disciplinary letter. Second, the CSC did not have jurisdiction to hear Morales' federal and state law discrimination claims, and the CSC Hearing Examiner limited the scope of the CSC proceedings to the iPhone issue only. Third, even if the CSC had jurisdiction to hear Morales' claims, the CSC discipline and removal process applies a "lawful cause" standard of causation, which differs from the "but-for" standard that the U.S. Supreme Court applies to employment-related claims. Finally, Morales cannot obtain the relief sought through the CSC process because the CSC cannot award general tort damages.

CNO fails to cite a single line in the record showing that the CSC Hearing Examiner considered the claims in this lawsuit or that those claims were properly heard and adjudicated previously. CNO was not even a party to the Civil Service appeal because the appeals are asserted against the Appointing Authority (i.e., the department where an employee works), in this case, the OIG.

Res judicata applies when (1) there is a prior valid judgment; (2) the prior judgment is final; (3) the parties in the prior suit and the present suit are the same; (4) the cause or causes of action asserted in the second suit existed at the time of the final judgment in the first litigation; and (5) the cause or causes of action asserted in

the second suit arose out of the transaction or occurrence that was the subject matter of the first litigation.[12]

Under issue preclusion or collateral estoppel, "once a court decides an issue of fact or law necessary to its judgment, that decision precludes relitigation of the same issue in a different cause of action between the same parties."[13] The criteria used to determine whether a party is precluded from relitigating an issue are: (1) whether the issue at stake is identical to the one involved in the prior litigation, (2) whether the issue was actually litigated, and (3) whether the determination of the issues was necessary to the judgment in the prior litigation.[14]

Here, CNO was not a party to the Civil Service Hearing, only the OIG.[15] All pleadings before the Commission, Fourth Circuit Court of Appeal, and Louisiana Supreme Court bear the same caption "Kristen Morales v. Office of Inspector General." The entire litigation in state court was solely between the OIG and Morales and limited to the iPhone allegation that she donated it to a private citizen without permission. The causes of action asserted in this case were not asserted in the Civil Service case.

Morales asserts the following claims against CNO in her federal lawsuit:[16] 1)

---

[12] *Gabriel v. Lafourche Parish Water Dist.*, 112 So. 3d 281, 284 (La. Ct. App. 1 Cir. 2013) (citing *Burguieres v. Pollingue*, 843 So. 2d 1049, 1053 (La. 2003)).
[13] *Henkelmann*, 145 So. 3d at 470.
[14] *McDonald v. Cason*, 801 So. 2d 1255, 1262 (La. App. 3 Cir. 2001)
[15] ROA.1301 and 1318.
[16] ROA. 517-556.

Title VII Claim for Retaliation against OIG and CNO as Joint Employers[17]; 2) Louisiana Whistleblower Statute La. R.S. §23:967 Against OIG and CNO as Joint Employers[18]; 3) 42 U.S.C. §1983, Deprivation of a Vested Property Right against OIG and CNO as Joint Employers[19]; 4) Title VII Disparate Treatment based on Gender against OIG and CNO as Joint Employers[20]; 5) Violation of 42 U.S.C §1981 and §1983 Against OIG and CNO as Joint Employers alleging race discrimination.[21]; 6) Title VII Disparate Treatment based on Race against OIG and CNO as Joint Employers[22]; 7) State Law Discrimination claims based on race and

---

[17] ROA.542-543. Alleging that Morales was retaliated against for lodging internal complaints of discrimination and unfair treatment beginning in **2019,** filing an EEOC Charge of Discrimination, advising her supervisors of unethical, and what she perceived as illegal, practices, advising her supervisors and OIG counsel of violations of Louisiana Public Records Law with regard to her requests for her personnel file, and filing a grievance against Bonney and seeking redress from harm through the CAO's office.

[18] ROA.545. Alleging that the OIG and CNO as her joint employers, retaliated against her after she advised I.G. Harper, OIG counsel, and her other supervisors of violations of law. Morales disclosed violations of state and federal law when she made her internal complaints to the OIG of discrimination and disparate treatment, when she filed her EEOC Charge of discrimination, sought relief from harm from the CAO's office related to OIG's disparate and discriminatory treatment, when she advised of violations of the Public Records Law relating to her request for her personnel record, and when she advised of unethical and illegal practices by federal counterparts.

[19] ROA.546-548.

[20] ROA.548-549. Alleging that Morales was treated differently than other non-female employees, who were either disciplined less harshly or not at all for similar violations, that Morales received a letter of reprimand for not keeping her hours up to date in Wingswept but during the same period all of her male colleagues in the criminal investigation unit also failed to put their hours into Wingswept and were not disciplined, and her complaints of disparate treatment concerning a pay increase and being the only female criminal investigator, she was required to keep up her certifications while her male counterparts were not, when she complained, she was threatened by her supervisor Bonney and CNO failed to take reasonable remedial measures to address the discriminatory conduct.

[21] ROA.549-550.

[22] ROA.550-551.

gender and retaliation under LA R.S. §23:3301 et. seq. against OIG and CNO as Joint Employers;[23] and 8) Conspiracy to Interfere with Civil Rights [42 U.S.C. §1985(3)](#) based on racial animus.[24]

Morales' claims against CNO include incidents that took place prior to her suspension and termination, and none of her claims of discrimination, retaliation, or whistleblowing were litigated in the Civil Service hearing.

**B.    Morales' Claims Against OIG Cannot Be Barred By Res Judicata Or Collateral Estoppel.**

Morales' claims in the federal lawsuit were (1) not actually litigated, (2) not determined by a court of competent jurisdiction, and (3) not essential to the "lawful cause" determination in the CSC proceedings.

**1.    Morales did not litigate the claims alleged in her federal lawsuit.**

Appellees cite to *Kremer v. Chem. Constr. Corp.*, as controlling law.[25] *Kremer,* however, is procedurally distinguishable. The case originated in New York

---

[23] [ROA.551](#).

[24] [ROA.551-552](#). Alleging OIG and CNO acted in furtherance of the conspiracy when CNO failed to assist Morales with her multiple complaints of discrimination by the OIG and when CNO dismissed Morales's grievance against her supervisor Bonney claiming physical intimidation. CNO advised that it determined her allegation was unfounded because there were no witnesses to the incident and also stated that Morales invaded Bonney's space. OIG used a prior finding from the New Orleans CAO's office concerning a grievance filed by Ms. Lea Rae Webb who claimed that Morales invaded her space when she walked too close to Ms. Webb as support for its claim of policy violation for standing too close to Bonney, a reason for her suspension and termination. Ms. Webb and Mr. Bonney are both Caucasian American.

[25] [456 U.S. 461](#) (1982); Brief of Appellees OIG, Michel and Jones, at p. 30-31.

State, and plaintiff's EEOC charge was referred to the New York State Division of Human Rights (NYHRD), a state agency responsible for enforcing New York employment discrimination laws.[26] The NYHRD found no probable cause that discrimination occurred, which was upheld by its Appeal Board.[27] The plaintiff filed a second EEOC charge and petition with the Appellate Division of the New York Supreme Court.[28] The Court affirmed the NYHRD's determination.[29] The EEOC found again no probable cause that discrimination occurred and issued a right-to-sue notice.[30] The plaintiff then filed a Title VII action in District Court, claiming discrimination.[31] The District Court eventually dismissed the complaint as res judicata.[32] SCOTUS upheld the dismissal, noting the "panoply of procedures" followed by the NYHRD to investigate the complaint, the opportunity for a public hearing to determine the merits of the complaint, and judicial review of the NYHRD's determination.[33] The Court held:

> Only where the evidence submitted by the claimant fails, as a matter of law, to reveal any merit to the complaint may the NYHRD make a determination of no probable cause without holding a hearing. *Flah's, Inc. v. Schneider*, 71 App. Div. 2d 993, 420 N. Y. S. 2d 283, 284 (1979). See n. 21, supra. And before that determination may be reached, New York requires the NYHRD to make a full investigation, wherein the

---

[26] 456 U.S., at 463-464.
[27] *Id.* at 464.
[28] *Id.*
[29] *Id.*
[30] *Kremer,* at 465
[31] *Id.*
[32] *Id.*
[33] *Id.* at 483-485.

complainant has full opportunity to present his evidence, under oath if he so requests. *State Div. of Human Rights v. New York State Drug Abuse Control Comm'n*, supra, at 336, 399 N. Y. S. 2d, at 544.[34]

The differences between *Kremer* and Morales' claims here are stark. First, *Kremer* was a formal action where plaintiff was able to submit a claim and have it investigated by a state agency. As explained above, the CSC hearing was limited to the iPhone allegation in the disciplinary letter. Second, Morales was in a defensive position pursuant the CSC Rules. The CSC appeal was limited to the scope of facts and issues included in the disciplinary letters, specifically the donation of an iPhone. The Fourth Circuit's review of the CSC Decision was therefore also limited to the scope of the initial CSC pre-termination hearing and subsequent appeal.

Appellees also rely on this Court's decision in *Miller v. Pascagoula Mun. Separate Sch. Sys.*[35] In *Miller*, the plaintiff alleged employment discrimination and presented her claims in a hearing before the Pascagoula School Board.[36] After an unfavorable result, she appealed to the Mississippi State Chancery Court, which determined that her discrimination claims were unfounded.[37] In upholding the District Court's summary judgment dismissal, this Court noted that the school board rejected the plaintiff's discrimination claim.[38]

---

[34] *Id.* at 485.
[35] *Miller v. Pascagoula Mun. Separate Sch. Sys,* No. 00-60821, 2001 U.S. App. LEXIS 31801, at *2 (5th Cir. June 7, 2001).
[36] *Miller*, 2001 U.S. App. LEXIS 31801, at *2.
[37] *Id.*
[38] *Id.* at 3.

By contrast, Morales never alleged employment discrimination before any state tribunal, NOCSC proceedings were limited to the contents of the disciplinary letter and the CSC itself does not have jurisdiction over federal employment causes of action. Furthermore, unlike in *Miller*, neither the CSC Hearing Examiner, the CSC itself, nor the Louisiana Fourth Circuit made any findings with respect to Morales' federal discrimination claims or state claims of discrimination and whistleblowing.

Appellees further rely on *Jones-Sims v. Hous. Auth. of New Orleans*[39] which was originally heard before the State Civil Service Commission, a Louisiana state agency with different rules and procedures from those of the New Orleans Civil Service Commission. As one example, the plaintiff in *Jones-Sims* was able to formally raise affirmative defenses, including retaliation.[40] Morales, on the other hand, was not able to raise affirmative defenses in her New Orleans CSC hearing, as its scope was limited to the allegations included in the disciplinary letter.

> ## 2. The CSC did not have jurisdiction to adjudicate the claims in Morales' federal lawsuit.

Louisiana state and federal courts consistently hold that the CSC does not have jurisdiction over federal employment-related claims.[41] Notably, "[i]f the court

---

[39] *Jones-Sims v. Hous. Auth. of New Orleans,* CIV.A.98-559, 2000 WL 1285346, at *1 (E.D. La. Sept. 11, 2000).
[40] *Id.* at *7.
[41] *Kelty v. Brumfield,* 633 So.2d 1210, 1215 (La. 1994); *Winn v. New Orleans City*, CV 12-1307, 2015 WL 10713690, at *3 (E.D. La. Jan. 14, 2015), *aff'd sub nom. Winn v. City of New Orleans*, 620 Fed. Appx. 270 (5th Cir. 2015) (unpublished); *Eberhardt v. Levasseur*, 630 So. 2d 844, 846 (La. App. 4th Cir. 1993), writ denied, 635 So. 2d 1107 (La. 1994).

rendering judgment lacks subject matter jurisdiction over a claim or if the procedural rules of the court made it impossible to raise a claim, then it is not precluded."[42] Moreover, the CSC does not have the authority to award general tort damages.[43]

Although the Louisiana Constitution provides that civil service commissions "have the exclusive power and authority to hear and decide all removal and disciplinary cases,"[44] the Supreme Court further held in *La. Dep't of Agric. & Forestry v. Sumrall*,[45] that while Section 12 of Article X places exclusive jurisdiction over removal and disciplinary cases with the Commission, Section 12 is silent as to discrimination and retaliation cases.[46] However, Section 8 of Article X provides that a classified employee who is discriminated against "because of his political or religious beliefs, sex, or race… shall have the right of appeal to the appropriate commission pursuant to Section 12."[47] Reading Sections 8 and 12 together, the Court then found that the Constitution "limits the Commission's jurisdiction to two categories of claims: (1) discrimination claims provided for in Section 8(B); and (2)

---

[42] *Welsh v. Fort Bend Indep. Sch. Dist.,* 860 F.3d 762, 765 (5th Cir. 2017) (quoting *Browning v. Navarro*, 887 F.2d 553, 558 (5th Cir. 1989).
[43] *Stevenson v. Williamson*, 547 F. Supp. 2d 544, 557 (M.D. La. 2008), aff'd, 324 Fed. Appx. 422 (5th Cir. 2009)(unpublished); *Simon v. Board of Commissioners of Port of New Orleans,* 875 So.2d 102, 106 (La. App. 4 Cir. 2004); *Greenleaf v. DHH, Metropolitan Developmental Center,* 594 So.2d 418 (La. App. 1 Cir.1991) *writ denied,* 596 So.2d 102 (La.App. 4 Cir.1992)).
[44] La. Const. Art. X, Sec. 12.
[45] *La. Dep't of Agric. & Forestry v. Sumrall,* 98-1587 (La. 03/02/99), 728 So. 2d 1254.
[46] *Sumrall*, 728 So. 2d, at 1259.
[47] *Id.* at 1260.

16

removal or disciplinary claims provided for in Sections 12(A) & 8(A)."[48] The CSC's jurisdiction is, therefore, not extended to any and all "employer-employee disputes that are employment related."[49] Ultimately, the Court held:

> Any individual asserting a cause of action based upon a form of discrimination not within the scope of the Commission's quasi-judicial power expressed in Article X, Sections 8 and 12, may not bring his claim to the Commission but has recourse in the district courts.[50]

It is indisputable, therefore, that the New Orleans CSC did not have jurisdiction to hear any of Morales' claims alleged in this federal. Furthermore, the CSC does not have the authority to award general tort damages.[51] Morales could not obtain the legal remedies afforded by pursuing her claims in district court.

Even if the CSC had jurisdiction to hear Morales' claims alleged in this lawsuit, those claims would still not be subject to res judicata because the "lawful cause" standard applied by the CSC to discipline and removal hearings differs from the "but-for" standard applied in employment claims, such as retaliation and discrimination.

Here, the District Court relied on *Winn v. City of New Orleans* in dismissing

---

[48] *Id.*
[49] Brief of Appellees OIG, Michel and Jones, at p. 23.
[50] *Sumrall*, 728 So. 2d, at 1264.
[51] *Stevenson v. Williamson*, 547 F. Supp. 2d 544, 557 (M.D. La. 2008), aff'd, 324 Fed. Appx. 422 (5th Cir. 2009) (unpublished); *Simon v. Board of Commissioners of Port of New Orleans,* 875 So.2d 102, 106 (La. App. 4 Cir. 2004); *Greenleaf v. DHH, Metropolitan Developmental Center,* 594 So.2d 418 (La. App. 1 Cir.1991) *writ denied,* 596 So.2d 102 (La. App. 4 Cir.1992).

Morales' claims.[52] In *Winn*, the District Court followed the "lawful cause" standard, holding that "the state court's finding that Winn was terminated for legal cause 'implicitly and necessarily rejects' Winn's contention that he was terminated for improper reasons…."[53] However, SCOTUS rejected that standard in its 2020 decision in *Bostock v. Clayton County*.[54] The Court analyzed whether an employer's prohibited conduct under Title VII must be the "sole motivation" (i.e., "lawful cause") to defeat employer liability or whether the prohibited conduct need be only one "but-for" cause.[55] The Court held that the unlawful conduct does not have to be the sole or primary cause of the employer's adverse action. "So long as a prohibited ground was a motivating factor, the existence of other motivating factors does not defeat liability."[56]

Appellees do not directly address this "but-for" causation standard of *Bostock* in their brief, but they mis-quote this Court's application of *Bostock* to *Newbury v. City of Windcrest* by omitting the fact that the plaintiff in *Newbury* failed to allege essential elements of her sexual harassment claim.[57] That was the reason this Court

---

[52] ROA.1433.
[53] *Winn v. City of New Orleans*, 620 Fed. Appx. 273 (5th Cir. 2015) (citing *Winn v. New Orleans City*, CV 12-1307, 2015 WL 10713690, at *9 (E.D. La. Jan. 14, 2015)
[54] *Bostock v. Clayton County*, 140 S. Ct. 1731 (2020).
[55] *Id.* at 1735.
[56] *Id.*
[57] *Newbury v. City of Windcrest*, 991 F.3d 672, 676 (5th Cir. 2021). Appellees include a misleading parenthetical to their citation: "(rejecting plaintiff's argument that Bostock changed the Title VII causation standard: "Although the [Bostock] Court expanded the groups of individuals protected by Title VII, it in no way altered the preexisting legal standard. . .").″ The quote from this Court

declined to apply *Bostock* to *Newbury*, not because this Court found that *Bostock* did not change the causation standard applied in Title VII cases.

Appellees further attempt to circumvent *Bostock* by relying on *Olivarez v. T-Mobile USA, Inc.*[58] However, the holding in *Olivarez* was analogous to *Newbury*: the plaintiff did not "allege facts sufficient to support an inference of transgender discrimination…."[59] Neither *Newbury* nor *Olivarez* address *Bostock*'s determination of the causation standard for establishing a Title VII cause of action.

### C.    The District Court Erred In Dismissing Claims Without A Jury Trial.

Title VII establishes a right to a trial by jury.[60] Appellees argue that *Kremer* and *Miller* stand for the principle that a plaintiff is not entitled to a jury in a Title VII claim;[61] however, that argument is false. What *Kremer* and *Miller* both hold is that a plaintiff is not necessarily entitled to a jury in a Title VII claim if that claim was properly litigated and adjudicated.[62]

Appellees attempt to argue that Morales "never raised this [jury trial] argument in her opposition to the OIG Defendants' Motion for Summary Judgment"

---

actually reads that *Bostock* "in no way altered the preexisting legal standard for sexual harassment." Appellees seem to confuse the causation standard applied to Title VII claims, which *Bostock* did determine, with the legal standard for establishing a sexual harassment claim, which *Bostock* did not determine, as this Court held in *Newbury*.

[58] *Olivarez v. T-Mobile USA, Inc.*, 997 F.3d 595 (5th Cir. 2021).
[59] *Id.* at 598.
[60] 42 U.S.C. §1981(c).
[61] Brief of Appellees OIG, Michel and Jones, at p. 35-36.
[62] *Kremer*, 456 U.S., at 463-464; *Miller*, 2001 U.S. App. LEXIS 31801, at *2.

and that she cannot make the argument "for the first time on appeal."[63] However, Morales made this argument in her Motion to Amend Judgment, which was filed after the District Court granted Appellees' motion for summary judgment.[64]

### D. The District Court Erred In Dismissing Morales' Louisiana Statutory Law Claims.

Appellees cite one case in support of their argument that Morales' Louisiana statutory claims should be barred, *Crockett v. Roberts.*[65] However, *Crockett* is easily distinguishable because all of the plaintiff's claims in that case stemmed from his suspension and termination, which the District Court reasoned, meant that they "arose out of the same transaction or occurrence as those litigated in front of the Civil Service Commission."[66] By contrast, several of Morales' claims arose prior to and after her suspension and termination, but those claims were not litigated before the CSC Hearing Examiner or the Louisiana Fourth Circuit.

### E. The District Court Erred In Dismissing Morales' Claims Against Michel And Jones.

Morales never asserted a claim against Michel in his personal capacity in state court or in the CSC proceedings. Therefore, her claim against him now cannot be barred. Appellees' claim that Morales has somehow "waived" this argument by not

---

[63] Brief of Appellees OIG, Michel, and Jones, at p. 35.
[64] ROA.2165.
[65] *Crockett v. Roberts,* No. 05-6085, 2010 U.S. Dist. LEXIS 144953 (E.D. La. Mar. 25, 2010).
[66] *Crockett*, 2010 U.S. Dist. LEXIS 144953, at *10.

providing a "citation to the record" of data that cannot exist is illogical.[67] Morales referenced a plethora of legal authorities holding and explaining how and why facts and issues that were never litigated, could not have been litigated, and were consequently never adjudicated, cannot be given preclusive effect.[68] Morales did not waive her claims against Michel in his personal capacity and should not be barred.

Appellees argue that Morales "fails to provide any argument, explanation, citation to the record, or authority in support" as to why her claims against Jones should be precluded.[69] Morales can't cite to the record for her claims against Jones and Michel in his personal capacity because it has never been addressed by ANY court. Without a prior judgment, Morales' claims simply cannot be given preclusive effect.[70]

## III.  <u>CONCLUSION</u>

The Court should vacate the district court's judgment and remand for further proceedings.

DATED: September 19, 2023          Respectfully submitted,

<u>s/Stephanie Dovalina</u>
Stephanie Dovalina
Attorney for Plaintiff – Appellant

---

[67] Brief of Appellees OIG, Michel, and Jones, at p. 43.
[68] *See, e.g.,* La. R.S. 13:4231; *Garner,* <u>571 F.2</u>d, at 1336; *Kelty,* <u>633 So.2</u>d, at 1215; *Welsh,* <u>860 F.3</u>d, at 765; *Eberhardt,* <u>630 So. 2</u>d, at 847; *Garner,* <u>571 F.2d at 1336</u>; *Jackson,* <u>789 F.3</u>d, at 595.
[69] Brief of Appellees OIG, Michel, and Jones, at p. 47.
[70] La. R.S. 13:4231; *Garner,* <u>571 F.2</u>d, at 1336; *Kelty,* <u>633 So.2</u>d, at 1215; *Welsh,* <u>860 F.3</u>d, at 765; *Eberhardt,* <u>630 So. 2</u>d, at 847; *Garner,* <u>571 F.2d at 1336</u>; *Jackson,* <u>789 F.3</u>d, at 595.

## CERTIFICATE OF SERVICE

This is to certify that the foregoing instrument has been served via the Court's ECF filing system in compliance with Rule 25(b) and (c) of the Federal Rules of Appellate Procedure, on September 19, 2023, on all registered counsel of record, and has been transmitted to the Clerk of the Court.

s/Stephanie Dovalina
Stephanie Dovalina

## CERTIFICATE OF COMPLIANCE

1. This brief complies with the type-volume limitation of FED. R. APP. P. 32(A)(7)(B) because:

   a. this brief contains 4,279 words, excluding the parts of the brief exempted by FED. R. APP. P. 32(f).

2. This brief also complies with the typeface requirements of FED. R. APP. P. 32(A)(5) and the type requirements of FED. R. APP. P. 32(A)(6) because:

   a. this brief has been prepared in a proportionally spaced typeface using Microsoft Word with a 14-point font named Times New Roman.

s/Stephanie Dovalina
Stephanie Dovalina